UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

FRANCIS W. HOOKER, JR.,
For himself and on behalf of all
similarly situated individuals,

    Plaintiff,

v.

SIRIUS XM RADIO, INC.,

    Defendant.

CASE NO.: 4:13cv3

FILED
JAN -4 2013
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

## CLASS COMPLAINT

COMES NOW Plaintiff, Francis W. Hooker, Jr. ("Hooker" or "Plaintiff"), on behalf of himself and all similarly situated individuals, and alleges the following claims against Sirius XM Radio, Inc. ("Sirius XM" or "Defendant"):

### I. INTRODUCTION

1. This action is brought for violations of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, et seq. ("TCPA" or "the Act"), arising out of several telephone solicitation calls made by or on behalf of Defendant to Plaintiff's cell phone number, including calls after 9:00 p.m., using an automatic telephone dialing system.

### II. SUBJECT MATTER JURISDICTION AND VENUE

2. This court has original jurisdiction of this civil action as one arising under the laws of the United States. *See 28 U.S.C. § 1331* and *Mims v. Arrow Fin. Serv., LLC*, 565 U.S. ___, 132 S. Ct. 740, 181 L. Ed.2d 881 (2012).

3. Venue is proper in this Court under 28 U.S.C. §1391(b) because Defendant victimized Plaintiff on his cell phone line in the City of Hampton, Virginia where Plaintiff lives and works.

4. Venue is also proper in this Court under 28 U.S.C. § 1391(b) as Defendant

regularly does business in the district and division, is subject to this Court's personal jurisdiction with respect to this civil action in the district and, as such, "resides" in the district.

5. Plaintiff maintains all of the documents relevant to this dispute at his home in Hampton, Virginia.

### III. PARTIES AND PERSONAL JURISDICTION

6. Plaintiff Hooker is an individual and natural person, and an Air Force Airman First Class stationed at Langley Air Force Base in Hampton, Virginia.

7. Defendant Sirius XM is a Delaware corporation with its principle place of business located at 1221 Avenue of the Americas, New York, NY 10020.

8. At all times pertinent, Defendant was and is in the business of providing radio programming for a fee.

9. Defendant transacts business throughout the United States, including in Virginia and specifically in this district and division.

10. In addition to transacting business in Virginia, Defendant contracts to supply services or things in Virginia, including in this district and division.

11. Defendant regularly does or solicits business, or engages in other persistent courses of conduct, or derives substantial revenue from goods used or consumed or services rendered in the Commonwealth of Virginia, including in this district and division.

12. In addition, through its acts in sending or causing to be sent to Plaintiff unsolicited text messages using an autodialer, Defendant caused tortious injury in the nature of an invasion of Plaintiff's privacy rights in this Commonwealth, either by its acts in this Commonwealth or, alternatively, by acts outside the Commonwealth while regularly doing or soliciting business or engaging in a persistent course of conduct and deriving substantial revenue from goods used or consumed or services rendered in this Commonwealth.

13. Personal jurisdiction may be exercised over Defendant pursuant to Va. Code § 8.01-328.1.A.1, A.2, A.3, and A.4.

14. Plaintiff intends to serve Defendant through the Virginia Secretary of the Commonwealth.

15. At all times pertinent, Defendant was and is engaged in interstate commerce, and Defendant used and is using instrumentalities of interstate commerce, including telephone lines, satellites, cell phone towers, and the mail, in the course of its activities set forth herein.

### IV. GENERAL OVERVIEW OF THE TCPA

16. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

17. The TCPA regulates, among other things, the use of automated telephone dialing systems or "autodialers" and the use of artificial or prerecorded voices in telephone calls, both as to telemarketing and non-telemarketing calls. Specifically, the plain language of § 227(b)(1)(A) prohibits the use of autodialers or artificial or prerecorded voices to make any non-emergency call to a cellular or wireless phone number in the absence of prior express consent of the called party.

18. According to findings by the Federal Communications Commission ("FCC."), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, calls made using an autodialer or an artificial or prerecorded voice are a greater nuisance and invasion of privacy than live calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

19. Under the TCPA and pursuant to the FCC's January 2000 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff and the other members of the classes and sub-classes which Plaintiff seeks to represent provided prior express consent within the meaning of the Act.

20. In 47 U.S.C. § 227(c), Congress directed the FCC to prescribe rules and regulations to protect residential telephone subscribers' privacy rights to avoid receiving

telephone solicitations to which they object.

21. Pursuant to this Congressional directive, the FCC has adopted rules and regulations prohibiting any person or entity from initiating any telephone solicitation to any residential telephone subscriber before 8:00 a.m. or after 9:00 p.m.(local time at the called party's location) as set forth in 47 C.F.R. § 64.1200(c).

22. Pursuant to 47 C.F.R. § 64.1200(e), this prohibition against telephone solicitations initiated before 8:00 a.m. or after 9:00 p.m. is also applicable to any person or entity initiating telephone solicitations to any wireless telephone number.

## V. FACTS AS TO NAMED PLAINTIFF

23. On or about August 19, 2011, Plaintiff and his wife, Alexandra Rae Hooker, purchased a 2012 Hyundai Elantra four door sedan.

24. As part of the purchase the dealership provided Plaintiff with three months of Defendant's satellite radio programming at no charge.

25. Approximately halfway through the three monthly complimentary trial period, Plaintiff received the first autodialed call made by or on behalf of Defendant (as used in this section, "Defendant" shall refer to Sirius XM and/or its agent(s) and/or anyone acting on Defendant's behalf) to Plaintiff's cellular phone.

26. Defendant urged Plaintiff to extend his complimentary subscription into a paid continuing subscription.

27. Not only did Plaintiff decline Defendant's unsolicited offer, but he demanded that Defendant never call him again on his cell phone number or otherwise.

28. Plaintiff could tell that the call was placed by an autodialer because at first there was no one on the phone, but several seconds after he answered, a representative of Defendant initiated a conversation with Plaintiff.

29. The next night Defendant placed a second autodialed call to Plaintiff's cell phone number. Plaintiff again declined to extend his subscription and told the representative of

Defendant not to call again.

30. The next night Defendant placed yet another autodialed call to Plaintiff's cell phone number.

31. Plaintiff again told Defendant he did not want to extend his subscription and not to call again.

32. In response, Defendant's representative said that it would take at least ten days to remove Plaintiff from the list of individuals that Defendant was soliciting.

33. Thereafter, the Defendant continued to place a number of autodialed calls to Plaintiff's cell phone number.

34. Upon receiving the third autodialed call, Plaintiff demanded to speak to a supervisor. After holding for a considerable period of time, the call was disconnected through no fault of Plaintiff without a supervisor coming to the phone.

35. Immediately after the third autodialed call was disconnected, Plaintiff called the Defendant's number back and eventually spoke to a supervisor. The supervisor acknowledged that the calls to Plaintiff were being made by a computer using an autodialer. The supervisor also informed Plaintiff that the contact information used to call Plaintiff had been obtained by Defendant from the motor vehicle dealer from which Plaintiff and his wife had purchased their new vehicle.

36. At no time did Plaintiff provide Defendant with his cell phone number, nor did he authorize the automobile dealership to provide Defendant with his cell phone number.

37. At no time prior to his receipt of the autodialed calls did Plaintiff have any communication with Defendant, written, oral or electronic, whether initiated by Plaintiff or Defendant.

38. The calls were made not only without Plaintiff's consent, but (as to all but the first call) after Plaintiff told Defendant never to call his cell phone again.

39. Plaintiff answered at least three calls and on each occasion told Defendant to stop

calling to no avail.

40. The cell phone in question and the cell phone number called belonged to Plaintiff.

41. Each of the calls made by Defendant to Plaintiff's cell phone number was made using an automatic telephone dialing system as defined by the TCPA in 47 U.S.C. § 227(a)(1) (hereinafter "autodialer") in that the equipment used by Defendant had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers. By using such equipment, Defendant was able to make calls to the wireless telephone numbers of the members of the classes and subclasses which Plaintiff seeks to represent automatically without human intervention.

42. None of the calls made by Defendant to Plaintiff's cell phone number were made for an emergency purpose.

43. None of the calls made by Defendant to Plaintiff's cell phone number were made with Plaintiff's prior express consent.

44. Plaintiff expressly disavows and denies providing any authority to the automobile dealership to give his cell phone number to Defendant or anyone else.

45. Alternatively, in the event that Plaintiff (either directly or through the automobile dealership purportedly acting on his behalf) provided to Defendant prior express consent to call his cell phone number using an autodialer, any such consent was revoked by Plaintiff prior to all but the first of the autodialed calls that were made by Defendant.

46. Each of the calls made by Defendant to Plaintiff's cell phone number was a "telephone solicitation" in that each call was initiated for the purpose of encouraging the purchase or rental of Defendant's goods or services, specifically the purchase of a subscription for Defendant's satellite radio programming.

47. At least the first three telephone solicitation calls were initiated by Defendant after 9:00 p.m. local time at Plaintiff's location.

48. At no time did Plaintiff provide his prior express invitation or permission that

Defendant initiate a call or message to his phone for the purpose of encouraging the purchase or rental of Defendant's goods or services.

49. At the time Defendant initiated its telephone solicitation calls to Plaintiff, Plaintiff did not have an established business relationship with Defendant as that term is defined 47 C.F.R. § 64.1200(f)(4).

50. Specifically, Plaintiff had not had any prior voluntary two-way communication between himself and Defendant on the basis of any inquiry or application regarding products or services offered by Defendant within the three (3) months immediately preceding the dates of the telephone solicitation calls from Defendant

51. Likewise, Plaintiff had not had any prior voluntary two-way communication between himself and Defendant on the basis of any purchase or transaction with Defendant within the eighteen (18) months immediately preceding the dates of the calls from Defendant.

52. The only thing which Plaintiff did was to purchase a new motor vehicle from a dealer which provided three months of Sirius XM Radio programing free of charge.

53. All communications pertaining to the purchase of the new motor vehicle with the three month's of free programing were between Plaintiff and the motor vehicle dealer.

54. At no time did the motor vehicle dealer purport to be communicating with Plaintiff as Defendant's agent or otherwise on Defendant's behalf.

55. Alternatively, any established business relationship which Plaintiff may have had with Defendant was terminated for telephone solicitation purposes when, during the first call, Plaintiff told Defendant that he was not interested in purchasing a subscription for its services and instructed Defendant not to call anymore.

56. After the first call, Defendant initiated at least two additional calls after 9:00 p.m. local time encouraging Plaintiff to purchase a subscription for Defendant's satellite radio programming.

57. Plaintiff is entitled to recover statutory damages and obtain injunctive relief as

concerns Defendant's autodialed calls as provided in 47 U.S.C. § 227(b)(3).

58. Plaintiff is entitled to recover statutory damages and obtain injunctive relief as concerns Defendant's telephone solicitation calls initiated between 9:00 p.m. and 8:00 a.m., local time as provided in 47 U.S.C. § 227(c)(5).

59. Plaintiff is entitled to recover separate statutory penalties pursuant to both 47 U.S.C. § 227(b)(3) and § 227(c)(5), notwithstanding that both sections were violated by the same call. *Charvat v. NMP, LLC*, 656 F.3d 440 (6th Cir. 2011).

## VI. CLAIM FOR RELIEF

### COUNT ONE

### Telephone Consumer Protection Act, 47 U.S.C. §§ 227(b)(1)(A)(iii) and 227(b)(3)

### Automatic Telephone Dialing System

60. Plaintiff realleges and incorporates paragraphs 1 through 59 as though fully set forth herein.

61. The "Autodialed Class." Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for himself and on behalf of a class ("the Autodialed Class") of similarly situated individuals initially defined as follows:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a.) who were the recipients of one or more telephone calls to their wireless phone numbers; (b.) made by or on behalf of Defendant; (c.) using an automatic telephone dialing system as defined by the TCPA; (d.) within four years next preceding the filing of this action and during its pendency. Excluded from the class definition are any employees, officers, directors of Defendant, and attorney appearing in this case, and any judge assigned to hear this action.

62. The "First Autodialed Sub-Class." Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff also brings this action for himself and on behalf of another putative sub-class ("the First Autodialed Sub-Class") of similarly situated individuals initially defined as follows:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a.) who were the recipients of one or more telephone calls to their wireless phone numbers; (b.) made by or on behalf of Defendant;

(c.) using an automatic telephone dialing system as defined by the TCPA; (d.) within four years next preceding the filing of this action and during its pendency; and (e.) where Defendant or persons acting on its behalf continued to call such persons' wireless numbers using an autodialer after being instructed to stop calling. Excluded from the class definition are any employees, officers, directors of Defendant, and attorney appearing in this case, and any judge assigned to hear this action.

63. Numerosity. *Fed. R. Civ. P. 23(a)(1)*. Upon information and belief, Plaintiff alleges that the members of the Autodialed Class and of the First Autodialed Sub-Class (herein referred to in Count 1 as the "Class" and "Sub-Class") are so numerous that joinder of all is impractical. The names and addresses of the Class and Sub-Class members are identifiable through documents maintained by Defendant, and the Class and Sub-Class members may be notified of the pendency of this action by published and/or mailed notice.

64. Existence and Predominance of Common Questions of Law and Fact. *Fed. R. Civ. P. 23(a)(2)*. Common questions of law and fact exist as to all Class and Sub-Class members. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things:

(a) Whether the calls made by or on behalf of Defendant to the wireless phone numbers of the Class and Sub-Class members were made using an autodialer?

(b) Whether the calls made by or on behalf of Defendant to the wireless phone numbers of the Class and Sub-Class members were made for emergency purposes?

(c) Whether the Class and Sub-Class members provided prior express consent to Defendant to make or have made on its behalf each of the calls to their wireless phone numbers using an autodialer?

(d) Whether Defendant's conduct violated 47 U.S.C. § 227(b)(1)(A)?

(e) Whether Defendant willfully or knowingly violated 47 U.S.C. § 227(b)(1)(A)?

(f) Whether Plaintiff and the Class and Sub-Class members are entitled to a permanent injunction enjoining Defendant from making or having made on its behalf calls to wireless phone numbers using an autodialer without the prior

express consent of the called party?

65. Typicality. *Fed. R. Civ. P. 23(a)(3)*. Plaintiff's claims are typical of the claims of each Class and Sub-Class member. Plaintiff would only seek individual or actual damages if class certification is denied. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other members of the Class and Sub-Class.

66. Adequacy. *Fed. R. Civ. P. 23(a)(4)*. Plaintiff is an adequate representative of the Class and Sub-Class because his interests coincide with, and are not antagonistic to, the interest of the members of the Class and Sub-Classes he seeks to represent; he has retained counsel competent and experienced in such litigation; and he intends to prosecute this action vigorously. Plaintiff and his Counsel will fairly and adequately protect the interests of members of the Class and Sub-Class.

67. Superiority. *Fed. R. Civ. P. 23(b)(3)* Questions of law and fact common to the Class and Sub-Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. Liability will be determined based on a common set of facts and legal theories. Willfulness will be determined based on Defendant's conduct and knowledge, not upon the effect of Defendant's conduct on the Class and Sub-Class members. The statutory damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the members of the Class and Sub-Classes individually to redress effectively the wrongs done to them, as the TCPA has no attorney's fee shifting provision. Even if the members of the Class and Sub-Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will

result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

68. Class certification is appropriate because Defendant has acted on grounds generally applicable to the Class and Sub-Class, making appropriate equitable injunctive relief with respect to Plaintiff and the Class and Sub-Class members. *Fed. R. Civ. P. 23(b)(2).*

69. By virtue of the foregoing, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) as to Plaintiff and the members of the Class and Sub-Class by calling, on one or more occasions, their wireless numbers using an automatic telephone dialing system without their prior express consent, or alternatively by making such calls after any prior express consent was revoked.

70. Pursuant to 47 U.S.C. § 227(b)(3), Plaintiff and each Class and Sub-Class member is entitled to recover from Defendant $500.00 in statutory damages for each such violation. In the event that Defendant is found to have knowingly or willfully violated the TCPA, this Court may, in its discretion, increase the amount of statutory damages to not more that $1,500.00 for each such violation.

71. Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff, on behalf of himself and the Class and Sub-Class members, also seeks injunctive relief prohibiting Defendant's violations of the TCPA in the future.

## COUNT TWO

### Telephone Consumer Protection Act, 47 U.S.C. §§ 227(c)(5) and 47 C.F.R. § 64.1200(c) and (e)

### Telephone Solicitation Calls to Residential and Wireless Telephone Numbers

72. Plaintiff realleges and incorporates paragraphs 1 through 59 as though fully set forth herein.

73. The "Telemarketed Class." Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for himself and on behalf of a class ("the Telemarketed Class") of similarly situated individuals initially defined as follows:

All natural persons residing in the United States (including all territories and other

political subdivisions of the United States) (a.) who were the recipients of more than one telephone solicitation call within any 12-month period; (b.) initiated by or on behalf of Defendant between 9:00 p.m. and 8:00 a.m., local time at the called party's location; (c.) within four years next preceding the filing of this action and during its pendency. Excluded from the class definition are any employees, officers, directors of Defendant, and attorney appearing in this case, and any judge assigned to hear this action.

74. The "First Telemarketed Sub-Class." Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff also brings this action for himself and on behalf of a putative sub-class ("the First Telemarketed Sub-Class") of similarly situated individuals initially defined as follows:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a.) who were the recipients of more than one telephone solicitation call within any 12-month period; (b.) initiated by or on behalf of Defendant between 9:00 p.m. and 8:00 a.m., local time at the called party's location; (c.) within four years next preceding the filing of this action and during its pendency; and (d.) where Defendant and/or persons acting on its behalf continued to initiate telephone solicitation calls to the persons' residential or wireless phone numbers between 9:00 p.m. and 8:00 a.m., local time at the called party's location, after being instructed to stop calling. Excluded from the class definition are any employees, officers, directors of Defendant, and attorney appearing in this case, and any judge assigned to hear this action

75. Numerosity. *Fed. R. Civ. P. 23(a)(1)*. Upon information and belief, Plaintiff alleges that the members of the Telemarketed Class and of the First Telemarketed Sub-Class (herein referred to in Count 2 as the "Class" and "Sub-Class") are so numerous that joinder of all is impractical. The names and addresses of the Class and Sub-Class members are identifiable through documents maintained by Defendant, and the Class and Sub-Class members may be notified of the pendency of this action by published and/or mailed notice.

76. Existence and Predominance of Common Questions of Law and Fact. *Fed. R. Civ. P. 23(a)(2)*. Common questions of law and fact exist as to all Class and Sub-Class members. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things:

    (a)    Whether the calls made by or on behalf of Defendant to the residential or wireless phone numbers of the Class and Sub-Class members were telephone solicitations?

    (b)    Whether the calls made by or on behalf of Defendant to the cell phone numbers of

      the Class and Sub-Class members were initiated between 9:00 p.m. and 8:00 a.m., local time at the called party's location?

(c)     Whether the Class and Sub-Class members provided prior express invitation or permission to Defendant to initiate or have initiated on its behalf each of the telephone solicitation calls to their residential or wireless phone numbers?

(d)     Whether the Class and Sub-Class members had an established business relationship with Defendant at the time of the solicitation calls?

(e)     Whether Defendant's conduct violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c) and (e)?

(f)     Whether Defendant willfully or knowingly violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c) and (e)?

(g)     Whether Plaintiff and the Class and Sub-Class members are entitled to a permanent injunction enjoining Defendant from initiating or having initiated on its behalf telephone solicitation calls to residential and wireless phone numbers of the Class and Sub-Class members between 9:00 p.m. and 8:00 a.m., local time at the called party's location?

77.     **Typicality.** *Fed. R. Civ. P. 23(a)(3).* Plaintiff's claims are typical of the claims of each Class and Sub-Class member. Plaintiff would only seek individual or actual damages if class certification is denied. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other members of the Class and Sub-Class.

78.     **Adequacy.** *Fed. R. Civ. P. 23(a)(4).* Plaintiff is an adequate representative of the Class and Sub-Class because his interests coincide with, and are not antagonistic to, the interest of the members of the Class and Sub-Class he seeks to represent; he has retained counsel competent and experienced in such litigation; and he intends to prosecute this action vigorously. Plaintiff and his Counsel will fairly and adequately protect the interests of members of the Class and Sub-Class.

79. **Superiority.** *Fed. R. Civ. P. 23(b)(3)* Questions of law and fact common to the Class and Sub-Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. Liability will be determined based on a common set of facts and legal theories. Willfulness will be determined based on Defendant's conduct and knowledge, not upon the effect of Defendant's conduct on the Class and Sub-Class members. The statutory damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the members of the Class and Sub-Class individually to redress effectively the wrongs done to them, as the TCPA has no attorney's fee shifting provision. Even if the members of the Class and Sub-Classes themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

80. Class certification is appropriate because Defendant has acted on grounds generally applicable to the Class and Sub-Class, making appropriate equitable injunctive relief with respect to Plaintiff and the Class and Sub-Class members. *Fed. R. Civ. P. 23(b)(2).*

81. By virtue of the foregoing, Defendant violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c) and (e) as to Plaintiff and the Class and Sub-Class by initiating, on more than one occasion, a telephone solicitation call to the residential or wireless phone numbers of Plaintiff and the members of the Class and Sub-Class without the prior express invitation or permission of the Class and Sub-Class members, and without there being an established business relationship with the Class and Sub-Class members, or alternatively by initiating, on more than one occasion,

such a call after any prior express invitation or permission was revoked and any established business relationship was terminated by Plaintiff and the members of the Class and each Sub-Class.

82. Pursuant to 47 U.S.C.A. §227(c)(5), Plaintiff and each Class and Sub-Class member is entitled to recover from Defendant $500.00 in statutory damages for each such violation. In the event that Defendant is found to have knowingly or willfully violated the TCPA, this Court may, in its discretion, increase the amount of statutory damages to not more that $1,500.00 for each such violation.

83. Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff, on behalf of himself and the Class and Sub-Class members, also seeks injunctive relief prohibiting Defendant's violations of the TCPA in the future.

## VII. DEMAND FOR PRESERVATION

84. Plaintiff also specifically demands that Defendant retain and preserve all records related to the allegations in this Complaint. Specifically, Plaintiff's demand for preservation includes, but is not limited to, the following documents and information:

 (a) All documents evidencing all phone numbers, including spoofed numbers, used by Defendant and/or persons acting on its behalf in making autodialed calls to wireless phone numbers or in making telephone solicitation calls to residential or wireless phone numbers, each within the last four years;

 (b) All documents evidencing the wireless telephone numbers to which Defendant and/or persons acting on its behalf made one or more autodialed calls, or evidencing the residential or wireless numbers to which Defendant and/or persons acting on its behalf made more than one telephone solicitation call, each within the four years preceding the filing of the Class Complaint or thereafter;

 (c) All documents evidencing the identity of the "called party" to whom Defendant and/or persons acting on its behalf made one or more autodialed calls to a

wireless telephone number, or to whom Defendant and/or persons acting on its behalf made more than one telephone solicitation call to any residential or wireless number, each within the four years preceding the filing of the Class Complaint or thereafter;

(d) All documents evidencing the identity of all persons to whom Defendant and/or persons acting on its behalf made one or more autodialed calls to a wireless telephone number or to whom Defendant and/or persons acting on its behalf made more than one telephone solicitation call, where the names and/or telephone numbers of the called party were obtained by Defendant and/or persons acting on its behalf from a motor vehicle dealer from which such persons purchased or leased a motor vehicle;

(e) All documents evidencing the number of autodialed calls made to each wireless telephone number to which Defendant and/or persons acting on its behalf made autodialed calls within the four years preceding the filing of the Class Complaint or thereafter;

(f) All documents evidencing the number of telephone solicitation calls made to each residential or wireless telephone number to which Defendant and/or persons acting on its behalf made more than one telephone solicitation call within the four years preceding the filing of the Class Complaint or thereafter;

(g) All documents, including transmission or phone logs, showing dates of all autodialed calls made to a wireless phone number, and the identity of all persons called by Defendant and/or persons acting on its behalf, using an autodialer within the four years preceding the filing of the Class Complaint or thereafter;

(h) All documents, including transmission or phone logs, showing dates of all telephone solicitation calls made to a residential or wireless telephone number and the identity of the persons so solicited by Defendant and/or persons acting on

wireless telephone number, or to whom Defendant and/or persons acting on its behalf made more than one telephone solicitation call to any residential or wireless number, each within the four years preceding the filing of the Class Complaint or thereafter;

(d) All documents evidencing the identity of all persons to whom Defendant and/or persons acting on its behalf made one or more autodialed calls to a wireless telephone number or to whom Defendant and/or persons acting on its behalf made more than one telephone solicitation call, where the names and/or telephone numbers of the called party were obtained by Defendant and/or persons acting on its behalf from a motor vehicle dealer from which such persons purchased or leased a motor vehicle;

(e) All documents evidencing the number of autodialed calls made to each wireless telephone number to which Defendant and/or persons acting on its behalf made autodialed calls within the four years preceding the filing of the Class Complaint or thereafter;

(f) All documents evidencing the number of telephone solicitation calls made to each residential or wireless telephone number to which Defendant and/or persons acting on its behalf made more than one telephone solicitation call within the four years preceding the filing of the Class Complaint or thereafter;

(g) All documents, including transmission or phone logs, showing dates of all autodialed calls made to a wireless phone number, and the identity of all persons called by Defendant and/or persons acting on its behalf, using an autodialer within the four years preceding the filing of the Class Complaint or thereafter;

(h) All documents, including transmission or phone logs, showing dates of all telephone solicitation calls made to a residential or wireless telephone number and the identity of the persons so solicited by Defendant and/or persons acting on

its behalf, within the four years preceding the filing of the Class Complaint or thereafter;

(i) All documents evidencing the scripts and/or content of all autodialed calls made by Defendant and/or persons acting on its behalf to any wireless telephone number, or of all telephone solicitation calls made to any residential or wireless number, each within the four years preceding the filing of the Class Complaint or thereafter;

(j) All documents supporting the contention of Defendant that it had the prior express consent of any called party to whom an autodialed call was made within the four years preceding the filing of the Class Complaint or thereafter and all documents evidencing the names, addresses and wireless telephone numbers of all persons who Defendant contends provided such prior express consent;

(k) All documents supporting the contention of Defendant that it had the prior express invitation or permission of any called party to whom a telephone solicitation call was made within the four years preceding the filing of the Class Complaint or thereafter and all documents evidencing the names, addresses and/or telephone numbers of all persons who Defendant contends provided such prior express invitation or permission;

(l) All documents supporting the contention of Defendant that it had an existing business relationship with any called party to whom a telephone solicitation call was made within the four years preceding the filing of the Class Complaint or thereafter and all documents evidencing the names, addresses and/or telephone numbers of all persons with whom Defendant contends it had such a relationship;

(m) All documents evidencing the identity and/or wireless telephone numbers of all persons who requested that Defendant and/or persons acting on its behalf stop making calls to their wireless phone number within the four years preceding the

filing of the Class Complaint or thereafter;

(n) All documents evidencing the identity and/or telephone numbers of all persons who requested that Defendant and/or persons acting on its behalf stop making telephone solicitation calls to their residential or wireless phone number within the four years preceding the filing of the Class Complaint or thereafter;

(o) All recordings, transcripts and/or summaries or other documentation of all autodialed calls made by Defendant and/or persons acting on its behalf to any wireless phone numbers and/or all telephone solicitation calls initiated by Defendant and/or persons acting on its behalf to any residential or wireless phone numbers, each within the last four years.

(p) All documents, including but not limited to invoices, transmission logs, and summary logs, provided to Defendant by any company or person which it retained to make autodialed calls and/or telephone solicitation calls on its behalf within the four years preceding the filing of the Class Complaint or thereafter;

(q) All written, recorded, electronic or other documentation evidencing the revocation and/or attempted revocation by any called party of any prior express consent that his or her wireless phone number be called using an autodialer and/or of any prior express invitation or permission that telephone solicitation calls be made to his residential or wireless number.

(r) All written, recorded, electronic or other documentation evidencing the termination and/or attempted termination by any called party of any existing business relationship with Defendant.

(s) All documents evidencing or pertaining to any and all policies or procedures implemented by Defendant with regard to the making of autodialed calls to wireless telephone numbers using an automatic telephone dialing system and/or with regard to the making of telephone solicitations to a residential or wireless

telephone;

(t) All documents evidencing or pertaining to the knowledge of Defendant of the TCPA and/or the regulations and rulings of the FCC thereunder;

(u) All documents evidencing or pertaining to any and all lawsuits and/or settlements to which Defendant was a party which, in whole or in part, pertain to the TCPA;

85. Demand is made on Defendant to notify any third parties or vendors retained by Defendant to make autodialed calls to wireless phone numbers and/or to make telephone solicitation calls to residential or wireless phone numbers of this preservation demand and request production of any documents included within this demand.

### Incorporation of Paragraphs into other Paragraphs

86. Every paragraph in this Complaint is hereby incorporated into every other paragraph.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and as representative of all other persons similarly situated, prays for judgment against Defendant, awarding relief as follows:

a. Certifying the proposed Autodialed and Telemarketed Classes and Sub-Classes under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel to represent the Classes and Sub-Classes.

b. As to the "Autodialed" Class and Sub-Class, statutory damages as provided for under 47 U.S.C. § 227(b)(3), trebled as may be appropriate;

c. As to the "Telemarketed" Class and Sub-Class, statutory damages as provided for under 47 U.S.C. § 227(c)(5), trebled as may be appropriate;

d. As to the "Autodialed" Class and Sub-Class, a permanent injunction restraining Defendant from making or having made on its behalf any additional non emergency calls to wireless phones using an automatic telephone dialing system without first obtaining the prior express consent of the called party;

e. As to the "Telemarketed" Class and Sub-Class, a permanent injunction restraining Defendant from initiating or having initiated on its behalf any additional telephone solicitation calls without the called party's prior express invitation or permission or at a time when no established business relationship exists between Defendant and the called party;

d. Pre-judgment interest from the date of filing this suit;

e. A reasonable attorney's fee to be paid out of any common fund created by virtue of this litigation;

f. All cost of this proceeding; and

g. All general, special and equitable relief to which Plaintiff and the members of the Autodialed and Telemarketed Classes and Sub-Classes are entitled by law.

TRIAL BY JURY IS DEMANDED.

**FRANCIS W. HOOKER, JR.**

Date: 1/2/13     By: _Christopher Colt North_
                     Of Counsel

Christopher Colt North, Esq., VSB 16955
William L. Downing, Esq., VSB 17704
Attorneys for Plaintiff
The Consumer & Employee Rights Law Firm, P.C.
751-A Thimble Shoals Boulevard
Newport News, Virginia 23606
Phone: (757) 873-1010
Fax:   (757) 873-8375
Email: cnorthlaw@aol.com
Email: wdowninglaw@aol.com

Matthew J. Erausquin, Esq., VSB 65434
Attorney for Plaintiff
Consumer Litigation Associates, P.C.
1800 Diagonal Rd, Suite 600
Alexandria, VA 22314
Tel. 703-273-6080
Fax. 888-892-3512
Email: matt@clalegal.com