UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

FILED
AUG 1 4 2013
CLERK, US DISTRICT COURT
NORFOLK, VA

FRANCIS W. HOOKER, JR., *for himself and
on behalf of all similarly situated individuals,*

Plaintiff,

v.   Civil Action No. 4:13cv003

SIRIUS XM RADIO, INC.,

Defendant.

## ORDER

Plaintiff Francis W. Hooker, Jr. brought this suit on January 4, 2013, contending that certain telemarketing calls made to him by Defendant Sirius XM Radio, Inc. ("Sirius XM") violated the Telephone Consumer Protection Act (47 U.S.C. § 227). On March 18, 2013, Sirius XM filed a Motion to Compel Arbitration of this case. ECF No. 11. This motion relies on an arbitration provision in a Customer Agreement that Sirius XM purportedly mailed to Mr. Hooker in connection with a trial subscription to Sirius XM's services. Mr. Hooker denies having received or consented to the Customer Agreement.

On May 14, 2013, one of Mr. Hooker's attorneys moved to withdraw from representing Mr. Hooker. ECF No. 26.

### I. FACTUAL BACKGROUND

In August 2011, Mr. Hooker and his wife, Alexandra Rae Hooker, purchased a car. The car purchase included ninety days of complementary satellite radio services provided by Sirius XM. The satellite radio subscription was activated by the car dealership. An "XM Brochure"

1

advertising Sirius XM's services was placed in the glove compartment of this car. Written in fine print at the bottom of the inside spread of this brochure is the following:

> Hardware and subscription required; sold separately. *If you decide to continue your SiriusXM service at the end of your complimentary trial, the plan you choose will automatically renew and bill at then-current rates until you call SiriusXM at 1-866-635-2349 to cancel.* Subscriptions governed by SiriusXM Customer Agreement; see www.siriusxm.com. Prices and programming subject to change. . . .

XM Brochure 2, ECF No. 18-1. The customer agreement is also mentioned in a footnote at the bottom of a page discussing sports and stocks:

> *\*Sports and Stocks requires a subscription to XM Radio, sold separately by SiriusXMRadio. NavTraffic and/or[ ]NavWeather require a subscription, sold separately by SiriusXMRadio. Subscriptions are continuous until you call SiriusXM at 1-866-635-2349 to cancel.* Subscriptions governed by SiriusXM Customer Agreement; see www.siriusxm.com. . . .

*Id.* at 1. Additionally, there is a box below the brochure's discussion of subscriptions containing the following, written in fine print:

> ### SiriusXM Radio Customer Service Guarantee
>
> If your vehicle comes equipped with a fully activated satellite radio compatible with XM packages provided by Sirius XM Radio Inc. ("SiriusXM") and a 90-day trial subscription to an XM package, SiriusXM guarantees to provide comprehensive customer service during the term of your subscription. The materials provided with your vehicle include a channel lineup and Welcome Kit. SiriusXM Listener Care is available to assist you via telephone at 1-800-967-2346 or, for your convenience, you can visit us online at siriusxm.com.
>
> **SiriusXM will contact you shortly to offer extended subscription options.**

*Id.*

Contrary to the statement that a Welcome Kit is "provided with [the] vehicle," Sirius XM usually mails Welcome Kits separately shortly after purchase. Ruhland Decl. para. 6, ECF No. 13. Welcome Kits contain a copy of the Customer Agreement, which provides terms and

2

conditions related to Sirius's services. *Id.* at paras. 4, 6. Language near the beginning of the Customer Agreement reads as follows:

> PLEASE READ THE TERMS OF THIS AGREEMENT CAREFULLY BEFORE ACCESSING OR USING THE [SIRIUS WEB]SITE OR THE SERVICE. BY ACCESSING OR USING THE SITE OR THE SERVICE, YOU AGREE TO BE LEGALLY BOUND BY THIS AGREEMENT. PLEASE DO NOT USE THE SITE OR THE SERVICE IF YOU DO NOT AGREE WITH THIS AGREEMENT.
>
> IF YOU DO NOT ACCEPT THESE TERMS, PLEASE NOTIFY US IMMEDIATELY AND WE WILL CANCEL YOUR SUBSCRIPTION. IF YOU DO NOT CANCEL YOUR SUBSCRIPTION WITHIN 3 BUSINESS DAYS OF ACTIVATION OF YOUR RECEIVER, IT WILL MEAN THAT YOU AGREE TO THIS AGREEMENT WHICH WILL BE LEGALLY BINDING ON YOU.

Customer Agreement 1, ECF No. 13-1 at 2. The arbitration clause reads, in relevant part:

> **I. RESOLVING DISPUTES:**
>
> PLEASE READ THIS PROVISION OF THIS SECTION CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. BY AGREEING TO ARBITRATION, YOU ARE HEREBY WAIVING THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR OR A PANEL OF ARBITRATORS, INSTEAD OF A JUDGE OR A JURY. THE PARTIES UNDERSTAND THAT THEY WOULD HAVE HAD A RIGHT OR OPPORTUNITY TO LITIGATE DISPUTES THROUGH A COURT AND TO HAVE A JUDGE OR JURY DECIDE THEIR CASE, BUT THEY CHOOSE (BY THEIR ACCEPTANCE OF THIS AGREEMENT, IN ACCESSING OR USING THE SERVICE OR THE SITE) TO HAVE ANY DISPUTES RESOLVED THROUGH ARBITRATION.
>
> In order to expedite and control the cost of disputes, you agree that any legal or equitable claim relating to the Service, the Site, or your Subscription or this Agreement (a "**Claim**"), will be resolved as follows:
>
> . . .
>
> **6. Class Actions and Severability:** If either party elects to resolve a claim by arbitration, that Claim shall be arbitrated on an individual basis. There shall be no right or authority for any [C]laims to be arbitrated on a class action basis or on bases involving Claims brought in a purported representative capacity on behalf of the general public, other subscribers, or other persons similarly situated. No Claim submitted to arbitration is heard by a jury or may be brought as a private attorney general. You do not have the right to act as a class representative or

3

participate as a member of a class of claimants with respect to any Claim submitted to arbitration ("**Class Action Waiver**"). . . .

*Id.* 9–10, ECF No. 13-1 at 5–6.

On September 1, 2011, Sirius XM instructed an outside vendor, IWCO Direct, Inc. ("IWCO"), to mail a Welcome Kit to the Hookers. This Welcome Kit was to include a copy of the Customer Agreement. According to Elizabeth Ruhland, a Sirius XM employee who works with such mailings, this means that in "the ordinary course of business, the Welcome Kit would have been mailed to [the Hookers] between September 9 and September 16, 2011." Ruhland Decl. para. 10, ECF No. 13 at 2. Ms. Ruhland further attests that IWCO reprints any damaged mailings and notifies Sirius XM of any mailings that are returned as undeliverable by the United States Postal Service. Sirius XM received no such notice. However, Mr. and Mrs. Hooker both deny having received any Welcome Kit from Sirius XM. It is undisputed that the Hookers did not attempt to cancel their trial subscription prior to its expiration.

Sometime in mid-September 2011, Sirius XM allegedly began to make illegal telemarketing calls to Mr. Hooker's cellular telephone. These calls are the subject of this suit.

## II. STANDARD OF LAW

"In the Fourth Circuit, a litigant can compel arbitration under the [Federal Arbitration Act] if he can demonstrate (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [nonmovant] to arbitrate the dispute." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002) (alteration provided) (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)) (internal quotation marks omitted).

"[A]s a matter of federal law, any doubts concerning the *scope* of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) (emphasis added). However, disagreements regarding the *formation* of an arbitration agreement are decided in a manner "similar to a motion to summary judgment," with all genuine factual disputes being decided in favor of the nonmovant. *Erichsen v. RBC Capital Mkts., LLC*, 883 F. Supp. 2d 562, 566–67 (E.D.N.C. 2012). Accordingly, "[t]he district court, when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980); *cf. Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007) (holding that a court faced with a motion for summary judgment must "construe the facts in the light most favorable to [the non-moving party], and . . . may not make credibility determinations or weigh the evidence").

### III. ANALYSIS

Mr. Hooker objects to the Motion to Compel Arbitration. He contends that the Customer Agreement is not a "written agreement" between the parties because he never received it or agreed to its terms. "Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation." *Adkins*, 303 F.3d at 501. Under Virginia law, a contract is formed when (1) one party to the contract makes an offer; and (2) the other party accepts that offer. *See, e.g., Va. Farm Bureau Mut. Ins. Co. v. Hodges*, 385 S.E.2d 612, 613 (Va. 1989). In determining whether a party has made or accepted an offer, the law looks not to the party's

unspoken intent but "to the reasonable meaning of his words and acts." *Lucy v. Zehmer*, 84 S.E.2d 516, 522 (Va. 1954). A party has offered or accepted a contract when that party's "words and acts, judged by a reasonable standard, manifest an intention to agree." *Id.*

Sirius XM argues that it offered the Customer Agreement to Mr. Hooker when the Agreement was mailed to him in the Welcome Kit. Under Virginia law, "mailing a letter, properly addressed and stamped, raises a presumption of its receipt by the addressee." *Hartford Fire Ins. Co. v. Mut. Sav. & Loan Co.*, 68 S.E.2d 541, 544 (Va. 1952). "However, Virginia's decisions are in line with the majority rule to the effect that a denial of receipt of such a letter raises an issue of fact to be determined by the jury." *Id.*

The Hookers deny receiving the Welcome Kit. Francis Hooker Decl. para. 18, ECF No. 15-2 at 4; Alexandra Hooker Decl. para. 15, ECF No. 15-3 at 4. There is a genuine dispute as to whether Mr. Hooker received the Customer Agreement by mail, and the Court must assume for purposes of this motion that no such documentation was received.

Sirius XM also argues that the XM Brochure notified Mr. Hooker of the Customer Agreement and therefore constituted an offer of that agreement. Sirius XM argues that Mr. Hooker accepted the offer by not cancelling the trial subscription, regardless of whether he actually viewed the Customer Agreement at the internet address provided in the XM Brochure.

The XM Brochure states that "[s]ubscriptions [are] governed by [the] SiriusXM Customer Agreement" in two footnotes. XM Brochure 1–2, ECF No. 18-1. As recited above, this statement occurs first in a description of Sports, Stocks, NavTraffic, and NavWeather, which are "sold separately by SiriusXMRadio." XM Brochure 1, ECF No. 18-1. This statement also occurs following a sentence discussing the effects of a customer's "deci[sion] to continue . . . SiriusXM service at the end of [the] complimentary trial." *Id.* at 2 (emphasis omitted). Neither

reference indicates that the phrase "[s]ubscriptions [are] governed by [the] SiriusXM Customer Agreement" includes the "complementary trial," as opposed to the paid subscriptions advertised in those footnotes.

The XM Brochure's references to the Customer Agreement indicate that Sirius XM intended to offer Mr. Hooker a paid subscription subject to the terms of the Customer Agreement. Sirius XM's intent that its offer of the complementary trial be subject to the terms of the Customer Agreement was not manifested by the words of the XM Brochure, or by any other communication which has been shown to have been received by Mr. Hooker.

The Court reiterates that the dispute regarding the language of the XM Brochure is not a dispute regarding whether the terms of the Customer Agreement apply to trial subscriptions. Such a dispute would necessarily be resolved in favor of arbitration. *See Moses H. Cone*, 460 U.S. at 24–25.

Here, however, the question is whether the language of the XM Brochure constituted an offer of the Customer Agreement that Mr. Hooker accepted by failing to cancel his trial subscription. Because this is a dispute regarding the formation of the arbitration agreement, ordinary principles of Virginia contract law apply. *Adkins*, 303 F.3d at 501. These principles establish that the language of the XM Brochure did not constitute an offer of the arbitration agreement. *See Lucy*, 84 S.E.2d at 522.

If it can be established that Mr. Hooker received the Customer Agreement that was mailed to him, this case may yet be arbitrated. As currently presented, however, this case cannot be ordered to arbitration.

## IV. CONCLUSION

Sirius XM's Motion to Compel Arbitration (ECF No. 11) is **DENIED**.

Because Mr. Hooker has other counsel who can continue his representation, his attorney's Motion to Withdraw (ECF No. 26) is **GRANTED**.

Attorney Matthew J. Erausquin and the law firm of Consumer Litigation Associates, P.C. are **GRANTED LEAVE** to withdraw as counsel for Mr. Hooker.

**IT IS SO ORDERED.**

                                                      Arenda L. Wright Allen
                                                      United States District Judge

August 14th, 2013
Norfolk, Virginia