**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NEWPORT NEWS DIVISION**

| | |
|---|---|
| **FRANCIS W. HOOKER, JR.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action No. 4:13-cv-00003** |
| **v.** ) | **(AWA/LRL)** |
| ) | |
| **SIRIUS XM RADIO INC.,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**MEMORANDUM IN SUPPORT OF**
**MOTION TO STRIKE CLASS ALLEGATIONS**

# TABLE OF CONTENTS

**Page**

I.     STATEMENT OF FACTS ........................................................................... 3

    A.     The Parties ........................................................................................ 3

    B.     The Complaint, the Class Allegations, and the Relevant Contract
        Provisions.......................................................................................... 4

    C.     Individualized Issues Relating Specifically to Plaintiff Led this Court to
        Deny Sirius XM's Motion to Compel Arbitration................................. 6

II.    LEGAL STANDARD................................................................................... 7

III.   ARGUMENT ............................................................................................... 8

    A.     Plaintiff Cannot Represent Class Members Who Received Sirius XM's
        Customer Agreements And Who Are Bound To Arbitrate ................... 9

    B.     Plaintiff Cannot Represent Class Members Who Received Sirius XM's
        Customer Agreements And Who Are Bound By The Forum Selection
        Clauses In Those Agreements............................................................ 11

    C.     Plaintiff Cannot Represent Class Members Who Received Sirius XM's
        Customer Agreements And Who Must Attempt To Resolve Any Disputes
        Individually And Informally Prior To Commencing Any Formal
        Proceeding........................................................................................ 12

    D.     Individualized Issues Regarding Whether Persons Exist Who Did Not
        Receive Sirius XM's Customer Agreements Predominate Over Common
        Questions Of Law Or Fact ................................................................. 14

IV.    CONCLUSION.......................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Page**

<small>CASES</small>

*Amchem Prods, Inc. v. Windsor*,
   521 U.S. 591 (1997)..................................................................................................8, 9, 14

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
   155 F.3d 331 (4th Cir. 1998) ...................................................................................9

*Carnival Cruise Lines, Inc. v. Shute*,
   499 U.S. 585 (1991)...............................................................................................12

*Cerdant, Inc. v. DHL Express (USA), Inc.*,
   No. 08-cv-00186, 2010 WL 3397501 (S.D. Ohio Aug. 25, 2010) ........................13

*Deiter v. Microsoft Corp.*,
   436 F.3d 461 (4th Cir. 2006) ...................................................................................7

*Dominion Transmission, Inc. v. Precision Pipeline, Inc.*,
   No. 13-cv-00442, 2013 WL 5962939 (E.D. Va. Nov. 6, 2013) .............................13

*Gariety v. Grant Thornton, LLP*,
   368 F.3d 356 (4th Cir. 2004) .................................................................................14

*Garrett v. Gulf Stream Coach, Inc.*,
   No. 08-cv-00792, 2009 WL 936297 (E.D. Va. Apr. 7, 2009) ...............................12

*In re Titanium Dioxide Antitrust Litig.*,
   No. 10-cv-00318, 2013 WL 4516472 (D. Md. Aug. 26, 2013)..............................15

*Jim Ball Pontiac-Buick-GMC, Inc. v. DHL Express (USA), Inc.*,
   No. 08-cv-00761c, 2012 WL 370319 (W.D.N.Y. Feb. 3, 2012) ...........................13

*King v. Capital One Bank (USA), N.A.*,
   11-cv-00068, 2012 WL 5570624 (W.D. Va. Nov. 15, 2012), *reconsideration denied*,
   11-cv-00068, 2012 WL 6052053 (W.D. Va. Dec. 5, 2012) ......................... passim

*Lawson v. Life of the S. Ins. Co.*,
   286 F.R.D. 689 (M.D. Ga. 2012) .............................................................................8

*Lienhart v. Dryvit Sys., Inc.*,
   255 F.3d 138 (4th Cir. 2001) ................................................................................7, 8

*Pee Dee Health Care, P.A. v. Sanford*,
   509 F.3d 204 (4th Cir. 2007) .................................................................................12

*Semenko v. Wendy's Intl., Inc.*,
   No. 12-cv-00836, 2013 WL 1568407 (W.D. Pa. Apr. 12, 2013) ..............................................8

*Soutter v. Equifax Info. Servs., LLC*,
   498 F. App'x 260 (4th Cir. 2012) ........................................................................................8

*Tattoo Art, Inc. v. Tat Int'l, LLC*,
   711 F. Supp. 2d 645 (E.D. Va. 2010) ..................................................................................13

*Valerino v. Holder*,
   283 F.R.D. 302 (E.D. Va. 2012) ..........................................................................................10

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011).............................................................................................7, 8, 10

STATUTES

47 U.S.C. § 227(b)(1)(A)(iii)..............................................................................................4

47 C.F.R. § 64.1200(c)........................................................................................................4

Federal Rule of Civil Procedure 23. ....................................................................... passim

## MEMORANDUM IN SUPPORT OF MOTION TO
## STRIKE CLASS ALLEGATIONS

Plaintiff Francis W. Hooker, Jr. received a trial subscription to Sirius XM Radio Inc.'s ("Sirius XM") satellite radio service when he bought his new car.  He alleges that Sirius XM placed unlawful telephone calls to him in an effort to market Sirius XM's service beyond the trial period.  He seeks to represent various classes of persons who allegedly also received such calls at any time in the last four years.  This Court, in denying Sirius XM's motion to dismiss the complaint and compel arbitration, found that a fact dispute existed regarding whether Plaintiff received Sirius XM's Customer Agreement containing an arbitration clause.  (Dkt. No. 28.)  In so doing, the Court held that "this case may yet be arbitrated" if Sirius XM could provide evidence that Plaintiff received the Customer Agreement.  Plaintiff's individualized factual arguments, though, while perhaps making it possible for Plaintiff to litigate his individual claim in this Court, show that it is impossible for him to pursue his class claims for four reasons.

First, Plaintiff's interests are not aligned with the interests of the classes he seeks to represent and he therefore is not an adequate class representative under Rule 23(a)(4) of the Federal Rules of Civil Procedure.  Plaintiff, who denies that he received Sirius XM's Customer Agreement and therefore argues that he is not bound by it, cannot represent persons who *did* receive that Agreement and *are* bound by it, including its arbitration and class waiver provisions.  Such persons have interests that are fundamentally different from his interests.

Second, while Plaintiff may claim that a small percentage of the class members received a version of the Customer Agreement that did not contain an arbitration clause, *all* of those Agreements included forum selection clauses requiring litigation in federal or state court in New York City.  For that reason as well, Plaintiff cannot adequately represent persons who did receive and are subject to Sirius XM's Customer Agreement.

Third, all of the Customer Agreements require subscribers to notify Sirius XM of any claims in writing and attempt to resolve disputes informally prior to initiating any formal proceedings.  Plaintiff argues that he is not subject to that requirement.  He therefore cannot adequately represent individuals who are—even assuming they perceive that they even have a dispute to discuss with Sirius XM.

Fourth, while Plaintiff might argue that he should be entitled to represent persons who, like him, will argue that they did not receive the Customer Agreement and are therefore not bound by it, a person-by-person, individualized inquiry will be necessary to identify any such persons.  And, as this Court will recall from its work in addressing Sirius XM's motion to compel arbitration of Plaintiff's individual claims, determining whether a person received Sirius XM's Customer Agreement requires a fact-specific, highly individualized inquiry that, by definition, is not subject to common or generalized proof.

None of these fatal problems can be solved, and *all* of them are apparent now and appropriately addressed in a motion to strike before this case advances any further, as courts (including the Western District of Virginia) have done in other cases.  *See*, *e.g.*, *King v. Capital One Bank (USA), N.A.*, 11-cv-00068, 2012 WL 5570624, at *13 (W.D. Va. Nov. 15, 2012), *reconsideration denied*, 11-cv-00068, 2012 WL 6052053 (W.D. Va. Dec. 5, 2012).[1]

For the reasons explained below, the Court should strike Plaintiff's class allegations at this stage to avoid further burdening the court and the parties.  Striking the class allegations, moreover, increases the likelihood of an informal resolution of Plaintiff's individual claim.

---

[1] The parties agreed, and the Scheduling Order reflects, that the *King*-related issues were appropriately addressed in an early motion to strike, and this Motion is filed as set forth in that Scheduling Order.  (Dkt. No. 33).

## I.   STATEMENT OF FACTS

### A.   The Parties

Sirius XM operates a satellite radio service that currently broadcasts more than 130 channels of commercial-free music, sports, news, talk, entertainment, traffic, and weather to more than 25 million subscribers. *See* Declaration of Elizabeth Ruhland (Dkt. No. 13) ("Ruhland Dec.") ¶ 3. Sirius XM has arrangements with major automakers, which install satellite radios in new vehicles so that purchasers and lessees can receive trial subscriptions to Sirius XM's satellite radio service. *Id*. Sirius XM must provide satellite service during the designated trial period as long as the automobile purchasers and lessees want that service. *Id*. ¶ 4. Sirius XM provides a Customer Agreement to each individual who receives a trial subscription when purchasing or leasing a vehicle, and that agreement governs the parties' relationship after the satellite radio service begins. *Id*.

Plaintiff, an individual, purchased a Hyundai Elantra in August 2011. Compl. (Dkt. No. 1) ¶ 23. The purchase price of the vehicle included a 90-day trial subscription to Sirius XM's satellite radio service, which was activated on August 23, 2011 and was in effect through November 23, 2011. *See* Ruhland Dec. ¶¶ 3, 7. Sirius XM mailed Plaintiff a Welcome Kit between September 9, 2011 and September 16, 2011. *Id*. ¶ 10. The Welcome Kit included Sirius XM's then-current Customer Agreement, which included an arbitration provision, together with a welcome letter from Sirius XM regarding Plaintiff's 90-day trial subscription and renewal opportunities. *Id*. ¶¶ 10-13; Ruhland Dec., Ex. A (attaching Customer Agreement).

The Customer Agreement "applie[d] to [Plaintiff's] paid, trial or other subscription . . . . " *See* Ruhland Dec., Ex. A. (opening paragraph). It included several provisions governing any disputes between the parties. First, the Agreement required customers to notify Sirius XM of their individual claim in writing and attempt to resolve that claim informally for a designated

period of time before initiating a formal proceeding. Ruhland Dec., Ex. A § I.1. Second, the

Customer Agreement contained an arbitration provision providing that claims would be decided

via binding arbitration at the election of either the customer or Sirius XM if informal resolution

failed and prohibiting the arbitration of claims on a classwide basis. *Id*. § I.2. That clause is

conspicuously placed in a subsection titled "**RESOLVING DISPUTES,**" which states in all-

capital letters:

> PLEASE READ THIS PROVISION OF THIS SECTION
> CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE
> RESOLVED BY BINDING ARBITRATION. BY AGREEING
> TO ARBITRATION, YOU ARE HEREBY WAIVING THE
> RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A
> JURY . . . .

*Id.* § I.

### B. The Complaint, the Class Allegations, and the Relevant Contract Provisions

Plaintiff alleges that he received unauthorized calls to his cellular telephone in violation

of the Telephone Consumer Protection Act ("TCPA") approximately halfway through his 90-day

trial subscription. *See* Compl. ¶¶ 25-35. Plaintiff alleges that he is entitled to $500 to $1,500 in

statutory damages for each call. *Id*. ¶¶ 70, 82.

Plaintiff seeks to represent two classes of persons who allegedly received unlawful

telephone calls from Sirius XM in violation of the TCPA: the "Autodialed Class" and the

"Telemarketed Class." *See* Compl. ¶¶ 61-62, 73-74. The Autodialed Class consists of persons

who received calls to their wireless phone numbers by or on Sirius XM's behalf allegedly using

an automatic telephone dialing system ("ATDS"). *Id*. ¶ 61; *see* 47 U.S.C. § 227(b)(1)(A)(iii).

The "Telemarketed Class" consists of persons who allegedly received more than one telephone

solicitation call at times of the day prohibited by the TCPA (basically, after 9:00 p.m. and before

8:00 a.m. local time). *Id*. ¶ 73; *see* 47 C.F.R. § 64.1200(c). Plaintiff also seeks to represent sub-

classes of persons in the above classes who allegedly continued to received calls after asking Sirius XM or its agents to stop calling. *Id.* ¶¶ 62, 74.

Persons who received satellite radio service (as well as the Customer Agreements accompanying the provision of that service) during the putative class period (between January 4, 2009 and the filing of the Complaint) were subject to different contracts since Sirius and XM merged to become Sirius XM in August 2008 and did not standardize the Sirius and XM customer agreements until 2011.[2]  During this period, *all* of the XM customer agreements and *all* of the Sirius XM customer agreements contained an arbitration clause. *See* Declaration of P. Fitzgerald ¶¶ 5-6, Ex. A1-A7, B1-B12 ("P. Fitzgerald Dec."); Declaration of K. Myers ¶¶ 5-6, Ex. A1-A11, B1-B7 ("K. Myers Dec.").  During that same period, all of the Sirius Customer Agreements also contained an arbitration provision except for some agreements with some persons who started their Sirius service at the beginning of the class period in 2009.  See P. Fitzgerald Dec. ¶ 7, Ex. C1-C11; K. Myers Dec. ¶ 7, Ex. C1-C5.  As to that subset, their agreements nonetheless contained a forum selection clause that required them to bring claims in state or federal courts in New York City, New York (not the Eastern District of Virginia).  See P. Fitzgerald Dec. ¶ 7, Ex. C1-C5; K. Myers Dec., Ex. C1-C2.

All of the contracts therefore precluded the claims Plaintiff seeks to bring in this lawsuit, either because of arbitration provisions or because of a forum selection clause.  All of the contracts also, as previously explained, included an informal dispute resolution provision that

---

[2] Both before and after the merger, automobiles were (and continue today to be) equipped with Sirius radio equipment or XM radio equipment.  (The satellites that deliver Sirius content cannot communicate with XM radios, and vice versa, which means that Sirius XM even after the merger has continued to offer and support Sirius and XM equipment since automobile manufacturers install only one of the two brands of radios.)  Prior to the merger, Sirius and XM obviously would have had different Customer Agreements.  After the merger, Sirius XM continued to provide "Sirius" or "XM" contracts (depending on the type of equipment installed in the automobile) until 2011.  Since then, Sirius XM provides only one Customer Agreement for both of its brands.

required persons to first notify Sirius XM of their claim in writing and attempt to resolve the claim informally over a designated period of time before initiating a formal proceeding.  *See* K. Myers Dec. ¶¶ 5-7, Ex. A1-A7, B1-B12, C1-C11; P. Fitzgerald Dec. ¶¶ 5-7, Ex. A1-A11, B1-B7, C1-C5.

### C.    Individualized Issues Relating Specifically to Plaintiff Led this Court to Deny Sirius XM's Motion to Compel Arbitration

Believing that Plaintiff had received the Customer Agreement and was bound by its terms, Sirius XM moved to compel arbitration promptly after being served with the Complaint. Plaintiff opposed the motion by "unequivocally deny[ing]" receipt of the Welcome Kit containing the Customer Agreement from Sirius XM, and arguing that he was therefore not bound by the Customer Agreement.  Plaintiff's Response Memorandum in Opposition to Motion to Compel Arbitration (Dkt. No. 15) ("MTC Opp. Brief") at 4; *see also* Declaration of Francis W. Hooker, Jr. ¶¶ 4-7 (Dkt. No. 15-2) ("F. Hooker Dec."); Declaration of Alexandra R. Hooker ¶¶ 4-7 (Dkt. No. 15-3) ("A. Hooker Dec.").  Plaintiff testified that he and his wife were the only people who checked the mail sent to his home and that they would have recalled seeing and opening the Welcome Kit had they received it.  MTC Opp. Brief at 4.  Offering even more uniquely individualized evidence, Plaintiff further testified that he and his wife moved from the address to which Sirius XM sent the Welcome Kit just about at the time when they would have received it and that they did not sign up for the Post Office's mail forwarding service.  *See* Supp. Declaration of Francis W. Hooker, Jr. (Dkt. No. 21-2) ("Supp F. Hooker Dec.") ¶¶ 3-4.

In denying Sirius XM's motion, the Court found a disputed issue of fact regarding whether Mr. Hooker received the Customer Agreement.  *See* Order at 6 (Dkt. No. 28) ("MTC Order").  The Court noted, however, that "[i]f it can be established that Mr. Hooker received the Customer Agreement that was mailed to him, this case may yet be arbitrated." *Id.* at 7.  The

-6-

Court thus recognized that a central issue for any trial of Plaintiff's claims will be whether he received the contract and is therefore bound by it, a highly individualized and fact-specific inquiry.

## II.   LEGAL STANDARD

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2549 (2011) (citation and internal quotation marks omitted).  Any plaintiff seeking class certification must meet all elements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b).  Rule 23(a) requires numerosity, commonality, typicality, and adequacy of representation, and "ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate" and "limit[s] the class claims to those fairly encompassed by the named plaintiff's claims.'" *Dukes*, 131 S. Ct. at 2549 (citations and internal quotation marks omitted).  As the Fourth Circuit has explained, the "representative party's interest in prosecuting his own case must simultaneously tend to advance the interests of the absent class members.  For that essential reason, plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466-67 (4th Cir. 2006).

A class plaintiff such as Hooker must also satisfy Rule 23(b)(3), which contains two requirements:  "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  The predominance inquiry is far more demanding than the commonality requirement of Rule 23(a) and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Lienhart v. Dryvit*

*Sys., Inc.*, 255 F.3d 138, 147 (4th Cir. 2001) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).

The party seeking class certification under Rule 23 bears the burden of demonstrating that his claims are appropriate for class treatment. *Lienhart*, 255 F.3d at 146. Class certification is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites" for class certification "have been satisfied." *Dukes*, 131 S. Ct. at 2551; *Soutter v. Equifax Info. Servs., LLC*, 498 F. App'x 260, 264 (4th Cir. 2012).

Some cases are so clearly inappropriate for class treatment that courts strike class allegations or deny certification at the outset. *E.g.*, *King*, 2012 WL 5570624, at *13; *Semenko v. Wendy's Intl., Inc.*, No. 12-cv-00836, 2013 WL 1568407, *2-3, *8, *11 (W.D. Pa. Apr. 12, 2013) (slip copy) (granting motion to strike in ADA context when court would have to engage in "a number of individual mini-trials" to determine whether class member was a "qualified individual with a disability"); *Lawson v. Life of the S. Ins. Co.*, 286 F.R.D. 689, 694-95, 701 (M.D. Ga. 2012) (granting motion to strike based upon "lack of uniformity among the contracts and state law"). This is such a case.

## III. ARGUMENT

For four fundamental reasons that can be addressed now, Plaintiff cannot meet the certification requirements of either Rule 23(a)(4) or Rule 23(b)(3). *First,* he seeks to represent persons who, unlike him (assuming that Sirius XM cannot overcome his testimony that he is not subject to a Customer Agreement) received Customer Agreements containing arbitration clauses. Any claims by those persons not only "may," but must "be arbitrated" at the election of Sirius XM (Dkt. No. 28), and Plaintiff cannot adequately represent them under Rule 23(a)(4). *Second*, as to a very small subset of Sirius XM subscribers who started to receive the Sirius brand of service before June 2009 and who were subject to a Customer Agreement that did not contain an

arbitration clause, those subscribers nonetheless agreed to bring any claims in state or federal court in New York City, not here, and Plaintiff cannot adequately represent them either. *Third*, *all* persons who are subject to any version of the Customer Agreement agreed to notify Sirius XM of any claims in writing and attempt to informally resolve disputes prior to initiating formal proceedings, such as this lawsuit. Plaintiff, who claims he is not subject to that Agreement, cannot adequately represent persons who are subject to the Customer Agreement and who must comply with that requirement (a requirement that is designed to minimize the likelihood of costly litigation such as the case that Plaintiff brings). *Fourth*, while Plaintiff may argue that he should be able to represent persons who, like Plaintiff, claim that they did not receive the Customer Agreement (and, as a result, are not bound by it), the Court will still have to engage in an individualized inquiry to identify any such persons.

For each and all of these reasons, Plaintiff's class allegations should be stricken from the Complaint.

### A. Plaintiff Cannot Represent Class Members Who Received Sirius XM's Customer Agreements And Who Are Bound To Arbitrate

Federal Rule of Civil Procedure 23(a)(4) requires that a class representative be able to "fairly and adequately protect the interests of the class." The adequacy inquiry under Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods.*, 521 U.S. at 625. "[B]asic due process requires" that Plaintiff "possess undivided loyalties to absent class members" to be an adequate class representative. *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 338 (4th Cir. 1998). The Supreme Court has noted that the commonality and typicality requirements "tend to merge" with the adequacy of representation requirement, and that, taken together, the inquiry is whether "maintenance of a class action is economical and whether the named plaintiff's claim and the

class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes*, 131 S.Ct. at 2551 n.5.  In other words, because the class representatives must "appear able to vigorously prosecute the interests of the class," the representative must "possess the same interest and suffer the same injury as the class members." *Valerino v. Holder*, 283 F.R.D. 302, 318 (E.D. Va. 2012).

Plaintiff denies receiving the Customer Agreement and, as a result, claims he is not bound by it and cannot be compelled to arbitrate.  MTC Opp. Brief at 4; *see also* F. Hooker Dec. ¶¶ 4-7; A. Hooker Dec. ¶¶ 4-7.  While this argument may help Plaintiff in his effort to avoid arbitrating his individual claim, it is fatal to his class allegations and, in particular, to his effort to represent persons who did receive the Customer Agreement and who are therefore bound by its provisions.  By definition, Plaintiff does not "possess the same interest" as such persons. *Valerino*, 283 F.R.D. at 318.

The United States District Court for the Western District of Virginia in the *King* case recently held that a plaintiff could not adequately represent a proposed class under facts just like those here.  There, a plaintiff sought to bring a class action against defendants, including InCharge Debt Solutions ("InCharge").  2012 WL 5570624, at *1.  InCharge moved to compel arbitration pursuant to an arbitration clause contained in its "Client Agreement" that contained the terms and conditions governing the parties' relationship.  *Id.* at *4.  The plaintiff denied that she ever signed an agreement containing the arbitration clause and argued instead that she entered into a debt management plan with InCharge over the phone.  *Id.*  The court ordered a bench trial on the *individual* issue of whether the plaintiff signed the Client Agreement.  *See id.*

The court, however, granted InCharge's motion to strike the *class* allegations because, if the plaintiff did enter into the Client Agreement she would have been compelled to arbitrate and,

if she did not enter into it, *she could not satisfy the requirements set forth in Rule 23*.  As the court explained:

> If Plaintiff did not sign the Client Agreement containing the arbitration clause, surely she cannot represent anyone who did sign it, either on paper or electronically.  Such individuals would be bound by the express terms of their agreements with InCharge to arbitrate their claims.  *Plaintiff could not fairly and adequately represent in this Court the interests of individuals who are bound to pursue their claims in arbitration.*  More fundamentally, allowing Plaintiff to represent individuals bound to pursue their claims in arbitration would render the arbitration clauses totally useless, in contravention of the FAA.

*Id.* at *14 (emphasis added).  The court therefore granted the motion to strike the class allegations, finding that the plaintiff's "unique situation renders her unable to satisfy Federal Rule of Civil Procedure 23's prerequisites for bringing a class action."  *Id.* at *15.

*King* is directly on point.  As in *King*, if Plaintiff is bound by the Customer Agreement he is bound to arbitrate and cannot bring a class claim.  Plaintiff, of course, testified at the motion to dismiss stage that he did not receive the Customer Agreement.  Having done so, and just as the plaintiff in *King*, Plaintiff cannot fairly and adequately represent the interests of individuals who *did* receive the Customer Agreement and who therefore *are* bound by the clauses in that Agreement.

### B.    Plaintiff Cannot Represent Class Members Who Received Sirius XM's Customer Agreements And Who Are Bound By The Forum Selection Clauses In Those Agreements

As noted above, a subset of Sirius Customer Agreements in 2009 did not contain an arbitration provision.  Those agreements, however, contain a forum selection clause that require parties to bring claims only in state and federal courts in New York City, New York (not the Eastern District of Virginia) if they cannot first resolve disputes informally.  *See* P. Fitzgerald Dec. ¶ 7, Ex. C1-C5; K. Myers Dec., Ex. C1-C2.  Any potential claims by Sirius XM customers

who received those contracts therefore cannot be brought as a class action in this Court, and

Plaintiff as a class representative cannot represent their interests.

The Supreme Court has recognized the validity of forum selection clauses in form

contracts.  *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991) (upholding Florida

forum selection clause printed on "contract page 1" of cruise ticket sent to passenger); *Garrett v.*

*Gulf Stream Coach, Inc.*, No. 08-cv-00792, 2009 WL 936297, at *4 (E.D. Va. Apr. 7, 2009)

("Absent evidence of a bad-faith motive, disparity in bargaining power does not render a forum

selection clause fundamentally unfair.").  In *Carnival Cruise Lines*, the Court noted that any

suggestion of bad faith was belied by the following:  1) the forum chosen was the defendant's

principal place of business; 2) there was no evidence of fraud or overreaching; and 3) the

passengers conceded that they were provided the ticket with the forum provision, and therefore

could have rejected the contract if they did not agree to it.  499 U.S. at 595; s*ee also Pee Dee*

*Health Care, P.A. v. Sanford*, 509 F.3d 204, 213 (4th Cir. 2007) (quoting *M/S Bremen v. Zapata*

*Off-Shore Co.*, 407 U.S. 1, 10 (1972)) (internal quotation marks omitted) ("A forum selection

clause is prima facie valid and should be enforced unless enforcement is shown by the resisting

party to be unreasonable under the circumstances.").

Plaintiff cannot represent persons bound by a forum selection clause in a class action

claim in this Court.

**C.     Plaintiff Cannot Represent Class Members Who Received Sirius XM's
        Customer Agreements And Who Must Attempt To Resolve Any Disputes
        Individually And Informally Prior To Commencing Any Formal Proceeding**

All of the Sirius XM Customer Agreements contain a mandatory informal dispute

resolution provision that require parties to first notify Sirius XM of their claim in writing and

attempt to resolve the claim informally for a designated period of time before initiating a formal

proceeding.  *See* K. Myers Dec. ¶¶ 5-7, Ex. A1-A7, B1-B12, C1-C11; P. Fitzgerald Dec. ¶¶ 5-7,

Ex. A1-A11, B1-B7, C1-C5.  Presumably, Plaintiff will argue that he individually is not required to follow that informal procedure because he did not receive the Customer Agreement.  But that argument makes it impossible for him to represent persons who *did* receive Customer Agreements and who therefore cannot ignore a contractual condition precedent to filing suit.

In *Dominion Transmission, Inc. v. Precision Pipeline, Inc.*, No. 13-cv-00442, 2013 WL 5962939, at *1 (E.D. Va. Nov. 6, 2013) (slip copy), the plaintiff's contract with Dominion Transmission contained an informal dispute resolution process that had to be followed prior to filing a lawsuit.  Dominion failed to comply with that process.  *Id.* at *2.  The Court dismissed the complaint, stating that "[u]ntil Dominion complies with the terms of [the alternative dispute resolution provision] the instant dispute should not be before this Court."  *Id.* at *6; *see also Tattoo Art, Inc. v. Tat Int'l, LLC*, 711 F. Supp. 2d 645, 651, 655 (E.D. Va. 2010) (dismissing a complaint when the plaintiff failed to submit dispute to formal mediation as required by licensing agreement and noting that "[a] number of courts have found that when parties to a lawsuit have elected not to be subject to a court's jurisdiction until some condition precedent is satisfied, such as mediation, the appropriate remedy is to dismiss the action").

Here, too, Plaintiff cannot adequately represent persons who received Sirius XM's Customer Agreement and must engage in an informal dispute resolution process.  *See*, *e.g.*, *Jim Ball Pontiac-Buick-GMC, Inc. v. DHL Express (USA), Inc.*, No. 08-cv-00761c, 2012 WL 370319, at *3 (W.D.N.Y. Feb. 3, 2012) (denying class certification where "the court would be required to engage in individualized factual inquiries to determine those putative class members who complied with the 180-day [notice of dispute] requirement" and finding the class definition to be overbroad to the extent that it did not limit the class to those who complied with the notice requirement); *Cerdant, Inc. v. DHL Express (USA), Inc.*, No. 08-cv-00186, 2010 WL 3397501, at *6 (S.D. Ohio Aug. 25, 2010) (same).

**D.** **Individualized Issues Regarding Whether Persons Exist Who Did Not Receive Sirius XM's Customer Agreements Predominate Over Common Questions Of Law Or Fact**

Plaintiff may argue that he is at least entitled to represent a class of customers like him who did not receive the Customer Agreement and are therefore not bound by its arbitration and forum selection clauses.  Alternatively, he may argue that he may represent putative class members with versions of the Customer Agreement similar to the Customer Agreement sent to him because the arbitration clause in that version allows either party to elect arbitration, rather than mandating arbitration of all disputes as the clause in *King* required.  Neither argument saves his class allegations, because each would require the type of individualized proof that Rule 23 prohibits.

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The rule is intended to ensure that trial of a class representative's claim will resolve the claims of absent class members, rather than having the resolution of absent class member's claims depend on countless separate proceedings.  The predominance requirement "'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'"  *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362 (4th Cir. 2004) (quoting *Amchem Prods.*, 521 U.S. at 623-24).

**1.** The factual issues raised by the parties in connection with Sirius XM's motion to compel arbitration highlight the type of individualized inquiry that will be necessary here for any putative class members who argue that they did not receive the Sirius XM Customer Agreement.  For example, Plaintiff "unequivocally" denied receiving a Welcome Kit containing the Customer Agreement from Sirius XM or its mailing vendor and submitted two separate declarations—one

-14-

from Plaintiff and one from his wife—to provide factual support for his arguments.  MTC Opp.

Brief at 4; F. Hooker Dec.  ¶¶ 4-7; A. Hooker Dec. ¶¶ 4-7.  Uniquely, Plaintiff also claimed that

he moved to a new address around the time period in which he would have received the

Welcome Kit and that he and his wife did not sign up for the Post Office's mail forwarding

service.  *See* Supp. F. Hooker Dec. ¶¶ 3-4.  In denying Sirius XM's motion to compel arbitration,

the Court found that there was a genuine factual dispute as to whether Plaintiff received the

Customer Agreement that had to be resolved by the trier of fact.  *See* MTC Order at 6.  Such a

similarly individualized inquiry will need to occur for any putative class member who, like

Plaintiff, claims that he or she did not receive the Customer Agreement.

The court in *King* recognized that determining whether a contract was formed is the type

of individualized issue that predominates over common issues:

> Even if there were enough such individuals that joinder would be
> impracticable, there would be too many factual variations in the
> cases for a class action to be appropriate.  For each class member,
> the factfinder would have to decide whether the facts in that
> individual's case show that he or she did not sign the Client
> Agreement and therefore is not bound by the arbitration clause.

2012 WL 5570624, at *14; *see also In re Titanium Dioxide Antitrust Litig.*, No. 10-cv-00318,

2013 WL 4516472, at *18 (D. Md. Aug. 26, 2013) (finding that individual questions of fact and

law predominate when "[f]or each class member who challenges the applicability of one or more

of the contractual provisions at issue, this Court could be forced to conduct extensive analysis

regarding choice of law, and contract formation and interpretation, for each contract").  Such

individualized inquiries by definition are not subject to common or generalized proof.

    **2.**    As Plaintiff's own experience shows, there is no practical difference between the

mandatory arbitration clause in *King* and the provision here, which requires arbitration if either

party elects it.  Sirius XM moved to compel arbitration promptly after Plaintiff raised a dispute

by filing this lawsuit, as Sirius XM has done in other lawsuits raising TCPA claims.[3]  But a provision allowing either party to elect to arbitrate actually hurts Plaintiff's case rather than helps it.  Determining whether a party would elect arbitration for each putative class member's individual claim raises additional individualized issues that extend beyond the individualized contract formation issues, further making certification inappropriate.  While the election point is largely moot because Sirius XM would likely, as it did here, elect arbitration when notified of an actual claim, it would still require individualized inquiry that is not subject to common or generalized proof.

## IV.    CONCLUSION

For the reasons set forth above, Defendant Sirius XM respectfully requests this Court to strike the class allegations from Plaintiff's Complaint.

---

[3] Sirius XM has moved to compel arbitration in this and every other case in which it has been served with a complaint alleging a violation of the TCPA.  *Knutson*, 2012 WL 1965337; *Rodal v. Sirius XM Radio Inc.*, No. 13-cv-61770 (S.D. Fla.).  There is thus no practical distinction between the mandatory arbitration clause in King and the arbitration clause here.

Dated: December 16, 2013                Respectfully submitted,


/s/ William V. O'Reilly_____
William V. O'Reilly (VA Bar. No.  26249)
Jeffrey A. McSorley (Va Bar. No. 68437)
Attorneys for Defendant Sirius XM Radio Inc.
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
Tel: (202) 879-3939
Fax: (202) 626-1700
Email: woreilly@jonesday.com
Email: jamcsorley@jonesday.com


Thomas Demitrack (admitted pro hac vice)
Attorney for Defendant Sirius XM Radio Inc.
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
Tel: (216) 586-3939
Fax: (216) 579-0212
Email: tdemitrack@jonesday.com

## CERTIFICATE OF SERVICE

I certify that on December 16, 2013, a copy of the foregoing was filed electronically with

the Clerk of Court using the ECF system which will send notification to the following ECF

participants:

Christopher Colt North, Esq.
William L. Downing, Esq.
Attorneys for Plaintiff
THE CONSUMER & EMPLOYEE
RIGHTS LAW FIRM, P.C.
751-A Thimble Shoals Blvd.
Newport News, VA 23606
Tel: (757) 873-1010
Fax: (757) 873-8375
Email: cnorthlaw@aol.com
Email: wdowninglaw@aol.com

/s/ William V. O'Reilly
William V. O'Reilly (VA Bar. No. 26249)
Jeffrey A. McSorley (VA Bar. No. 68437)
Attorneys for Defendant Sirius XM Radio Inc.
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
Tel: (202) 879-3939
Fax: (202) 626-1700
Email: woreilly@jonesday.com
Email: jamcsorley@jonesday.com