# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Newport News Division

**FRANCIS W. HOOKER, JR,**
**For himself and on behalf of all**
**similarly situated individuals,**

      **Plaintiff,**

v.                        **Case No.: 4:13-cv-00003 (AWA/LRL)**

**SIRIUS XM RADIO, INC.**

      **Defendant.**                         **\*\*\*REDACTED\*\*\***

## MEMORANDUM IN SUPPORT OF MOTION TO STRIKE ERRATA SHEET OF THIRD-PARTY WITNESS CAREER HORIZON, INC., d/b/a TELESERVICES DIRECT

### I.    INTRODUCTION

On December 12, 2014, Aaron Gore, the designated Rule 30(b)(6) representative for Career Horizon, Inc. d/b/a TeleServices Direct ("TSD"), was deposed by Plaintiff's counsel in Indianapolis, Indiana. After confirming that he had reviewed and was prepared to testify on each of the deposition topics that had been served upon TSD more than 10 weeks earlier,[1] Mr. Gore provided four hours of sworn deposition testimony.

During the course of his deposition, Gore was offered at least two opportunities to change or modify his testimony after speaking with TSD's counsel during two deposition breaks. In response, Gore made only one minor change, effectively confirming that his testimony was otherwise correct. However, after the close of the deposition and at a point when Plaintiff's counsel could no longer question him, Gore submitted an errata sheet which made numerous substantive changes to his deposition, none of which was attributable to transcription error.

---

[1] The original deposition notice and list of topics was served on October 1, 2014, for a deposition to be held on October 30, 2014. Due to scheduling problems, the date of the deposition was changed to December 12, 2014. (*Compare* Ex. 1, TSD 30(b)(6) Notice of Dec. 2, 2014 *with* Ex. 2, TSD 30(b)(6) Notice of Oct. 4, 2014.)

Most of the changes made by Gore concerned the key issue of whether the calls made by TSD on behalf of Sirius to the cellular phones of Plaintiff and the putative Class Members he seeks to represent were made using an "automatic telephone dialing system" ("ATDS") as that term is defined under the Telephone Consumer Protection Act ("TCPA") and interpreted by the FCC. Gore's unaltered testimony supports Plaintiff's position that the calls were made using an ATDS. The errata sheet changes are designed to diminish or nullify this important testimony.

Plaintiff's motion to strike raises the issue of whether Gore may use Federal Rule of Civil Procedure 30(e) as a vehicle to change his testimony from that which was accurately transcribed to that which, in retrospect and after consulting with others, Gore wishes he might have given to enhance the defense of TSD's client, Sirius XM Radio, the defendant in this matter. In the Eastern District of Virginia, the answer is clear. He may not, and this Court should strike Gore's improper errata sheet.

## II.     THE RULE 30(B)(6) REQUIREMENTS FOR WITNESS PREPARATION

Under Rule 30(b)(6), a party like Plaintiff may take testimony from an entity by naming "as the deponent a public or private corporation, a partnership, . . . or other entity and must describe with reasonable particularity the matters for examination. . . ." FED. R. CIV. P. 30(b)(6). Such a notice imposes significant duties on the recipient, requiring the entity to take affirmative steps:

> [T]o name one or more individuals who will testify on its behalf regarding matters known or reasonably available to the corporation. The corporation must make a good-faith effort to designate people with knowledge of the matter sought by the opposing party and to adequately prepare its representatives so that they may give complete, knowledgeable, and nonevasive answers in deposition.

*Humanscale Corp. v. CompX Int'l, Inc.*, No. 3:09-CV-86, 2009 WL 5091648, at *1–2 (E.D. Va. Dec. 24, 2009). The corporation's duties under Rule 30(b)(6) are not to be taken lightly because of the import of the designation:

> The testimony elicited at the Rule 30(b)(6) deposition represents the knowledge of the corporation, not of the individual deponents. The designated witness is 'speaking for the corporation'. . . . The corporation appears vicariously through its designee. If the persons designated by the corporation do not possess personal knowledge of the matters set out in the deposition notice, the corporation is obligated to prepare the designees so that they may give knowledgeable and binding answers for the corporation. Thus, the duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved.
>
> Rule 30(b)(6) explicitly requires [a corporation] to have persons testify on its behalf as to all matters known or reasonably available to it and, therefore, implicitly requires such persons to review all matters known or reasonably available to it in preparation for the Rule 30(b)(6) deposition.

*Id.* at *2 (quoting *United States v. Taylor*, 166 F.R.D. 356, 361–62 (M.D.N.C. 1996), alteration in original). The duty to properly prepare a 30(b)(6) witness is not affected by the need for the designee to expend "many hours of work and review of voluminous documents" to educate himself on the topics of testimony. *Id.* Requiring appropriate preparation for 30(b)(6) testimony "is necessary in order to make the deposition a meaningful one and to prevent the 'sandbagging' of an opponent by conducting a half-hearted inquiry before the deposition but a thorough and vigorous one before the trial." *Paice, LLC v. Hyundai Motor Co.*, No. CIV. WDQ-12-0499, 2014 WL 3819204, at *20 (D. Md. June 27, 2014) (quoting *Taylor*, 166 F.R.D. at 361–62). Put bluntly, "in order to comply with the rule, the corporation has an affirmative duty to ensure that its designee has knowledge of *all information* on the noticed topics reasonably available to the corporation and is prepared to provide *complete, binding answers* on that information." *Ethox Chem., LLC v. Coca-Cola Co.*, No. 6:12-CV-01682-TMC, 2014 WL 2719214, at *2 (D.S.C. June 16, 2014) (emphasis added).

### III.   THE DEPOSITION OF AARON GORE, TSD'S 30(B)(6) WITNESS

**A.   Mr. Gore's Work History And Qualifications As A TSD Representative**



Mr. Gore testified that he has been employed by ███████████████

██████████████. (Ex. 3, Gore Dep. at 5:1–9.) All told, he has worked in the

███████████████, half of his life. (*Id.* at 5:3–4, 5:24–6:4.) He began his career

working at a ██████████████ in San Antonio, Texas, where he went from an ███

██████████████ positions. (*Id.* at 6:10–19.) He was ███████████ at the end of his

██████████████, with responsibilities "for multiple ███████████████

██████████." (*Id.* at 6:14–7:5.) After leaving ████, Gore worked for █████████████

for about one year as an account executive. (*Id.* at 7:12–22.) He left ███████ to become the

business development manager for █████████████, an organization of auto dealerships also

located in Texas, where he worked for █████████████. (*Id.* at 8:4–13.) Gore then went to

work at ███████████████████ years, eventually attaining a business development

position, before arriving at TSD. (*Id.* at 8:14–9:21.)

Gore began as a ██████████████ at TSD, and has subsequently held

several positions including ███████████████████████████,

his current position that he has held for about five years. (*Id.* at 10:11–24, 11:4–6.) Having spent

more than ██████████████, Gore commented that he has "███████████████

██████████████." (*Id.* at 97:21–98:2.)

**B.   The Steps Mr. Gore Took To Prepare For His Deposition**

Although Gore's deposition ultimately took place in December 2014, TSD had the

30(b)(6) notice and topics of testimony in-hand in early October. (*Compare* Ex. 2, TSD 30(b)(6)

Notice of Oct. 4, 2014 *with* Ex. 1, TSD 30(b)(6) Notice of Dec. 2, 2014.) That certainly allowed

TSD plenty of time, as the Rule requires, to select and properly prepare Gore for his deposition.



To prepare for his 30(b)(6) testimony, Gore ██████████████████████████████████ ██████████. (Ex. 3, Gore Dep. at 12:24–13:5.) He ████████████████████████████████ ███████ the deposition, for ██████████████████. (*Id.* at 13:6–17.) He also ██████████ ████████████████████████████████ week as his deposition, but that ██████████████ ██████████████████████████████████████████████████████████████████ ██████████████" (*Id.* at 13:25–14:8.) Before that, Gore ████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████ his deposition. (*Id.* at 14:9–15:13.) Gore also ██████████████████ ██████████████████████████████████████████████████████████████████

the calls it made to Plaintiff Hooker. (*Id.* at 15:14–21, 38:5–9.) He further confirmed his ██████████████████████████████████████████████████████████ Rule 30(b)(6). (*Id.* at 12:10–14.)

### IV.   BECAUSE MR. GORE'S ERRATA SHEET ALTERS HIS TESTIMONY BEYOND THE PERMISSION OF RULE 30(E), THE COURT SHOULD STRIKE IT

**A.   The Ability To Correct Deposition Testimony Under Rule 30(e)**

Federal Rule of Civil Procedure governs changes to deposition testimony, providing that "[o]n request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which: (A) to review the transcript or recording; and (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them." FED. R. CIV. P. 30(e)(1).

Courts are split concerning the extent to which a deponent may make changes to the substance of his deposition testimony. One line of cases holds that, as long as a deponent follows

the procedural mandates of Rule 30(e), he may make any changes to the deposition, even if they alter or contradict his sworn testimony. *See, e.g., Podell v Citicorp Diners Club, Inc.*, 112 F.3d 98, 103 (2d Cir. 1997); *Lugtig v. Thomas*, 89 F.R.D. 639, 641 (N.D. Ill. 1981). Under this view of Rule 30(e), the original deposition transcript remains part of the record and may be read at trial by one side, while the other side may introduce the errata sheet and explain the reasons for the deponent's changes. *Podell*, 112 F.3d at 103. Moreover, when appropriate, the deposition may be re-opened at the deponent's expense, to allow questioning about the reasons for the changes. *Foutz v. Town of Vinton*, 211 F.R.D. 293, 295 (W.D. Va. 2002).

A second line of cases takes a stricter, more limited view of the proper use of Rule 30(e), limiting changes to the correction of demonstrated errors made by the court reporter, whether in form or in substance. *See, e.g., Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1242 (10th Cir. 2002). This line of cases is most famously represented by *Greenway v. International Paper Co.*, 144 F.R.D. 322 (W.D. La. 1992), which is well known for the following passage:

> The purpose of Rule 30(e) is obvious. Should the reporter make a substantive error, i.e., he reported "yes" but I said "no," or a formal error, i.e., he reported the name to be "Lawrence Smith" but the proper name is "Laurence Smith," then corrections by the deponent would be in order. The Rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. *A deposition is not a take home examination.*

*Id.* at 325 (emphasis added).

The Fourth Circuit has yet to weigh in on the appropriate scope of Rule 30(e) alterations. However, in an analogous context the court has refused to permit a deponent to contradict by affidavit his own sworn deposition testimony, stating, "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a

procedure for screening out sham issues of fact." *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984) (quoting *Perma Research & Dev. Co. v. Singer*, 410 F.2d 572, 578 (2d Cir. 1969)); *see also Stevenson v. City of Seat Pleasant, Md.*, 743 F.3d 411, 422 (4th Cir. 2014).

Those courts of this District which have addressed the issue have consistently followed the stricter, more limited view of Rule 30(e). *Stokes v. Commonwealth Dep't of Corr.*, No. 3:10cv370, 2012 U.S. Dist. LEXIS 137729, *13 n.7 (E.D. Va. 2012) ("Rule 30(e)(1) allows only the correction of demonstrated errors *made by the court reporter*, whether in form or in substance.") (quotation marks and citations omitted; emphasis added)[2]; *Touchcom, Inc. v. Bereskin & Parr*, 790 F. Supp. 2d 435, 465 (E.D. Va. 2011) ("[T]he purpose of an errata sheet is to correct alleged inaccuracies in what the deponent said at his deposition, not to modify what the deponent said for tactical reasons or to reflect what he wishes that he had said.") (quotation marks and citations omitted); *Lee v. Zom Clarendon, L.P.*, 689 F. Supp. 2d 814, 819 n.3 (E.D. Va. 2010) ("[T]he errata sheet clearly makes substantive changes, not technical or typographical changes, to plaintiff's deposition testimony. Altering deposition testimony in this manner is not a permissible use of errata sheets."); *see also Campbell v. Verizon Va., Inc.*, 812 F. Supp. 2d 748, 752 (E.D. Va. 2011) ("[W]hile the Court will not strike the statements contained in the errata sheet, it also will not permit the Plaintiff to create a genuine issue of material fact where none previously existed."); *Lewis v. Va. Baptist Homes*, No. 95-0071-C, 1997 U.S. Dist. LEXIS 2562, at *5 n.1 (W.D. Va. 1997) ("[A] plaintiff is not permitted to virtually rewrite portions of a deposition . . . simply by invoking the benefits of Rule 30(e) . . . . A deposition is not a 'take home examination' and an 'errata sheet' will not eradicate the import of previous testimony taken under oath.") (quotation marks and citations omitted).

---

[2]While the *Stokes* court declined to consider the deponent's errata sheet because it did not meet the *procedural* requirements of Rule 30(e)(1), the court further noted that, even in the absence of the procedural defect, it would not have considered the errata sheet due to its improper use.

Judge Payne provided a thorough analysis of Rule 30(e) in *E.I. du Pont de Nemours &*

*Co. v. Kolon Industries, Inc.*, 277 F.R.D. 286 (E.D. Va. 2011). In *du Pont*, the plaintiff moved to

strike the errata sheets of several deponents, including two Rule 30(b)(6) representatives. All

together, the defendant had submitted forty errata sheets containing approximately 900 line-by-

line corrections for the five witnesses identified in the motion. Judge Payne described the

changes made by one deponent and the parties' respective positions as follows:

> Most, if not all, of these responses and errata changes relate to information about
> former DuPont employee Michael Mitchell and a CD (the "Mitchell CD").
> Testimony about Mr. Mitchell and the CD address central issues in this case. In
> some instances, the errata sheets alter dates, for example, from "December" to
> "March of 2007." . . . In other cases, Noh adds sentences to his original testimony.
> For example, as DuPont correctly points out, the original testimony of Noh paints
> a scenario wherein Mitchell affirmatively tendered a CD to Kolon, while the
> errata testimony indicates that Mitchell did not affirmatively deliver the CD to
> Kolon. . . . DuPont . . . argues that Noh . . . attempts to change his original
> response so that it no longer conveys an affirmatively relinquishment of the CD
> by Mitchell to Kolon. Kolon, on the other hand, does not take the position that
> Noh's changes are mere typographical or transcription errors; rather Kolon asserts
> that Rule 30(e) permits errata corrections that substantively alter the original
> testimony.

*Id.* at 292–93 (footnotes omitted).

After discussing the two lines of authority interpreting Rule 30(e) and the position of

other cases within this District and elsewhere within the Fourth Circuit, Judge Payne aligned

himself with the more-restrictive decisions of *Garcia, Greenway, Wyeth,* and *Lee,* which hold

"that transcriptional or typographical errors are *the only types of corrections* permitted under

Rule 30(e)":

> This approach to the use of errata sheets serves to allow the correction of
> demonstrated court reporter errors while preserving the fundamental concept that
> a deponent must give honest and complete answers at the deposition. It makes no
> sense to allow a deponent to change sworn testimony merely because after the
> deposition he wishes that he had said something other than what was said.
> Indeed, to adopt such an approach would be to set at naught the efficacy of the
> deposition process.

Nor can the errata process permitted by Rule 30(e) be used to allow post-deposition revision of testimony to conform a witness' testimony to enhance a party's case. That too would undermine the purpose for which depositions are allowed under the federal rule.

Moreover, allowing the "make any changes you want" approach would lead to substantial additional litigation expenses by making it necessary to reopen the deposition to explore the altered testimony. And, the approach inevitably will lead to longer trials as counsel pursue the reasons for the changes on cross-examination. The result would be to inject significant confusion and delay into the trial itself. That also would cause trials to be longer and more costly. The rules may not be interpreted to that end. Indeed, Fed. R. Civ. P. 1 directs that the rules are to be "construed and administered to secure the just, speedy and inexpensive determination in every action. . . ." Taking the more restrictive approach to applying Rule 30(e) serves that directive.

*Id.* at 297–98 (emphasis added). This Court should adopt this well-reasoned, prevailing approach, and strike Gore's Errata Sheet.

## B.    As Mr. Gore's Alterations Change More Than Simple Errors, The Court Should Strike Them In Their Entirety

As is abundantly clear from the authorities and discussion above, deposition testimony is not a placeholder to be scrutinized and altered by committee later, after the questions are known. *See Wyeth*, 252 F.R.D. at 297 (striking errata sheet because the changes "indeed represent lawyerly fixing of potentially problematic testimony for" the defendant). 30(b)(6) testimony is expected to be contemporaneous and made by a properly prepared witness, not reconsidered and changed after-the-fact under the guise of Rule 30(e). Disregarding these tenets, Gore admits that

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

████████████████████████."[3] (Ex. 4, Gore Errata Sheet at 1:5–8.) But the time for such discussions had long passed—Gore should have consulted with Mr. McCaughan and Mr.

---

[3] Although Mr. Gore does not mention it, it is naïve to think that counsel for TSD was not also involved in those discussions and the completion of Mr. Gore's Errata Sheet.

Weathers *before* sitting down to testify on December 12, not some time after the deposition had been completed. Rule 30(b)(6) imposes upon TSD the *duty* to either educate Gore on all topics before his deposition, or put up another witness on topics where Gore's knowledge may fall short. *See Coryn Grp. II, LLC v. O.C. Seacrets, Inc.*, 265 F.R.D. 235, 238 (D. Md. 2010) ("[T]he corporation is expected to *create* a witness or witnesses with responsive knowledge, and in doing so must make a good faith effort to find out the relevant facts—to collect information, review documents, and interview employees with personal knowledge.") (internal quotation marks omitted, emphasis in original); *Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 504 (D. Md. 2000) ("Upon notification of a [30(b)(6)] deposition, the corporation has an obligation to investigate and identify and if necessary prepare a designee for each listed subject area and produce that designee as noticed."); *see also Taylor*, 166 F.R.D. at 363 ("Producing an unprepared witness is tantamount to a failure to appear."). When examining the Errata Sheet against Gore's original testimony, it is obvious the intent of the Errata Sheet is not to correct genuine mistakes, but to alter the record so that it favors TSD and, by extension, Sirius.

The following tables contrast Gore's deposition testimony with the "clarifications" made on this Errata Sheet (and includes the question to which the testimony relates, with objections omitted).

| Original Testimony (Ex. 3) | Altered Testimony (Ex. 4) |
|---|---|
| Page 16:2–18: <br><br> Q. ███████████████████ <br><br> ███████████████████ <br><br> ████████████████. | **First Alteration** <br><br> Page 16:18: <br><br> ███████████████████ <br> ███████. (See my corrections to Pager [sic] 80, below). (Clarification) |

| Original Testimony (Ex. 3) | Altered Testimony (Ex. 4) |
|---|---|
| **Page 18:6–11:**<br><br>Q. ███████████████████<br>████████<br>██████████████████████<br>██████████ | **Second Alteration**<br><br>**Page 18:11:**<br><br>███████████████████<br>██. (Clarification) |
| **Page 68:18–18:**<br><br>Q. ███████████████████<br>███████████████████<br>███████████████████<br>███████████████████<br>██████████████ | **Third Alteration**<br><br>**Page 68:17–18:**<br><br>███████████████████<br>███████████████████<br>███████████████████<br>████████████<br><br>(Clarification) |
| **Page 69:24–70:7:**<br><br>Q. ███████████████████<br>███████████████████<br>████████<br>███████████████<br>██████████ | **Fourth Alteration**<br><br>**Page 70:7:**<br><br>███████████████████<br>(Clarification) |



| Original Testimony (Ex. 3) | Altered Testimony (Ex. 4) |
|---|---|
| **Page 80:21–81:17:**<br><br>Q. | **Fifth Alteration**<br><br>**Page 80:21–81:17:**<br><br>. (Clarification) |
| **Page 85:21–86:4:**<br><br>Q. | **Sixth Alteration**<br><br>**Page 86:1–4:**<br><br>. (Clarification) |



| Original Testimony (Ex. 3) | Altered Testimony (Ex. 4) |
|---|---|
| **Page 88:3–10:**<br><br>Q. | **Seventh Alteration**<br><br>**Page 88:8–10**<br><br>(Clarification) |
| **Page 89:22–90:10:**<br><br>Q. | **Eighth Alteration**<br><br>**Page 90:2–10:**<br><br>. (Clarification) |

| Original Testimony (Ex. 3) | Altered Testimony (Ex. 4) |
|---|---|
| **Page 91:15–92:3:** | **Ninth Alteration** |



. (Clarification)



| Original Testimony (Ex. 3) | Altered Testimony (Ex. 4) |
|---|---|
| Page 99:4–101:7: | **Tenth Alteration** |
| | Page 99:4–101:7: |

. (Mistake)

As this direct comparison shows, each of Gore's supposed "clarifications" do not address any purported errors in the transcription of his testimony. Rather, he makes entirely new, fresh statements that seek to alter or outright contradict his unequivocal deposition testimony. Nowhere in the original transcript does Gore suggest that he lacks knowledge or would need to consult others in order to provide an accurate answer on any of these points. Indeed, after they had taken a break during his deposition, Plaintiff's Counsel asked Gore ███████████ ████████████████████████████████████████████████████████. (Ex. 3, Gore Dep. at 98:18–99:3.)[4] Gore declined. (*Id.*) Instead, no doubt with the input of counsel, Gore realized that his given testimony may adversely affect the case of his employer's client, Defendant Sirius, and chose to attempt to change his testimony purportedly pursuant to Rule 30(e). Following the lead of Judge Payne and the many other judges within the district to have considered the issue, this Court should reject Gore's blatant attempt to rewrite his deposition testimony by means of a Rule 30(e) errata sheet. *See du Pont*, 277 F.R.D. at 298 (rejecting the "make any changes you want" view of Rule 30(e)).

Gore's alterations appear bent on making TSD's equipment appear more complicated than it actually is (as in the First, Third, and Fourth Alterations) and that it requires a greater level of human involvement to place calls (as in the Fifth, Seventh, Eighth, and Tenth Alterations) than Gore originally stated. For example, Gore's Third and Fourth Alterations explain the ███████████████████████████████████████████████████████ ████████████████████████████. Gore's original testimony is nearly the exact opposite, stating ██████████████████████████████████████████████████████ ███████████████████.

---

[4] In response to similar prompting, Mr. Gore earlier corrected testimony relating ███████████████████ ████. (Ex. 3, Gore Dep. at 36:21–25.)



Similarly, Gore's Fifth, Seventh, and Eighth Alterations set out ████████████ ████████████████████████ but that are unmentioned in his original testimony. In addition to adding testimony regarding how this equipment may work, Gore also includes new comments ████████████████████████████ ████████████████████████. This information, again, stands in direct contrast to his original testimony that ████████████████████████ ████████████████████████.

These points, along with others relating to the capacities of TSD's calling system, are certain to be vigorously contested both by experts and in the briefing in this case. The new, altered testimony will impact that analysis, as Gore now takes positions regarding those systems that are arguably more favorable to TSD and Sirius than was his original testimony. Such tactical, orchestrated restructuring of evidence is not the purpose of the corrections contemplated by Rule 30(e). *See Wyeth*, 252 F.R.D. at 297 ("The correction to answer nos. 3 and 4 were a similar lawyerly amendment of the answers to comport with [defendant]'s theory of the case."). The Court should therefore strike the alterations.

Moreover, Rule 30(b)(e) requires that changes to deposition testimony be accompanied by "the reasons for making them." FED. R. CIV. P. 30(e)(1)(B). Certainly, detailed, substantive changes like those here must be accompanied by more than Gore's glib "clarification," and "mistake" designations (*see* Ex. 4), as those one-word reasons provide absolutely no insight into the facts that precipitated the changes. Gore has not explained why any of the altered testimony needed "clarifying," further supporting the conclusion that the Errata Sheet should be stricken.

The Ninth and Tenth Alterations illustrate an additional, compelling reason that Rule 30(e) should not be used to alter original testimony—it robs Plaintiff of the ability to cross-

examine and ask follow-up questions of the witness on the new information. For example, in the Ninth Alteration (relating to pages 91, 92, 94, and 96), the new statement is far from clear. Gore's alteration includes ███████████████ showing that even after months of time to prepare and consult with whomever at TSD would know, Gore did not take the appropriate steps to ensure that he is knowledgeable on the topic and could give a complete answer *even when he knew what the exact question was.* Additionally, in the Tenth Alteration, Gore comments that ████████████████████████████████████████

████████████████████████████████████████

████████████████████ Not only does the alteration directly contradict Gore's testimony that ███████████████████████████████████████

██████, but Plaintiff now has no opportunity to question Gore about the nature of ████████

███████████████████ may have affected other aspects of the calling process. And, of course, even if Gore's alteration is to be believed, it would seem that knowing such information would be part of the preparation of a witness for 30(b)(6) testimony regarding the "complete capacities, capabilities, integration and functioning" of the equipment used to make calls on behalf of Sirius. (*See* Ex. 2, Oct. 4, 2014 30(b)(6) notice to TSD at 2, topic 9.) Gore's failure to know that information at the time of his deposition goes completely unexplained, and Plaintiff cannot now ask him about it. Again, the utter unfairness of the tactic employed by TSD here is plain and should not be permitted.

**C.    Striking Mr. Gore's Corrections Is Fair Given That Plaintiff Was Not Provided The Opportunity To Further Question Gore Before The February 13 Deadline For Initial Expert Reports**

TSD did not offer to make Gore available for additional questioning following the substantive changes to his testimony by means of his errata sheet. The deadline for initial expert

reports of February 13 passed before the filing of this Motion. As such, Plaintiff will not have a ruling on this Motion, and will not have time to implement any relief the Court may grant, because he has already served his expert report. For example, should the Court deny Plaintiff's Motion, he will not have the ability to incorporate Gore's alterations of prior testimony into his expert's opinions. In fairness, due to the expiration of the deadline to serve initial expert reports, the Court should strike Gore's Errata Sheet.

## V. CONCLUSION

Based on the foregoing, the Court should strike the Errata Sheet of TSD's 30(b)(6) witness Aaron Gore, and should award Plaintiff all other relief the Court deems appropriate.

Date: February 23, 2015

Respectfully submitted,

 /s/ William L. Downing
Christopher Colt North (VSB # 16995)
William L. Downing (VSB # 17704)
THE CONSUMER & EMPLOYEE RIGHTS LAW FIRM, P.C.
751-A Thimble Shoals Blvd.
Newport News, VA 23606
Tel: (757) 873-1010
Fax: (757) 873-8375
Email: cnorthlaw@aol.com
Email: wdowninglaw@aol.com

Michael A. Caddell (*pro hac vice*)
Cynthia B. Chapman (*pro hac vice*)
Craig C. Marchiando (*pro hac vice*)
CADDELL & CHAPMAN
1331 Lamar, Suite 1070
Houston, TX 77010
Telephone: (713) 751-0400
Fax: (713) 751-0906

***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2015, I filed a true and correct copy of the foregoing

document using the Court's CM/ECF system. The system will then send an electronic notice of

filing to the following counsel of record:

William V. O'Reilly (VSB # 26249)
Jeffrey A. McSorley (VSB # 68437)
Attorneys for Defendant Sirius XM Radio Inc.
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
Tel: (202) 879-3939
Fax: (202) 626-1700
Email: woreilly@jonesday.com
Email: jamcsorley@jonesday.com

Thomas Demitrack (admitted *pro hac vice*)
Attorney for Defendant Sirius XM Radio Inc.
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
Tel: (216) 586-3939
Fax: (216) 579-0212
Email: tdemitrack@jonesday.com

Lee A. Armstrong
Attorney for Defendant Sirius XM Radio Inc.
JONES DAY
222 East 41st Street
New York, New York 10017
Tel.: (212) 326-8340
Email: laarmstrong@JonesDay.com

I further certify that on February 23, 2015, I served by U.S. Mail and electronic mail a true and correct copy of the foregoing document on the following, non-ECF counsel:

Stephen E. Noona
Virginia State Bar No. 25367
Mark E. Warmbier
Virginia State Bar No. 77993
Kaufman & Canoles, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510-1665
Phone: (757) 624-3239
Fax: (757) 624-3169
senoona@kaufcan.com

Christopher H. Yetka
Barnes & Thornburg LLP
225 S. Sixth Street
Suite 2800
Minneapolis, Minnesota  55402-4662
Telephone: (612) 367-8748
Fax: (612) 333-6798
cyetka@btlaw.com

William E. Raney
Copilevitz & Canter, LLC •
310 W. 20th Street, Suite 300,
Kansas City, MO 64108
816-277-0856
816-405-7102(cell)
braney@cckc-law.com

***Attorneys for non-party***
***Career Horizon, Inc. d/b/a***
***TeleServices Direct***

       /s/ William L. Downing
William L. Downing (VSB # 17704)
**THE CONSUMER & EMPLOYEE RIGHTS LAW FIRM, P.C.**
751-A Thimble Shoals Blvd.
Newport News, VA 23606
Tel: (757) 873-1010
Fax: (757) 873-8375
Email: wdowninglaw@aol.com