IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

| | |
|---|---|
| FRANCIS W. HOOKER, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 4:13-cv-00003 |
| v. ) | (AWA/LRL) |
| ) | |
| SIRIUS XM RADIO INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM IN SUPPORT OF SIRIUS XM RADIO INC.'S
MOTION TO STAY PENDING THE D.C. CIRCUIT'S REVIEW OF THE FEDERAL
<u>COMMUNICATIONS COMMISSION'S 2015 TCPA ORDER</u>**

## TABLE OF CONTENTS

                                                                                         **Page**

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF THE FACTS ............................................................................................... 3

GROUNDS FOR RELIEF .......................................................................................................... 4

        A.       Courts Have Inherent Authority To Stay Litigation Pending Another Court's Review of Relevant Agency Action .......................................................... 4

        B.       A Stay Would Allow the Court to Benefit from Judicial Review of the FCC's Position, and Would Avoid Potential Unfairness to Sirius XM and a Waste of Judicial Resources ................................................................................ 6

        C.       Granting Sirius XM's Request Would Not Unduly Delay This Case .................. 11

CONCLUSION ......................................................................................................................... 12

## **TABLE OF AUTHORITIES**

**Page**

**CASES**

*Ass'n of Int'l Auto. Mfrs., Inc. v. Comm'r, Mass. Dep't of Envtl. Protection*,
  196 F.3d 302 (1st Cir. 1999).................................................................................................5, 7

*Beiler v. GC Servs. L.P.*,
  No. 1:13-cv-869, 2014 WL 5531169 (M.D.N.C. Nov. 3, 2014) ..........................................7, 11

*Cavalier Tel., LLC v. Va. Elec. & Power Co.*,
  303 F.3d 316 (4th Cir. 2002) ......................................................................................................5

*CE Design, Ltd. v. Prism Bus. Media, Inc.*,
  606 F.3d 443 (7th Cir. 2013) ....................................................................................................10

*Charvat v. EchoStar Satellite, LLC*,
  630 F.3d 459 (6th Cir. 2010) ......................................................................................................7

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426 (2013)................................................................................................................9

*Fields v. Mobile Messengers Am., Inc.*,
  No. 12-cv-5160, 2013 WL 6774076 (N.D. Cal. Dec. 23, 2013)..................................................4

*Gensel v. Performant Techs., Inc.*,
  No. 13-C-1196, 2015 WL 402840 (E.D. Wis. Jan. 28, 2015) ....................................................7

*Griffith v. Consumer Portfolio Servs.*,
  838 F. Supp. 2d 723 (N.D. Ill. 2011) .........................................................................................4

*GTE South, Inc. v. Morrison*,
  199 F.3d 733 (4th Cir. 1999) ..........................................................................................5, 6, 10

*Higgenbotham v. Diversified Consultants, Inc.*,
  No. 13-2624, 2014 WL 1930885 (D. Kan. May 14, 2014).........................................................7

*Hurrle v. Real Time Resolutions, Inc.*,
  No. C13-5765, 2014 WL 670639 (W.D. Wash. Feb. 20, 2014).................................................7

*Jordan v. Nationstar Mortg.. LLC*,
  No. 14-cv-00787, 2014 WL 5359000 (N.D. Cal. Oct. 20, 2014) ...............................................7

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936)......................................................................................................4, 5

*Marks v. Crunch San Diego, LLC*,
  55 F. Supp. 3d 1288, 1292 (S.D. Cal. 2014)................................................................4, 6

*Passero v. Diversified Consultants, Inc.*,
  No. 13-cv-338C, 2014 WL 2257185 (W.D.N.Y. May 28, 2014)..........................................7

*Pickins v. Am. Credit Acceptance, LLC*,
  No. 2:14-00201, 2014 WL 4662512 (S.D. Ala. Sept. 19, 2014) ..........................................7

*R. Comm'n of Tex. v. Pullman Co.*,
  312 U.S. 496 (1941).............................................................................................................4

*Satterfield v. Simon & Schuster, Inc.*,
  569 F.3d 946 (9th Cir. 2009) ...............................................................................................9

*Sirius XM Radio, Inc. v. FCC*,
  No. 15-1218 (D.C. Cir. 2015) .............................................................................................4

*Trainor v. Citibank, Nat'l Ass'n*,
  No. 14-62, 2014 WL 2574527 (D. Minn. June 9, 2014).............................................7

*Wahl v. Stellar Recovery, Inc.*,
  No. 14-cv-6002, 2014 WL 4678043 (W.D.N.Y. Sept. 18, 2014)............................................7

**STATUTES**

28 U.S.C. § 2342(1) ....................................................................................................................9

TCPA, 47 U.S.C. § 227 *et seq* ............................................................................................. passim

## PRELIMINARY STATEMENT

On July 10, 2015, the Federal Communications Commission (the "FCC") issued an omnibus order (the "2015 TCPA Order")[1] resolving nearly two dozen requests for clarification of its prior orders interpreting the Telephone Consumer Protection Act ("TCPA"). Sirius XM and a number of other parties promptly petitioned for review of the 2015 TCPA Order in the U.S. Court of Appeals for the D.C. Circuit.

Plaintiff's claim turns fundamentally on the very statutory issues that the 2015 TCPA Order addresses. Plaintiff principally alleges that Sirius XM Radio Inc. ("Sirius XM") or vendors acting on its behalf called his cell phone using an "automatic telephone dialing system" ("ATDS"). Plaintiff's expert relies heavily on the earlier orders that the FCC has purported to clarify in the 2015 TCPA Order. *See generally* Excerpt of Plaintiff's Expert Declaration and Rule 26(a)(2) Disclosure of Jeffrey A. Hansen, dated Feb. 9, 2015 ("Hansen Decl.") (without exhibits) (attached as Exhibit B) (citing and quoting the 2003 FCC Order throughout). Those earlier orders and the 2015 TCPA Order address, among other things, what kind of equipment falls within the statutory definition of an ATDS.

Plaintiff's motion for a status conference highlights the importance of the just-issued 2015 TCPA Order to his claim and to class certification. Plaintiff proposes a schedule to "allow the parties to brief, and this Court to consider, a highly relevant 138-page declaratory order issued by" the FCC, which, in his view, "confirms" his claim that "equipment like that used by Sirius XM's vendors" is an "autodialer[] that may not be used to call cellular telephone numbers without consent under the TCPA." Memorandum in Support of Motion to Extend Class Certification Deadline and for Status Conference ("Pl. Br.") (Dkt. No. 126) 4. And Plaintiff

---

[1] *See In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, FCC 15-72, CG Docket No. 02-278, WC Docket No. 07-135 (released July 10, 2015) ("TCPA Order") (attached as Exhibit A).

recognizes that "[b]ecause the definition of an autodialer is a key common question on which Sirius XM's liability to the Class depends, the FCC's additional clarification may be of assistance to the Court in resolving the motion for class certification . . . ." *Id*. at 5.

Proceeding with this case while the appeal of the 2015 TCPA Order is pending in the D.C. Circuit would be a waste of resources for the Court and the parties. It would be inefficient for the parties to brief, and for this Court to decide, dispositive legal issues on liability and class certification that may be governed by the 2015 TCPA Order while the validity of that order is under review by the D.C. Circuit. Should the D.C. Circuit set aside the relevant parts of the FCC's order, the effort expended by this Court in the interim will have been wasted. Compounding the waste of the Court's time, one of the very reasons that Sirius XM believes the D.C. Circuit is likely to set aside the 2015 TCPA Order—that it is so internally contradictory as to be incomprehensible—would make this Court's task of interpreting the "138-page declaratory order," Pl. Br. at 4, all the more difficult. In the words of one of the dissenting Commissioners, "[t]o put it kindly, the *Order's* interpretation [of ATDS] is a bit of a mess." TCPA Order, p. 115 (dissenting statement of Commissioner Pai). Moreover, deciding this case now would subject Sirius XM to the risk of liability under an interpretation of the TCPA that is later invalidated. In turn, that could require an unnecessary appeal to the Fourth Circuit and the attendant waste of even more judicial resources.

Appellate review now is necessary for another reason: under the Administrative Orders Review Act (generally known as the Hobbs Act), it is not clear that this Court (unlike the D.C. Circuit) could consider Sirius XM's arguments to review and set aside the FCC Order. Given the statutory rules applicable to judicial review of FCC action, there is some uncertainty whether this Court has the ability to review the legality of the FCC's interpretation or whether only a

federal court of appeals may do so. Judicial economy favors staying this case while the 2015 TCPA Order is reviewed through the means that are unequivocally available—the pending D.C. Circuit appeal.

In light of these circumstances, this Court should grant a short stay while the D.C. Circuit reviews the 2015 TCPA Order.

## STATEMENT OF THE FACTS

Sirius XM is a satellite radio service that currently broadcasts more than 150 channels of commercial-free music, sports, news, talk, entertainment, traffic, and weather to more than 27 million subscribers. Plaintiff primarily alleges that Sirius XM violated the Telephone Consumer Protection Act of 1991 by calling his cellular phone using an ATDS—that is, with equipment that had "the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers"—without his prior consent. Complaint, Dkt. No. 1, at ¶¶ 41, 43 (quoting 42 U.S.C. § 227(a)(1)).

Discovery revealed, however, that Plaintiff intends to rely on something other than the TCPA's plain text in defining what constitutes an ATDS (because Sirius XM did not use equipment with a random or sequential number generator, as the plain text of the TCPA requires for Plaintiff to make out a claim). Instead, Plaintiff and his expert rely on a different understanding of the TCPA's restrictions coming from various FCC orders. *See, e.g.*, Hansen Decl. at ¶ 13 (stating that his opinion is based on FCC orders from 2003, 2008, and 2012); ¶ 14 (stating that in "[a]ddition[]" to the restrictions on equipment that meets the statutory criteria, "the FCC has issued *further* regulations that *also* define an ATDS" as equipment that can dial "without human intervention" (emphasis added)). And it is now clear that Plaintiff intends to rely on the 2015 TCPA Order. *E.g.*, Pl. Br. at 4.

The inconsistencies between the statutory text and the FCC's various orders,[2] which themselves spawned numerous class action cases (including this one), led a host of entities to ask the FCC to clarify its position. It recently purported to do so, resolving "21 separate requests for clarification or other action regarding the TCPA or the Commission's rules or orders" in a single omnibus decision. *See* 2015 TCPA Order ¶ 2. A number of organizations, including Sirius XM, have petitioned for review of the 2015 TCPA Order. *See, e.g.*, *Sirius XM Radio, Inc. v. FCC*, No. 15-1218 (D.C. Cir. 2015).

## GROUNDS FOR RELIEF

A.  **Courts Have Inherent Authority To Stay Litigation Pending Another Court's Review of Relevant Agency Action.**

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (Cardozo, J.). In exercising that inherent authority, courts have recognized the occasional need to stay proceedings in light of related litigation pending before other courts or administrative agencies.

For example, to avoid "making a tentative answer which may be displaced tomorrow by state adjudication," federal courts will often stay their own proceedings where a state court is merely poised to decide a related, unsettled issue of state law. *R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 499–500 (1941). Under the analogous principles behind the "primary

---

[2]*See, e.g., Marks v. Crunch San Diego, LLC*, 55 F. Supp. 3d 1288, 1292, (S.D. Cal. 2014) (explaining that the statutory language concerning a "'[r]andom or sequential number generator' cannot reasonably refer broadly to any list of numbers dialed in random or sequential order," as the FCC has concluded, "as this would effectively nullify the entire clause"); *Griffith v. Consumer Portfolio Servs.*, 838 F. Supp. 2d 723, 727 (N.D. Ill. 2011) ("Even assuming that CPS's equipment can only function in this way"—by "automatically dial[ing] numbers stored [in a list] and rout[ing] answered calls to available [operators]"—"and cannot generate and dial random or sequential numbers," it is an ATDS under the Commission's definition); *Fields v. Mobile Messengers Am., Inc.*, No. 12-cv-5160, 2013 WL 6774076, at *3 (N.D. Cal. Dec. 23, 2013) (noting that the Commission's orders have "broadened the definition of an ATDS beyond mere equipment that uses random or sequential number generators" to include equipment with "the capacity to dial numbers without human intervention" (internal quotation marks omitted)).

jurisdiction" doctrine, federal courts will stay proceedings where an agency's "expertise and experience," combined with the "desirable uniformity which occurs when a specialized agency decides certain administrative questions," best positions the agency to answer the questions presented by the case in the first instance. *Cavalier Tel., LLC v. Va. Elec. & Power Co.*, 303 F.3d 316, 322 n.10 (4th Cir. 2002) (internal quotation marks omitted).

Courts also often stay their own proceedings while another court reviews action that an agency has taken. *See, e.g.*, *Ass'n of Int'l Auto. Mfrs., Inc. v. Comm'r, Mass. Dep't of Envtl. Protection*, 196 F.3d 302 (1st Cir. 1999) (staying appeal pending D.C. Circuit review of relevant EPA regulations); *GTE South, Inc. v. Morrison*, 199 F.3d 733, 743–44 (4th Cir. 1999) (recognizing authority to stay pending review of agency action in another circuit). Where (as here) an administrative agency has already acted, and all that remains is appellate review of the agency's order following timely appeals from the order, the basis for a stay is even stronger than in cases that courts have stayed to await agency action on an uncertain timeline.

Applying the court's inherent stay authority "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254–55. In exercising that judgment in the context of stays pending judicial review of agency action, courts look to common sense rather than any mechanistic formula. For example, in *International Automobile Manufacturers*, the court originally invoked the primary jurisdiction doctrine because "a number of issues within the EPA's competence were essential to a proper resolution of th[e] case and [it] preferred to know the EPA's position on those issues." 196 F.3d at 304. Those same concerns, coupled with the "separate but equally serious policy issue concerning" inconsistent judicial decisions, "compel[led] [the court] to defer [its] decision until a *final* EPA position ha[d] been established" through judicial review of the agency's action. *Id.* at 305

(emphasis added). In *Morrison*, by contrast, while the Fourth Circuit declined to await the Eighth Circuit's review of agency action, it did so only because the parties could not have been harmed by inconsistent results and because the statute at issue evinced Congress's desire to introduce competition into the telecommunications industry "as quickly as possible." 199 F.3d at 744 (internal quotation marks omitted). That logic is obviously not applicable here, although the Fourth Circuit's recognition of the inherent judicial authority to issues stay pending review of agency action in another circuit further supports the issuance of a stay in this case.

  **B.**  **A Stay Would Allow the Court to Benefit from Judicial Review of the FCC's Position, and Would Avoid Potential Unfairness to Sirius XM and a Waste of Judicial Resources.**

Common sense counsels a stay here. As explained above, Plaintiff primarily alleges that Sirius XM violated the TCPA's prohibition against calls to wireless numbers made from an ATDS—that is, equipment that "has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator"—without the called party's prior express consent. 47 U.S.C. § 227(a)(1), (b)(1)(A)(3); Complaint ¶¶ 41, 43. The key aspect of this definition—the "capacity to store or produce telephone numbers to be called, using a random or sequential number generator"—has been the subject of considerable debate and litigation, leading a host of businesses and trade associations to ask the FCC for clarity. *See* 2015 TCPA Order ¶¶ 6–7. In the 2015 TCPA Order, the FCC purported to provide that clarification, weighing in on what kinds of equipment it believes are subject to the TCPA's ATDS restrictions and interpreting the FCC's prior statements about the TCPA. *See id.* ¶¶ 10–24.

This Court should stay these proceedings pending the D.C. Circuit's review of the 2015 TCPA Order. Although the contours of the FCC's power to interpret the definition of an ATDS under the TCPA are disputed, *e.g.*, *Marks*, 55 F. Supp. 3d at 1291 ("The Federal Communications Commission ('FCC') does not have the statutory authority to change the

TCPA's definition of an ATDS."), courts have often referred TCPA-related matters to the Commission under the primary jurisdiction doctrine so that it could bring its "comparative expertise" and "discretion" to bear and foster nationwide "uniformity." *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 466–67 (6th Cir. 2010). For these reasons, *before* the FCC issued its 2015 TCPA Order, a host of courts had stayed private litigation pending the FCC's anticipated resolution of the petitions that ultimately led to that Order, including litigation that turned on the definition of an ATDS.[3] If it made sense to stay ATDS-related litigation to get the agency's view when its anticipated decision was months or years away, it certainly makes sense to await the D.C. Circuit's comparatively speedy review of that decision. *See Int'l Auto. Mfrs.*, 196 F.3d at 305 (where a primary jurisdiction referral was initially appropriate, the court should stay pending final judicial review "absent extraordinary delay" or other unusual factors).[4]

---

[3] *See, e.g., Gensel v. Performant Techs., Inc.*, No. 13-C-1196, 2015 WL 402840, at *3 (E.D. Wis. Jan. 28, 2015) (stay in ATDS case would "promote uniformity in the administration of the TCPA" and avoid "furthering a split of authority" on ATDS-related issues); *Pickins v. Am. Credit Acceptance, LLC*, No. 2:14-00201, 2014 WL 4662512, at *2 (S.D. Ala. Sept. 19, 2014) (stay in ATDS case because meaning of "capacity" was a "highly technical[] question" within the FCC's "special competence" and because "piecemeal adjudication" could lead to "uneven application"); *Wahl v. Stellar Recovery, Inc.*, No. 14-cv-6002, 2014 WL 4678043, at *2 (W.D.N.Y. Sept. 18, 2014) (stay in ATDS case because of the "complexity of the technical and policy issues" involved in interpreting the statute and the FCC's recognition that "its prior rulings and pronouncements may insufficiently address [concerns about confusion] and the opportunity seems ripe to provide much-needed clarification"); *Passero v. Diversified Consultants, Inc.*, No. 13-cv-338C, 2014 WL 2257185, at *2 (W.D.N.Y. May 28, 2014) (stay in ATDS case because definition of "capacity" posed interpretive questions "well outside the conventional experience of th[e] court"); *Higgenbotham v. Diversified Consultants, Inc.*, No. 13-2624, 2014 WL 1930885 at *3 (D. Kan. May 14, 2014) (stay in ATDS case because allowing the agency to define "capacity" in the first instance would bring about "uniformity and consistency"); *Hurrle v. Real Time Resolutions, Inc.*, No. C13-5765, 2014 WL 670639, at *1 (W.D. Wash. Feb. 20, 2014) (stay in ATDS case because the FCC's "guidance on the 'capacity' of autodialing systems would further clarify the law that [the plaintiff] s[ought] to enforce . . . .").

[4] Many of the courts that declined to stay ATDS-related cases under the primary jurisdiction doctrine did so in part because the timeline for agency action was unclear. *See, e.g., Beiler v. GC Servs. L.P.*, No. 1:13-cv-869, 2014 WL 5531169, at *4 (M.D.N.C. Nov. 3, 2014) (staying might invite an "extended delay"); *Jordan v. Nationstar Mortg.. LLC*, No. 14-cv-00787, 2014 WL 5359000, at *10 (N.D. Cal. Oct. 20, 2014) (lifting stay because there was "no guarantee" the FCC would decide these issues soon); *Trainor v. Citibank, Nat'l Ass'n*, No. 14-62, 2014 WL 2574527, at *2 (D. Minn. June 9, 2014) (refusing to stay because the issue in question "ha[d] been pending before the FCC for more than four years" and the timing of its anticipated decision was "anyone's guess").

There can be little doubt that Plaintiff will rely on the 2015 TCPA Order, which depends upon and interprets the FCC's three earlier rulings. Plaintiff's expert relied heavily on an aggressive reading of earlier FCC orders under the TCPA, *see, e.g.*, Hansen Decl. ¶¶ 13–17; Excerpt of Hansen Dep. Tr. 51:13-16 ("What I'm looking at when I do my report is I'm looking at what the FCC has described as the equipment.") (Attached as Exhibit C). The 2015 TCPA Order, while both ambiguous and internally inconsistent, could be read to take an even broader view of those earlier orders, *see, e.g.*, 2015 TCPA Order ¶ 12 (discussing the 2003 order's supposed view that the equipment "need only have the *capacity* to store or produce telephone numbers" (internal quotation marks omitted)). In any event, as Plaintiff concedes, the 2015 TCPA Order is now the key administrative ruling on topics central to this litigation, including the class certification motion that Plaintiff is now seeking permission to brief. Pl. Br. at 4–5 (Dkt. 126) (2015 TCPA Order is "highly relevant" and addresses "key common question on which Sirius XM's liability to the Class depends").

It is inefficient for this Court (and potentially the Fourth Circuit) to expend judicial resources determining issues of liability before the D.C. Circuit reviews the very FCC order that is a lynchpin of Plaintiff's argument. Pl. Br. at 4–5 (Dkt. 126). Absent a stay, this Court will be called upon to interpret the 2015 TCPA Order and apply it to the facts of this case—no easy task, given the numerous internal contradictions and inconsistencies in the Order. Any liability determination (either way) that this Court makes based on the 2015 TCPA Order at a minimum may be called into question, and likely will be superseded, if the D.C. Circuit finds the Order unlawful. This Court can avoid that waste of time by staying these proceedings until the D.C. Circuit completes its review of the 2015 TCPA Order.

It would be similarly inefficient for this Court to rule on a motion for class certification while the D.C. Circuit reviews the 2015 TCPA Order. "[C]lass determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (internal quotations omitted). Consequently, "[s]uch an analysis will frequently entail overlap with the merits of the plaintiff's underlying claim." *Id.* (internal quotations omitted). The D.C. Circuit's decision is thus likely to redefine the legal landscape not only for TCPA merits purposes, but also for class certification in this case. Indeed, Plaintiff acknowledges that class certification depends on the 2015 TCPA Order: he states that "[b]ecause the definition of an autodialer is a key common question on which Sirius XM's liability to the Class depends, the FCC's additional clarification may be of assistance to the Court in resolving the motion for class certification . . . ." Pl. Br. at 5. It would be wasteful for this Court to resolve a motion that will depend on the 2015 TCPA Order while the lawfulness of that Order is under review by the D.C. Circuit.

The need for a stay is underscored because it is arguable that the Sirius XM may challenge the 2015 TCPA Order *only* in the D.C. Circuit. Specifically, under the Hobbs Act, "[t]he court of appeals . . . has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all final orders of the Federal Communications Commission . . . ." 28 U.S.C. § 2342(1). There is conflicting authority with respect to whether this provision prohibits district courts (or circuit courts reviewing the decisions of district courts) from reviewing the FCC's interpretation of the TCPA in litigation between private parties. *Compare, e.g.*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) (applying ordinary *Chevron* principles to FCC's view of the TCPA in a suit between private parties) *with*

*CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443 (7th Cir. 2013) (holding that it lacked jurisdiction to consider validity of FCC's TCPA regulations).

If necessary, Sirius XM will assert that this Court has the power to determine whether the FCC's view comports with the TCPA. But as the Fourth Circuit's decision in *Morrison* recognized, the possibility that this Court might not be able to review the 2015 TCPA Order counsels strongly in favor of a stay—because Sirius XM otherwise will have no option to challenge what it believes is the FCC's lawless order before this Court considers issues of class certification or liability. In *Morrison*, GTE allegedly owed money under a regulation, but the Eighth Circuit, not the Fourth, had jurisdiction to decide whether that regulation was valid. The court realized that "should [it] apply the rules and decide this case now, the Eighth Circuit may later invalidate some or all of the rules," potentially resulting in "fundamental unfairness" to GTE if the Fourth Circuit held GTE liable under the regulation. *Morrison*, 199 F.3d at 743–44. But the court decided the case without awaiting the Eighth Circuit's decision because no unfairness was possible under the unique facts of the case: both sides agreed that, pursuant to longstanding industry practice, "the parties w[ould] 'settle up'"—that is, make GTE whole—for any payment it made under a regulation later invalidated by the Eighth Circuit. *Id.* at 744. Here, of course, even assuming that Plaintiff is successful in using the 2015 TCPA Order to secure a prompt finding of liability at trial or otherwise during the brief period while the D.C. Circuit is resolving the lawfulness of the 2015 TCPA Order, there is no equivalent guarantee of any return of any damages if the D.C. Circuit later invalidates the 2015 TCPA Order in whole or in part, on which Plaintiff concedes that he is now seeking to rely. That obviously unfair scenario can be avoided by staying this case until the D.C. Circuit renders its decision.[5]

---

[5]That scenario also explains why some courts that denied primary jurisdiction stays on ATDS-related issues did not properly consider every aspect of that decision. Such courts often

## C. Granting Sirius XM's Request Would Not Unduly Delay This Case.

Sirius XM recognizes that this Court has expressed concern about the pace of these proceedings. *See* Order Denying Consent Motion To File Amended Pleadings and Granting in Part Joint Motion To Stay, Dkt. No. 123. Granting Sirius XM's present request for a stay would not unjustifiably delay these proceedings further. As explained above, both judicial economy and fairness favor a stay. Moreover, any delay would be comparatively small; the petitions for review are proceeding apace, and it is expected that the petitioners in those cases (and, at a minimum, Sirius XM) will soon be asking the D.C. Circuit to approve a relatively fast-paced briefing schedule. Although Sirius XM cannot predict the D.C. Circuit's timeline, it anticipates having oral argument in the first half of 2016, with a decision soon to follow.

Sirius XM's request for a stay also comes at an appropriate time. Sirius XM theoretically could have asked the Court to stay and refer the matter to the FCC under the primary jurisdiction doctrine earlier. Such a request, however, likely would have been premature. To begin with, Sirius XM did not know until Plaintiff submitted his expert materials just how heavily Plaintiff would rely on the FCC's views in trying to prove his case, and by then discovery was virtually over; his Complaint made scant reference to prior FCC orders and instead followed the TCPA's text. More importantly, like everyone else, Sirius XM did not know when the FCC would resolve the relevant pending petitions, and it is now clear that Plaintiff intends to rely on the 2015 TCPA Order, which itself interprets and expands upon those earlier orders. Indeed, many of those petitions had been pending for several years, and the FCC had issued no guidance on

---

remarked that ATDS cases involve questions of statutory interpretation within the traditional competence of the federal courts. *See, e.g.*, *Beiler*, 2014 WL 5531169, at *5. That may or may not be true—other courts found that these statutory issues also involved policy-laden technical questions, *see supra* n.3—but it could also be irrelevant. If the Hobbs Act prevents district courts from reviewing the FCC's interpretation of the TCPA in private litigation *at all*, those courts may be stuck enforcing the FCC's incorrect interpretation *despite* the courts' greater interpretive abilities.

when, if at all, it might act. As many courts pointed out, *see supra* Part B n.4 the FCC is not known for its speed or calendar transparency. Rather than ask the Court for such an uncertain stay, Sirius XM waited until the FCC actually made its decision (which occurred while proceedings in this Court were stayed pending disposition of a request for consolidation by the Judicial Panel on Multidistrict Litigation). Sirius XM now seeks only a stay while the 2015 TCPA Order is judicially reviewed.

## CONCLUSION

For the foregoing reasons, Sirius XM's request to stay proceedings pending the D.C. Circuit's review of the 2015 TCPA Order should be granted.

*[signatures on following page]*

Dated: August 19, 2015          Respectfully submitted,

/s/ William V. O'Reilly
William V. O'Reilly (VA Bar No. 26249)
Jeffrey A. McSorley (VA Bar No. 68437)
Attorneys for Defendant Sirius XM Radio Inc.
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
Tel: (202) 879-3939
Fax: (202) 626-1700
Email: woreilly@jonesday.com
Email: jamsorley@jonesday.com

Thomas Demitrack (admitted pro hac vice)
Attorney for Defendant Sirius XM Radio Inc.
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
Tel: (216) 586-3939
Fax: (216) 579-0212
Email: tdemitrack@jonesday.com

Lee A. Armstrong (admitted pro hac vice)
Attorney for Defendant Sirius XM Radio Inc.
JONES DAY
222 East 41st Street
New York, New York 10017
Tel: (212) 326-3939
Fax: (212) 755-7306
Email: laarmstrong@jonesday.com

**CERTIFICATE OF SERVICE**

I certify that on August 19, 2015, a copy of the foregoing was filed electronically with the Clerk of Court using the ECF system which will send notification to the following ECF participants:

Christopher Colt North, Esq.
William L. Downing, Esq.
Attorneys for Plaintiff
THE CONSUMER & EMPLOYEE
RIGHTS LAW FIRM, P.C.
751-A Thimble Shoals Blvd.
Newport News, VA 23606
Tel: (757) 873-1010
Fax: (757) 873-8375
Email: cnorthlaw@aol.com
Email: wdowninglaw@aol.com

Michael A. Caddell, Esq.
Cynthia B. Chapman, Esq.
Craig C. Marchiando, Esq.
Attorneys for Plaintiff
CADDELL & CHAPMAN
1331 Lamar St., Suite 1070
Houston, TX 77010
Tel: (713) 751-0400
Fax: (713) 751-0906
Email: mac@caddellchapman.com
Email: cbc@caddellchapman.com
Email: ccm@caddellchapman.com


/s/ William V. O'Reilly
William V. O'Reilly (VA Bar. No. 26249)
Jeffrey A. McSorley (VA Bar. No. 68437)
Attorneys for Defendant Sirius XM Radio Inc.
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
Tel: (202) 879-3939
Fax: (202) 626-1700
Email: woreilly@jonesday.com
Email: jamcsorley@jonesday.com