# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### NEWPORT NEWS DIVISION

**FRANCIS W. HOOKER, Jr.,**
**For himself and on behalf of all**
**similarly situated individuals,**

      **Plaintiff,**

**v.**                                     **Case No.: 4:13-cv-00003 (AWA/LRL)**

**SIRIUS XM RADIO, INC.**

      **Defendant.**

---

## MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

---

# TABLE OF CONTENTS

I.    Introduction ................................................................................................ 1

II.    Case Background ........................................................................................ 2

    A.    TCPA Violations against Plaintiff ................................................... 2

    B.    Procedural History ......................................................................... 3

    C.    The Applicable Law ....................................................................... 4

    D.    Sirius XM's Telemarketing Practices ............................................. 7

        1.    Sirius XM's Use of Autodialers ........................................... 7

        2.    Sirius XM's Curfew Violations ...........................................11

        3.    Sirius XM's Willful Violations ............................................ 12

    E.    The Proposed Classes ................................................................... 12

III.    Argument and Authorities ........................................................................ 14

    A.    The Fourth Circuit Standards for Class Certification ......................... 14

    B.    The Classes should be certified because Rule 23's requirements are
        satisfied. .......................................................................................15

        1.    The Proposed Classes and Subclass satisfy the ascertainability,
                numerosity, commonality, typicality, and adequacy of
                representation requirements of Rule 23(a) ............................... 16

            a.    The Class members are ascertainable ........................... 16

            b.    Numerosity is met for all Classes and the Subclass. .................... 18

            c.    The Class members' claims satisfy commonality. ........................ 20

            d.    Plaintiff's claims are typical of Class members' claims. ............... 22

            e.    Plaintiff and his Counsel will adequately represent the
                interests of the Classes. ................................................. 23

2.     The proposed Class, Telemarked Class, and Willful Violation Subclass also meet the predominance and superiority requirements of Rule 23(b)(3)......................................................................................... 25

     a.     Common questions predominate because the Classes' and Subclass's claims arise from a common nucleus of fact and involve overriding common questions. .......................................... 25

     b.     A class action is the superior method of adjudicating these claims. ........................................................................................ 27

3.     The proposed Injunctive Relief Class meets the requirements of Rule 23(b)(2)......................................................................................... 30

IV.     Conclusion .................................................................................................. 30

# TABLE OF AUTHORITIES

## CASES

*Abdeljalil v. Gen. Elec. Capital Corp.*,
  306 F.R.D. 303 (S.D. Cal. 2015) ............................................................... 2, 28

*Agne v. Papa John's Int'l, Inc.*,
  286 F.R.D. 559 (W.D. Wash. 2012) ......................................................... 18, 23

*Allen v. Similasan Corp.*,
  No. 12-CV-376 BAS JLB, 2015 WL 1534005 (S.D. Cal. Mar. 30, 2015) .......................... 19

*AmChem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) .......................................................................... 15, 25

*Birchmeier v. Caribbean Cruise Line, Inc.*,
  302 F.R.D. 240 (N.D. Ill. 2014) ................................................................... 2

*Booth v. Appstack, Inc.*,
  No. C13-1533JLR, 2015 WL 1466247 (W.D. Wash. Mar. 30, 2015) ....................... 2, 21, 29

*Brown v. Nucor Corp.*,
  576 F.3d 149 (4th Cir. 2009) ..................................................................... 20

*Bussian v. DaimlerChrylser Corp.*,
  No. 104CV00387, 2007 WL 1752059 (M.D.N.C. June 18, 2007) ................................... 15

*Cavin v. Home Loan Ctr., Inc.*,
  236 F.R.D. 387 (N.D. Ill. 2006) ................................................................. 15

*CE Design, Ltd. v. Prism Business Media, Inc.*,
  606 F. 3d 443 (7th Cir. 2010.) .................................................................... 6

*Deiter v. Microsoft Corp.*,
  436 F.3d 461 (4th Cir. 2006) ..................................................................... 22

*Droste v. Vert Capital Corp.*,
  No. 3:14-CV-467, 2015 WL 1526432 (E.D. Va. Apr. 2, 2015) ............................. 18, 23, 24

*EQT Prod. Co. v. Adair*,
  764 F.3d 347 (4th Cir. 2014) ..................................................................... 16

*Gunnells v. Healthplan Servs., Inc.,*
    348 F.3d 17 (4th Cir. 2003)............................................................................ 14, 24

*Halverson v. Convenient FoodMart, Inc.,*
    69 F.R.D. 331 (N.D. Ill. 1974) ..................................................................... 25

*Haynes v. Logan Furniture Mart, Inc.,*
    503 F.2d 1161 (7th Cir. 1974) ...................................................................... 28

*Heastie v. Cmty. Bank of Greater Peoria,*
    125 F.R.D. 669 (N.D. Ill. 1989)..................................................................... 19

*Hewlett v. Premier Salons Int'l, Inc.,*
    185 F.R.D. 211 (D. Md. 1997) ...................................................................... 28

*Hossfeld v. Gov't Emps. Ins. Co.,*
    ___ F. Supp. 3d ___, 2015 WL 847474 (D. Md. Feb. 25, 2015) ..................... 5–6

*In re A.H. Robins,*
    880 F.2d 709 (4th Cir. 1989) ........................................................................ 14

*In re Mex. Money Transfer Litig.,*
    267 F.3d 743 (7th Cir. 2001) ........................................................................ 15

*In re Monitronics Int'l, Inc. Tel. Consumer Prot. Act Litig.,*
    No. 1:13MD2493, 2015 WL 1964951 (N.D. W. Va. Apr. 30, 2015) ................ 5

*Jordan v. Nationstar Mortgage LLC,*
    No. 14-CV-00787-WHO, 2014 WL 5359000 (N.D. Cal. Oct. 20, 2014)........... 6

*Kavu, Inc. v. Omnipak Corp.,*
    246 F.R.D. 642 (W.D. Wash. 2007) .............................................................. 18

*Knutson v. Sirius XM Radio, Inc.,*
    771 F.3d 559 (9th Cir. 2014) .......................................................................... 4

*Kristensen v. Credit Payment Servs.,*
    12 F. Supp. 3d 1292 (D. Nev. 2014)............................................................. 21

*Levy v. Receivables Performance Mgmt. LLC,*
    972 F. Supp. 2d 409 (E.D.N.Y. 2013)........................................................... 10

*Manno v. Healthcare Revenue Recovery Grp., LLC,*
    289 F.R.D. 674 (S.D. Fla. 2013) .................................................................. 26

*McKnight v. Circuit City Stores, Inc.*,
No. 95-CV-964, 1996 WL 454994 (E.D. Va. Apr. 30, 1996) ........................................... 14

*Meyer v. Portfolio Recovery Assocs.*,
707 F.3d 1036 (9th Cir. 2012) ...................................................................................... 30

*Mims v. Arrow Fin. Servs., LLC*,
132 S. Ct. 740 (2012) ...................................................................................................... 4

*Mullins v. Direct Digital, LLC*,
795 F.3d 654 (7th Cir. 2015) ....................................................................................... 18

*Murray v. GMAC Mortg. Corp.*,
434 F.3d 948 (7th Cir. 2006) ......................................................................................... 5

*Parker v. Sirius XM Radio, Inc.*,
No. 8:15-cv-01710-JSM-EAJ (M.D. Fla. July 22, 2015) .................................................. 29

*Penn v. NRA Grp., LLC*,
No. CIV. JKB-13-0785, 2014 WL 2986787 (D. Md. July 1, 2014) ..................................... 6

*Prater v. Medicredit Inc.*,
45 F. Supp. 3d 1038 (E.D. Mo. 2014) ........................................................................... 10

*Satterfield v. Simon & Schuster, Inc.*,
569 F.3d 946 (9th Cir. 2009) ............................................................................... 9, 11, 26

*Scott v. Clarke*,
No. 3:12-CV-00036, 2014 WL 6609087 (W.D. Va. Nov. 20, 2014) ................................ 19

*Shelton v. Bledsoe*,
775 F.3d 554, 563 (3d Cir. 2015) ................................................................................. 30

*Soutter v. Equifax Info. Servs., LLC*,
307 F.R.D. 183 (E.D. Va. 2015) ................................................................... 14, 16, 22, 28

*State Farm Mutual Auto. Ins. Co. v. Campbell*,
538 U.S. 408 (2003) ...................................................................................................... 5

*Stemple v. QC Holdings, Inc.*,
No. 12-cv-01997 BAS (WVG), 2014 WL 4409817 (S.D. Cal. Sept. 5, 2014) ................ 2, 26

*Stern v. DoCircle, Inc.*,
    No. 12-cv-2005, 2014 WL 486262 (C.D. Cal. Jan. 29, 2014) ............................................ 21

*Stillmock v. Weis Markets, Inc.*,
    385 F. App'x 267 (4th Cir. 2010) ............................................................14, 25, 28

*Talbott v GC Servs. Ltd. P'ship*,
    191 F.R.D. 99 (W.D. Va. 2000) ............................................................. 25

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ...........................................................................20

*Ward v. Dixie Nat'l Life Ins. Co.*,
    595 F.3d 164 (4th Cir. 2010) ................................................................24

*Whitaker v. Bennett Law, PLLC*,
    No. 13-cv-3145-L(NLS), 2014 WL 5454398 (S.D. Cal. Oct. 27, 2014) ...................... 21, 22

*Williams v. LexisNexis Risk Mgmt. Inc.*,
    No. 3:06cv2412007, WL 2439463 (E.D. Va. Aug. 23, 2007) ............................................28

*Zyburo v. NCSPlus, Inc.*,
    44 F. Supp. 3d 500 (S.D.N.Y. 2014) ..................................................................... 2, 21

## FCC ORDERS

*In re Joint Petition filed by Dish Network, LLC*,
    28 FCC Rcd. 6574 (2013) ............................................................................ 6

*In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*,
    CG Docket No. 02-278, FCC Docket No. 03-153 ................................................. 6, 9, 11, 26

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
    No. CG02-278, 2015 WL 4387780 (July 10, 2015) ......................................... 6, 11, 26, 30

## RULES

Fᴇᴅ. R. Cɪᴠ. P. 23(a) ........................................................................................*passim*

Fᴇᴅ. R. Cɪᴠ. P. 23(b)(3) ................................................................... 15, 25, 27

## STATUTES

5 James Wm. Moore et al., *Moore's Federal Practice* § 23.02 (3d ed. 1999) ................................... 14

7A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE
§ 1760 (3d ed. 2005) ........................................................................................... 16

28 U.S.C. § 2342 ......................................................................................................... 6

47 C.F.R. § 64.1200(a)(1)(iii), (a)(2) ........................................................................ 26

47 C.F.R. § 64.1200(c), (e) ......................................................................................... 5

47 U.S.C. § 227 ...................................................................................................*passim*

Plaintiff Francis Hooker seeks certification of three classes and a subclass of consumers to whom Defendant Sirius XM Radio Inc. ("Sirius XM") placed telemarketing calls in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, ("TCPA"). Because Sirius XM's nationwide and systematic practices, revealed in discovery, show that it routinely engaged in illegal telemarketing to promote its satellite radio service, the Court should certify the proposed classes and subclass.

# I. INTRODUCTION

Plaintiff alleges that Sirius XM violated the TCPA by making autodialed telemarketing calls to his and others' cellular telephones without consent. (Dkt. 1 ¶ 1.) Discovery has revealed that Sirius XM, through several third-party calling vendors, systematically placed repeated telemarketing calls to purchasers and lessees of vehicles that came with "free trial" Sirius XM subscriptions. Vehicle purchasers and lessees all received a "free trial," whether they wanted the service or not, and were then subjected to a barrage of telemarketing calls from Sirius XM, attempting to turn them into paying Sirius XM subscribers.

Despite the fact that the TCPA clearly prohibits placing autodialed telemarketing calls to cellular telephones without the called party's "express consent," Sirius XM's calling vendors used an automatic telephone dialing system ("autodialer" or "ATDS") to call Plaintiff's and Class members' cellular telephones without obtaining any affirmative consent to such calls. In addition, Sirius XM unreasonably assumed that all persons with cellular telephones were still located in the time zones reflected by their cellular telephones' area codes, even where the person's current address in Sirius XM's files was in a different state. This carelessness resulted in numerous telemarketing calls illegally placed in the early morning or late evening, in violation of federal regulations. Finally, even when consumers make their lack of consent plain by explicitly instructing Sirius XM not to call them anymore, Sirius XM had a policy of willfully continuing to call for up to ten days, during which time many consumers were subjected to multiple unwanted calls.

The facts and claims in this case are ideally suited for class treatment, because liability can be determined on a class-wide basis, largely by reference to Sirius XM's and its calling vendors' own records. For similar reasons, courts across the country have correctly concluded in contested cases that TCPA cases are proper for class treatment. *See, e.g.*, *Booth v. Appstack, Inc.*, No. C13-1533JLR, 2015 WL 1466247, at *17 (W.D. Wash. Mar. 30, 2015) (modifying and then certifying national class of consumers making TCPA claims); *Abdeljalil v. Gen. Elec. Capital Corp.*, 306, F.R.D. 303, 312 (S.D. Cal. 2015) (granting certification of a nationwide class of consumers narrower than the class defined in the live complaint); *Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 504 (S.D.N.Y. 2014) (certifying class over defendant's opposition); *Stemple v. QC Holdings, Inc.*, No. 12-cv-01997 BAS (WVG), 2014 WL 4409817, at *10 (S.D. Cal. Sept. 5, 2014) (granting certification of class seeking TCPA monetary relief); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 243 (N.D. Ill. 2014) (modifying and certifying two classes of consumers, one for calls to cellular phones and one for calls to landline phones). This Court should conclude likewise and grant Plaintiff's Motion.

## II. CASE BACKGROUND

### A. TCPA Violations Against Plaintiff

In August of 2011, Plaintiff and his wife purchased a Hyundai Elantra sedan that included a three-month free trial of Sirius XM radio programming. (Dkt. 1 ¶¶ 23–24.) At no time did Plaintiff provide Sirius XM with his cellular telephone number or authorize the Hyundai dealer to do so, nor did he have any communication with Sirius XM before receiving autodialed calls. (*Id.* ¶¶ 36–37.) Approximately six weeks after his purchase, Plaintiff received the first of several autodialed calls from a Sirius XM calling vendor on his cellular telephone. (*Id.* ¶ 25.) The purpose of this call was to induce Plaintiff to become a paying subscriber to Sirius XM's radio service, which Plaintiff declined and instructed Sirius XM not to call him again. (*Id.* ¶¶ 26–27.) Despite Plaintiff's repeated refusals of Sirius XM's offers and requests that he not be called, Sirius XM continued placing

autodialed calls to Plaintiff's cellular telephone, attempting to sell him a subscription. (*Id.* ¶¶ 25–39.)

The next night the same thing occurred, with Plaintiff providing the same response—declining to buy a subscription, and instructing Sirius XM not to call again. (*Id.* ¶¶ 30–31.) Sirius XM called a third time the following night. (*Id.* ¶ 33.) Plaintiff demanded to speak to a supervisor, but the call disconnected without that request being met. (*Id.* ¶ 34.) After his call disconnected, Plaintiff immediately called Sirius XM's number back and eventually spoke to a supervisor. (*Id.* ¶ 35.) During that discussion, the supervisor confirmed that the calls placed to Plaintiff were made by a computer using an autodialer. (*Id.* ¶ 35.) The supervisor also confirmed that Sirius XM obtained Plaintiff's contact information from the Hyundai dealer from which Plaintiff purchased his car. (*Id.*) Plaintiff never consented to Hyundai's transfer of his contact information to Sirius XM, nor did he consent to receive these telemarketing calls from Sirius XM. (*Id.* ¶¶ 36, 38.)

## B. Procedural History

Plaintiff filed this case in January 2013, asserting TCPA claims for himself and similarly situated consumers. (Dkt. 1 ¶ 1.) Sirius XM moved to compel arbitration based on a clause contained in a "Welcome Kit" that Sirius XM supposedly mailed to Plaintiff during his free-trial subscription period. (Dkt. 12 at 1–2.) Sirius XM argued that Plaintiff was subject to a customer agreement in the Welcome Kit because it was mentioned in a brochure included with his vehicle, and that the fact that Plaintiff did not cancel his trial subscription implied acceptance of the arbitration clause. (*Id.* at 3.) Plaintiff opposed arbitration, explaining that he never received the Welcome Kit and that even if he had, the fact that he did not cancel his 90-day trial subscription did not indicate any kind of agreement to the terms in the customer agreement. (Dkt. 15 at 5–8; 10–13.) The Court denied Sirius XM's motion, holding that there was a genuine dispute as to whether Mr. Hooker received the customer agreement and that nothing showed that the customer agreement in the Welcome Kit applied to free-trial subscribers. (Dkt. 28 at 6–7.)[1]

---

[1] Consistent with this Court's decisions on Sirius' motions to compel arbitration and to strike class allegations, the Ninth Circuit subsequently reversed a California District Court's order compelling

Sirius XM next moved to strike Plaintiff's class allegations, arguing, among other things, that Plaintiff Hooker could not represent consumers who received Sirius XM's Welcome Kit, who Sirius XM contended were bound to arbitrate. (Dkt. 35 at 10, 12.) Plaintiff opposed the motion, arguing that receipt of Sirius XM's Welcome Kit did not constitute a contractual offer because neither he nor class members had any obligation to read it and, further, that silence or inaction cannot constitute acceptance of a contractual offer. (Dkt. 39 at 9, 12–16.) The Court denied the Motion to Strike, concluding that "trial customers [such as Plaintiff] are not bound by the Customer Agreement." (Dkt. 56 at 10.) Since then, the Parties have diligently pursued discovery, which closed April 17, and have done so with no Court involvement.

## C. The Applicable Law

The TCPA was born out of the need to combat "[v]oluminous consumer complaints about abuses of telephone technology." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 742 (2012). Congress categorized unrestricted telemarketing as "an intrusive invasion of privacy," noting consumer outrage "over the proliferation of intrusive, nuisance [telemarketing] calls to their homes." *Id.* at 745 (alteration in original). Congress found that a federal law was necessary to prevent telemarketers from evading state-law restrictions on their practices through interstate operations. *Id.*

The TCPA forbids making autodialed calls to cellular telephones without the called party's *express consent*:

---

arbitration of a different consumer's TCPA claims against Sirius XM, holding that the plaintiff had not entered into a contract with Sirius XM simply by purchasing a vehicle from Toyota. *Knutson v. Sirius XM Radio, Inc.*, 771 F.3d 559, 566 (9th Cir. 2014). That court further held that even if Sirius XM had mailed plaintiff a Customer Agreement that included an arbitration clause, he would not be bound by it because he had no obligation to open and read the Customer Agreement. *Id.* Plaintiff's continued use of the Sirius XM service during his free-trial period could not therefore be interpreted as consent to the Customer Agreement. *Id.* Additionally, the court held that there was no evidence that the plaintiff purchased anything from Sirius XM or entered into a contractual arrangement with Sirius XM because there was no initial transaction between the parties. *Id.* at 567–68. Rather, all plaintiff did was buy a Toyota vehicle that was equipped with a free trial of Sirius XM's service. *Id.* In short, the court concluded, plaintiff "could not assent to Sirius XM's arbitration provision because he did not know that he was entering into a contract with Sirius XM." *Id.* at 569.

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States--

> (A) to make any call (other than a call made for emergency purposes or made with the *prior express consent* of the called party) using any *automatic telephone dialing system* or an artificial or prerecorded voice--
>
> ....
>
> > (iii) to any telephone number assigned to a paging service, *cellular telephone service*, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call . . . .

47 U.S.C. § 227(d) (emphasis added). The TCPA defines an "automatic telephone dialing system" as:

equipment which has the capacity--

> (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and
>
> (B) to dial such numbers.

*Id.* § 227(a). Federal "curfew" regulations promulgated by the Federal Communications Commission ("FCC") also forbid calling consumers before 8:00 a.m. or after 9:00 p.m. local time at the consumer's location. 47 C.F.R. § 64.1200(c), (e).

TCPA plaintiffs may sue for injunctive relief, as well as the greater of the plaintiff's actual damages or $500 per violation. 47 U.S.C. § 227(b)(3).[2] If the court finds that the defendant's violations were committed knowingly or willfully, the court may, in its discretion, treble the monetary damage award. *Id.* Because it is a remedial statute designed to protect consumers, the TCPA is "entitled to a broad construction." *In re Monitronics Int'l, Inc. Tel. Consumer Prot. Act Litig.*, No. 1:13MD2493, 2015 WL 1964951, at *3 (N.D. W. Va. Apr. 30, 2015).

Congress gave the FCC the authority to make rules and regulations for enforcing and interpreting the TCPA. 47 U.S.C. § 227(b)(2), (c); *Hossfeld v. Gov't Emps. Ins. Co.*, ___ F. Supp.

---

[2] In a class action with large numbers of class members like this one, statutory damage awards can become quite large. The total amount of a likely damage award, however, is not a concern at the class certification stage, and courts retain procedural tools, including remittitur, to ensure that the final damage award is not unconstitutionally disproportionate to the defendant's wrongdoing and/or ability to pay. *See Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) (explaining that "[a]n award that would be unconstitutionally excessive may be reduced") (citing *State Farm Mutual Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003).

3d ___, 2015 WL 847474, at *3 (D. Md. Feb. 25, 2015). Under the Hobbs Act, the FCC's orders interpreting the TCPA are only reviewable by direct appeal to the Court of Appeals. 28 U.S.C. § 2342; *CE Design, Ltd. v. Prism Business Media, Inc.*, 606 F. 3d 443, 446–50 (7th Cir. 2010.) Using its delegated authority, the FCC has interpreted the definition of ATDS to include any devices with the *capacity* of dialing numbers automatically from a preprogrammed list, regardless of whether the numbers are randomly or sequentially generated. *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, FCC Docket No. 03-153, ("2003 Report and Order") ¶ 132; *see Jordan v. Nationstar Mortgage LLC*, No. 14-CV-00787-WHO, 2014 WL 5359000, at *4 (N.D. Cal. Oct. 20, 2014). The FCC recently reiterated this position, making explicit that this "capacity" includes *any* capacity, not merely the "present ability" to automatically dial numbers from a stored list. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, No. CG02-278, 2015 WL 4387780 (July 10, 2015) (the "2015 Declaratory Order").

Further, in 2012, the FCC revised its TCPA rules to require prior express *written* consent for telemarketing calls using an ATDS. *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1838, ¶ 20 (2012); *Penn v. NRA Grp., LLC*, No. CIV. JKB-13-0785, 2014 WL 2986787, at *1 (D. Md. July 1, 2014). Finally, the FCC has also ruled that entities may be held vicariously liable for calls made by third parties:

> [A] seller cannot avoid liability simply by delegating placing the call to a third-party. The FCC determined that "while a seller does not generally 'initiate' calls made through a third-party telemarketer within the meaning of the TCPA, it nonetheless may be held vicariously liable under federal common law principles of agency for violations of [ ] section 227(b) . . . that are committed by third-party telemarketers." This includes "a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification."

*Hossfeld*, 2015 WL 847474, at *4 (citations and footnotes omitted, alterations in original) (citing *In re Joint Petition filed by Dish Network, LLC*, 28 FCC Red. 6574 (2013)).

### D. Sirius XM's Telemarketing Practices



### 1. Sirius XM's Use of Autodialers



---

[3] ████████████████████████████████████████████
████

[4] ██████████████████████████████████████████████████

[5] In October 2013, one vendor, Servicom, at the request of clients concerned that placing calls to cellular phones using a predictive dialer without express consent could violate the TCPA, switched



Ignoring the TCPA's requirement that cellular telephone customers must *expressly consent* to being called using an autodialer, Sirius XM routinely and repeatedly called vehicle purchasers and lessees using cellular phone numbers obtained from vehicle manufacturers and dealers without any kind of consent.

Plaintiff deposed Rule 30(b)(6) representatives from each of Sirius XM's five telemarketing vendors that made calls for Sirius XM during the Class period—DialAmerica, Results Companies, Servicom, Sykes Enterprises, and TeleServices Direct ("TSD").

---

to using a separate manual dialing telephone exchange for placing calls to cellular telephones. (Ex. 9, Servicom 30(b)(6) Dep. at 36:3–12.) Up until that time, however, Servicom had used a predictive dialer to place calls to cellular phones for SiriusXM. (*Id.* at 35:9–14.)



[6]

Discovery also confirmed that ███████████████████████████
████████████████████████████████████████████████████████
████████

[7] "Predictive dialers" have the capacity to place thousands of calls from a stored list of telephone numbers. (Plt.'s Expert Decl. and Rule 26(a)(2) Disclosure of Jeffrey A. Hansen, attached as Ex. 13, ("Hansen Report") ¶¶ 15, 24.) Typically, the machines are set to predict when telemarketing agents will be available and place the right number of calls so that agents will generally be available to speak to consumers when they answer the phone. 2003 Report and Order, ¶¶ 131–33. The FCC and numerous courts have consistently held that predictive dialers are ATDSs under the TCPA because they have the "*capacity* to store or produce telephone numbers…" 2003 Report and Order, ¶ 132; *see Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) ("To satisfy that definition, the equipment does not actually have to store or produce telephone numbers or to use a random or sequential number generator; it merely must

---

[6] Sirius XM did not provide a number of calls made by Sykes Enterprises, but one of Sykes' 30(b)(6) witnesses estimated that Sykes made more than 5,000 calls per month for Sirius during the time it was a Sirius calling vendor, a relationship that ended in July 2014. Ex. 12, Sykes 30(b)(6) Dep. [Clarkson] at 8:12–23, 32:23–33:7.)

[7] *See* footnote 5, *supra*.

have the capacity to do so."); *Prater v. Medicredit Inc.*, 45 F. Supp. 3d 1038, 1043 (E.D. Mo. 2014) ("[T]he FCC has held that predictive dialers which do not dial random or sequential numbers, but which store or receive numbers from a database, fall within the '"meaning and statutory definition of "automatic telephone dialing equipment and the intent of Congress."'"); *Levy v. Receivables Performance Mgmt. LLC*, 972 F. Supp. 2d 409, 417 (E.D.N.Y. 2013) (holding that, to qualify as an ATDS, a dialing system need only have the "capacity" to "store, produce or call randomly or sequentially generated telephone numbers").



As Plaintiff's expert Mr. Hanson, however, explains, and as numerous courts have consistently held and the FCC has recently reiterated, it is the *capacity* to automatically dial numbers from a list that characterizes an autodialer, and an ATDS does not cease to be an ATDS merely because its full capacity may not be being used at a particular time. (Ex. 13, Hansen Report at 7–21; Supplemental Report of Jeffrey A. Hansen, attached as Ex. 15, ("Hansen Suppl. Rep.") at 6–13)

█████████████████████████████; *see* 2015 Declaratory Order ¶¶ 15–16; 2003 Report and Order, ¶ 132; *Satterfield* , 569 F.3d at 951. Indeed, even Mr. Sponsler, when he was giving a compliance presentation to industry participants—rather than serving as a paid litigation expert for Sirius XM—warned that simply switching an ATDS into "preview mode" does not cause it to cease being an ATDS:

> The broad definition of an Automatic Telephone Dialing System (ATDS) could be inclusive of dialers used in 'preview' mode. An ATDS is defined as: "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator and (B) to dial such numbers" 47 U.S.C. § 227(a)(1). The courts have applied the definition very liberally, so that it may include any system that is capable of dialing without human intervention, even if that capability is not used.

(Ken Sponsler, *New Wireless Rules & Other Significant Impacts on Telemarketing* (Feb. 2012), attached as Ex. 16, at 1; *see* Ex. 4, Sponsler Dep. at 97:24–98:5.) Mr. Sponsler's warning is consistent with the FCC's statement in the 2015 Declaratory Order that the "capacity" definition is designed "'to ensure that the restriction on autodialed calls not be circumvented,'" as, for example, by using equipment that can add autodialer functionality by "'unlock[ing] a dormant ATDS function.'" 2015 Declaratory Order, ¶ 19 & n.72.



**2. Sirius XM's Curfew Violations**

███████████████ This failure ██████████████████████
██████████████████████████████ resulted in numerous calls placed outside the
permissible 8:00 a.m. to 9:00 p.m. calling window. (Dkt. 1 ¶ 56.)

**3. Sirius XM's Willful Violations**

Finally, Sirius XM has a systematic policy of continuing to call consumers who explicitly
state that they do not wish to be called, removing any conceivable ambiguity that they do not
consent to being contacted by autodialed calls on their cellular phones. Sirius XM nevertheless
willfully continues to call these non-consenting consumers for up to ten days. ██████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

Even though Sirius XM knows of the requests, telemarketing calls continue because Sirius XM
delays for up to ten days before implementing the requests. As Mr. Hooker's experience shows,
calling in that ten-day time period can be frequent. (Dkt. 1 ¶¶ 32–34 (Plaintiff received at least 2
additional calls after request not to be contacted).)

**E. The Proposed Classes**

Plaintiff asks that the Court certify the "Teleservices Direct Class," including trial
subscription recipients who were never paying Sirius XM subscribers and who received autodialed
telemarketing calls on behalf of Sirius XM from TeleServices Direct on their cell phones:

> All natural persons residing in the United States (including all territories and other
> political subdivisions of the United States) who were (a) recipients of trial
> subscriptions to Sirius XM's radio service through purchases or leases of new or
> used vehicles; (b) never were or became paying subscribers of Sirius XM's service;
> (c) received one or more telephone calls to their wireless phone numbers from
> Sirius XM calling vendor TeleServices Direct; (d) placed using the SER Solutions,
> Inc. Call Processing System or other dialing system with predictive dialing capacity;
> (e) made by or on behalf of Sirius XM; (f) within four years preceding the filing of
> this action and/or during its pendency. Excluded from the class definition are any
> employees, officers, or directors of Sirius XM, any attorneys appearing in this case,
> and any judges assigned to hear this case as well as their immediate family and staff.

In the alternative, Plaintiff asks that the Court certify the "Autodialed Class," including all U.S. consumers who were never paying Sirius XM subscribers and who received autodialed telemarketing calls from Sirius XM on their cell phones:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) who (a) never were or became paying subscribers of Sirius XM's service; (b) were the recipients of one or more telephone calls to their wireless phone numbers; (c) made by or on behalf of Sirius XM; (d) using a dialing system with predictive dialing capacity; (e) within four years preceding the filing of this action and/or during its pendency. Excluded from the class definition are any employees, officers, or directors of Defendant, any attorneys appearing in this case, and any judges assigned to hear this case as well as their immediate family and staff.

Plaintiff also asks that the Court certify the "Injunctive Relief Class," including:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) who (a) never were or became paying subscribers of Sirius XM's service; (b) were the recipients of one or more telephone calls to their wireless phone numbers; (c) made by or on behalf of Sirius XM; (d) using a dialing system with predictive dialing capacity; (e) without their consent to be contacted using an autodialer on their wireless numbers; (f) within four years preceding the filing of this action and/or during its pendency. Excluded from the class definition are any employees, officers, or directors of Defendant, any attorneys appearing in this case, and any judges assigned to hear this case as well as their immediate family and staff.

In addition, Plaintiff requests that the Court certify a "Willful Violation Subclass," including members of either the Teleservices Direct Class or the Autodialed Class (the "Class") who continued receiving calls after explicitly advising Sirius XM that they did not consent to be called:

> All members of the Class whose wireless numbers Sirius XM or persons acting on its behalf continued to call using a dialing system with predictive dialing capacity after being instructed to stop calling. Excluded from the class definition are any employees, officers, or directors of Defendant, any attorneys appearing in this case, and any judges assigned to hear this case as well as their immediate family and staff.

Plaintiff further asks that the Court certify the "Telemarketed Class," including persons who received early morning or late evening calls from Sirius XM in violation of the FCC's curfew regulations:

All natural persons residing in the United States (including all territories and other political subdivisions of the United States) who (a) were the recipients of more than one telephone solicitation call within any 12-month period; (b) initiated by or on behalf of Defendant after 9:00 p.m. and before 8:00 a.m., local time at the called party's location; (c) within four years preceding the filing of this action and/or during its pendency. Excluded from the class definition are any employees, officers, or directors of Defendant, any attorneys appearing in this case, and any judges assigned to hear this case as well as their immediate family and staff.

## III.   ARGUMENT AND AUTHORITIES

### A.  The Fourth Circuit Standards For Class Certification

The Fourth Circuit has long instructed that Rule 23 should be construed flexibly to serve the purpose of affording relief to injured persons:

> If a lawsuit meets [Rule 23's] requirements, certification as a class action serves important public purposes. In addition to promoting judicial economy and efficiency, class actions also "afford aggrieved persons a remedy if it is not economically feasible to obtain relief through the traditional framework of multiple individual damage actions." 5 James Wm. Moore et al., *Moore's Federal Practice* § 23.02 (3d ed. 1999). Thus, federal courts should "give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in application which will in the particular case 'best serve the ends of justice for the affected parties and . . . promote judicial efficiency.'"

*Gunnells v. Healthplan Servs., Inc.,* 348 F.3d 17, 424 (4th Cir. 2003) *(quoting In re A.H. Robins*, 880 F.2d 709, 740 (4th Cir. 1989) (first alteration added); see also *McKnight v. Circuit City Stores, Inc.*, No. 95-CV-964, 1996 WL 454994, at *3 (E.D. Va. Apr. 30, 1996) ("[T]he Fourth Circuit has expressly recognized that requirements for class certification are to be liberally construed in favor of certification, especially because the court can always decertify or alter the class determination if later events so warrant."). Other courts within this Circuit have heeded this instruction, noting that "[t]he interest in consistent and efficient adjudication favors class certification as well because class certification will 'promote[] consistency of results, giving [the defendant] the benefit of finality and repose.'" *Souter v. Equifax Info. Servs., LLC,* 307 F.R.D. 183, 218 (E.D. Va. 2015) *(quoting Stillmock v. Weis Markets, Inc.,* 385 F. App'x 267, 275 (4th Cir. 2010), first alteration added).

14

Consumer claims, like those brought here, are particularly appropriate for class resolution. *See AmChem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."); *In re Mex. Money Transfer Litig.*, 267 F.3d 743, 747 (7th Cir. 2001) ("Many opinions, of which *Amchem* is one, 521 U.S. at 625, 117 S. Ct. 2231, give consumer fraud as an example of a claim for which class treatment is appropriate."); *Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 395-96 (N.D. Ill. 2006) ("Consumer claims are among the most commonly certified for class treatment."). Because each consumer's individual damages are relatively small, such cases are especially well suited to class treatment. *Bussian v. DaimlerChrylser Corp.*, No. 104CV00387, 2007 WL 1752059, at *8 (M.D.N.C. June 18, 2007).

### B. The Classes should be certified because Rule 23's requirements are satisfied.

Rule 23(a) has four requirements:

(1)    the class is so numerous that joinder of all members is impracticable;

(2)    there are questions of law or fact common to the class;

(3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These factors are commonly referred to as numerosity, commonality, typicality, and adequacy of representation. In addition, a class must meet the requirements of *either* Rule 23(b)(3) *or* Rule 23(b)(2). Rule 23(b)(3) requires that the common issues "predominate over any issues affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(2) certification is appropriate whenever the defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). As discussed

below, Plaintiff's proposed Classes and Subclass satisfy the requirements of Rule 23(a) and (b), and the Court should therefore certify them.

**1. The Proposed Classes and Subclass satisfy the ascertainability, numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a).**

### a. The Class members are ascertainable.

Though not expressly required by Rule 23(a), most courts, including the Fourth Circuit, imply a requirement that a Rule 23(b)(3) class be "readily identifiable." *Soutter*, 307 F.R.D. at 196. Often referred to as "ascertainability," this prerequisite means that class members must be identified by objective criteria. *Id.* at *6. But ascertainability does not require identifying every class member at the time of certification; rather, the plaintiff must simply show that "it is administratively feasible for the court to determine whether a particular individual is a member." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (citing 7A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 1760 (3d ed. 2005)). Plaintiff's proposed Class, Telemarketed Class, and Willful Violation Subclass are readily ascertainable because they are defined according to objective criteria, and their members can be identified from Sirius XM's and its calling vendors' records.

The Teleservices Direct Class consists of consumers who received free trials but never signed up for Sirius XM's service, and who received autodialed calls to their cellular phones from Teleservices Direct on behalf of Sirius XM. These points are objective and easily identifiable.



By simply removing these individuals from those called by TeleServices Direct, the Class can be easily ascertained. The Court should therefore conclude that ascertainability is satisfied as to the Teleservices Direct Class.

The Autodialed Class members are also ascertainable.

As to the Willful Violation Subclass, comprised of all Class members whom Sirius XM continued to call after the consumers' direct instruction that they not be contacted, Sirius XM's 30(b)(6) witness also confirmed that these Subclass members are ascertainable.

Similarly, the Telemarketed Class members—consumers who were called outside the allowed calling periods in violation of the FCC's curfew regulations—are ascertainable from Sirius XM's or its vendors' records. As noted above,

Thus, in instances such as Plaintiff's—where his cellular phone had a California area code, but he bought his car and received post-curfew calls in Virginia—cellular call times can be compared to the addresses in Sirius XM's records to identify consumers called in violation of the FCC curfew. In addition, late night or early morning calls from telemarketers are an annoying and memorable occurrence, such that consumers will be able to affirm that they were called before 8 a.m. or after 9 p.m. in their local time zones. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 662 (7th Cir. 2015) (holding that class members' self-identification through affidavit presents no barrier to ascertainability, so long as the class is defined "clearly and with objective criteria").

### b. Numerosity is met for all Classes and the Subclass.

Numerosity mandates that the class be sufficiently large "that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1); *Droste v. Vert Capital Corp.*, No. 3:14-CV-467, 2015 WL 1526432, at *4 (E.D. Va. Apr. 2, 2015). While there is no magic number needed to meet the numerosity threshold, courts have held that a class of as few as 18 members is sufficient. *Droste*, 2015 WL 1526432, at *4. Sirius XM cannot genuinely dispute that numerosity is met here.

This easily meets the numerosity requirement as to the Teleservices Direct Class. (*Id.*); *see Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 567 (W.D. Wash. 2012) (concluding numerosity was satisfied where the defendant allegedly sent unauthorized text messages "to a large percentage" of 68,000 phone numbers); *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 646–47 (W.D. Wash. 2007) (finding numerosity requirement satisfied in TCPA junk fax case involving the transmission of 3,000 unsolicited faxes); *Heastie v. Cmty. Bank of Greater*

*Peoria*, 125 F.R.D. 669, 674 (N.D. Ill. 1989) (recognizing that classes numbering in the thousands "clearly" satisfy the numerosity requirement).



As to the Willful Violation Subclass, numerosity is likewise met.

Because of the large number of calls placed on Sirius XM's behalf, the frequency of calls (e.g., four calls to Plaintiff within three days[8]), and the passage of time between consumers' requests and Sirius XM's implementation of those requests, common sense indicates that the Willful Violation Subclass meets the numerosity requirement. *See Scott v. Clarke*, No. 3:12-CV-00036, 2014 WL 6609087, at *12 (W.D. Va. Nov. 20, 2014) (noting that general knowledge and common sense may support a conclusion that numerosity is met where the exact size of the class is unknown).

Numerosity is also met as to the Telemarketed Class. Out of the thousands of calls made, and given the prevalence of people keeping their old cell phone numbers when moving, common sense indicates that thousands of consumers, far exceeding the minimum typically required for numerosity, were called outside the allowed calling window. *Scott*, 2014 WL 6609087, at *12; *Allen v. Similasan Corp.*, No. 12-CV-376 BAS JLB, 2015 WL 1534005, at *7 (S.D. Cal. Mar. 30, 2015) ("And, 'where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.'").

---

[8] (Dkt. 1 ¶¶ 25–34.)

### c.  The Class members' claims satisfy commonality.

Rule 23(a) next requires that there be "questions of law and fact common to the class." FED. R. CIV. P. 23(a)(2). Meeting this element requires that a plaintiff allege a "common contention of such a nature that it is capable of class-wide resolution, which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011). The Fourth Circuit has recognized that the commonality threshold is "not high." *Brown v. Nucor Corp.*, 576 F.3d 149, 153 (4th Cir. 2009). And as the Supreme Court explains in *Wal-Mart*, even a single common question meets the threshold. *Wal-Mart*, 131 S. Ct. at 2556.

Sirius XM's liability to the Class and Injunctive Relief Class members hinges primarily on a key common question: Is a dialing system with predictive dialing capacity still an ATDS when it is temporarily set in "preview" mode? (*see supra* Section II.D.2.) This common question will be determined on a class-wide basis by interpretation of the TCPA and the relevant FCC regulations and orders, aided by expert testimony regarding industry practice, and will not require any evidence regarding the circumstances of particular calls or individual class members.

In addition, the Teleservices Direct Class's, or, in the alternative, the Autodialed Class's claims raise other common questions, including (1) whether Sirius XM is vicariously liable for calls made at its instructions through a telemarketing vendor; and (2) whether Sirius XM's practice of asking car dealers to give consumers information about Sirius XM's service constituted "express consent" for customers to receive autodialed calls on their cell phones. These questions can also be answered using common evidence.

[black redaction box]; *see Booth*, 2015 WL 1466247 at *11 (holding that "in the absence of any affirmative evidence of consent, consent is a common issue with a common answer"); 2015 FCC Declaratory Order ¶ 48 (finding that "the burden is on the caller to prove that it obtained the necessary prior express consent).

Because liability in TCPA cases like this one depends on common issues such as the defendant's dialing system and business practices, courts have regularly concluded that commonality is met. *See Whitaker v. Bennett Law, PLLC*, No. 13-cv-3145-L(NLS), 2014 WL 5454398, at *5 (S.D. Cal. Oct. 27, 2014) (holding commonality satisfied where the core issue was whether the defendant used an ATDS or prerecorded or artificial voice to make unsolicited calls); *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1306 (D. Nev. 2014) (finding vicarious liability issues satisfied commonality because the issue "turns on the federal common law of agency and can arise from actual authority, apparent authority, or ratification," a determination of which will depend on the defendants' conduct rather than class members); *Stern v. DoCircle, Inc.*, No. 12-cv-2005, 2014 WL 486262, at *4 (C.D. Cal. Jan. 29, 2014) (finding consent a legal issue common to all class members); *Zyburo*, 44 F. Supp. 3d at 504 (finding willfulness under the TCPA suitable for class treatment because it would depend on "defendant's general practices and procedures, or lack thereof"). This Court should reach the same result here.

Regarding the Willful Violation Subclass, in addition to the common questions discussed above, which are relevant to the entire Class, this Subclass's claims concern the common question of whether Sirius XM called consumers after consumers put their lack of consent to be called beyond any possible doubt by directing Sirius XM's agents to stop calling, [black redaction box]

[black redaction box] Willfulness will be determined by Sirius XM's knowledge of its conduct and the

applicable law and facts. No evidence specific to individual subclass members is relevant to whether Sirius XM's conduct was willful. Thus, for the same reasons that the Class satisfies commonality, the Willful Violation Subclass does likewise. Similarly, the Telemarketed Class raises common questions, including vicarious liability, whether vendors placed calls outside the permissible calling windows, and whether it was Sirius XM's policy to rely on customers' cell phone area codes, without regard to their actual addresses, to determine the customers' locations. These questions can similarly be answered on a common basis by analyzing Sirius XM's and its vendors' records, satisfying commonality. (Ex. 7, DialAmerica 30(b)(6) Dep. at 82:7–84:3, 94:5–22, 101:4–15, 103:24–104:24, 105:8–12, 128:16–129:15; Ex. 8, Results 30(b)(6) Dep. at 23:7–17, 29:7–18, 63:11–64:4; Ex. 9, Servicom 30(b)(6) Dep. at 46:13–47:12; Ex. 10, Sykes 30(b)(6) Dep. [Hess] at 26:16–27:9, 35:7–36:7, 57:15–22; Ex. 11, TSD 30(b)(6) Dep. at 24:25–25:15, 32:20–33:23; Ex. 2, Donnon Dep. at 38:4–40:2)

### d.  Plaintiff's claims are typical of Class members' claims.

Typicality tests whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). This factor therefore "focuses on the general similarity of the named representative's legal and remedial theories to those of the proposed class." *Soutter*, 307 F.R.D. at 208. The named plaintiff must be a member of the class and possess the same interest after suffering the same injury as the class members. *Id.* As the Fourth Circuit has put it, "[t]he essence of the typicality requirement is captured by the notion that 'as goes the claim of the named plaintiff, so go the claims of the class.'" *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). Importantly, however, claims need not be "perfectly identical or perfectly aligned" to satisfy the typicality requirement. *Id.* at 467.

Courts have found typicality where, as here, a defendant's practice of making the same unsolicited contact to plaintiff and the proposed class formed the basis of the class's claim. *See Whitaker*, 2014 WL 5454398, at *5 (finding typicality satisfied because each class member's claim "revolves exclusively around [the defendant's] conduct as it specifically relates to the alleged

violations of the TCPA"); *Agne*, 286 F.R.D. at 569 (concluding plaintiff's claims were typical where they arose from the same marketing campaigns and were executed in the same manner as to class members).

Here, the Teleservices Direct Class, Autodialed Class, and Injunctive Relief Class all satisfy the typicality requirement because their members' claims match those of Mr. Hooker. Plaintiff and Class members all received unsolicited marketing calls from Sirius XM, each call was made using a predictive dialer, and none of the class members consented to those calls. Typicality is also satisfied for the Willful Violation Subclass because, like Mr. Hooker, all Willful Violation Subclass members had requests not to be called willfully ignored. Plaintiff's and Class members' claims therefore arise out of the same course of conduct by Sirius XM, are based on the same legal theories, and resulted in the same injury redressible under the TCPA. Typicality is therefore met for the Class, Injunctive Relief Class, and Willful Violation Subclass.

Likewise, the claims of members of the Telemarketed Class mirror those of Plaintiff Hooker. All were called at times that are not permitted in their respective time zones. These claims all arise out of the same course of conduct by Sirius XM and/or its vendors, are based on the same TCPA provisions and legal theories, and resulted in the same injury the TCPA was fashioned to remedy. Typicality is therefore also met for the Telemarketed Class.

### e. Plaintiff and his Counsel will adequately represent the interests of the Classes.

To satisfy the final requirement of Rule 23(a), Plaintiff must show that he and his Counsel will adequately represent the interests of the Classes and Subclass. FED. R. CIV. P. 23(a)(4). That standard is met if the plaintiff has interests in common with, rather than antagonistic to, those of class members and his attorneys are qualified, experienced, and generally able to conduct the litigation. *Droste*, 2015 WL 1526432, at *7. The Fourth Circuit has long held that not any conflict is sufficient to defeat class certification. Rather, "[f]or a conflict of interest to defeat the adequacy requirement, 'that conflict must be fundamental.'" *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164,

180 (4th Cir. 2010) (quoting *Gunnells*, 348 F.3d at 430). Plaintiff and proposed Class Counsel will adequately represent the Classes here.

Plaintiff unquestionably has the same interests as TeleServices Direct Class, Autodialed Class, and Injunctive Relief Class members, as they all received illegal autodialed calls from Sirius XM to their cell phones and have an interest in seeing Sirius XM's TCPA violations remedied. Plaintiff also has the same interests as the Willful Violation Subclass members, because all had their requests not to be called ignored and have an interest in remedying Sirius XM's willful disregard for their plain lack of consent to be called. Finally, Plaintiff adequately represents the Telemarketed Class members, because all have the same interest in obtaining remedies for Sirius XM's violations of the FCC's curfew regulations. There are no conflicts between the Classes and Subclass; rather, all share a common goal: to obtain remedies for Sirius XM's TCPA violations. Plaintiff has actively participated in this litigation, having answered written discovery and produced documents, submitting three declarations to support motions made early in the case (Dkts. 15-2, 21-2, and 39-1), sitting for deposition, and staying abreast of developments in the case. (Deposition of Francis W. Hooker, Jr., attached as Ex. 18, ("Hooker Dep.") at 66:6–22; *see also id.* at 67:2–12.) Mr. Hooker thus easily meets the adequacy threshold. *See Droste*, 2015 WL 1526432, at *7 (finding plaintiffs adequate where they had no antagonistic interests to class members because of a "complete overlap of relief sought" and their participation in the case and compliance with court deadlines and proceedings).

Plaintiff's Counsel is also extremely well qualified, easily satisfying the adequacy requirement. The three firms representing Mr. Hooker, Caddell & Chapman, The Consumer and Employee Rights Law Firm, P.C., and Kazerouni Law Group, APC, regularly engage in complex class action litigation, including litigation involving consumer protection statutes. (Declaration of Michael A. Caddell, attached as Ex. 19, ("Caddell Decl.") ¶¶ 11–16; Declaration of Christopher C. North, attached as Ex. 20, ("North Decl.") ¶¶ 7–11; Declaration of Abbas Kazerounian, attached as Ex. 21, ("Kazerounian Decl.") ¶¶ 8–9.) Proposed Class Counsel have been appointed Class Counsel in many cases in which they have been involved, regularly litigating against

powerful, well-funded defendants like Sirius XM. (Ex. 19, Caddell Decl. ¶¶ 11–14; Ex. 20, North Decl. ¶¶ 7–11; Ex. 21, Kazerounian Decl. ¶¶ 7–9) Additionally, Proposed Class Counsel has identified and investigated potential claims in the case, has sufficient knowledge of the applicable law, and has hired an expert and committed other financial resources to the pursuit of this case. (Ex. 19, Caddell Decl. ¶¶ 31–36; Ex. 20 North Decl. ¶¶ 12–18; Ex. 21, Kazerounian Decl. ¶¶ 7-9); *see* FED. R. CIV. P. 23(g).

**2. The proposed Class, Telemarketing Class, and Willful Violation Subclass also meet the predominance and superiority requirements of Rule 23(b)(3).**

Once the Court concludes that the requirements of Rule 23(a) are met, it next analyzes whether "questions of law or fact common to the members of the class predominate over any question affecting only individual members, and…a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3). This case meets both requirements, warranting certification of the proposed Classes and Subclass.

**a. Common questions predominate because the Classes' and Subclass's claims arise from a common nucleus of fact and involve overriding common questions.**

The focus of the Rule 23(b)(3) predominance inquiry is on whether the proposed classes are "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. This criterion is normally satisfied when there is an essential common factual link between all class members and the defendants for which the law provides a remedy. *Talbott v. GC Servs. Ltd. P'ship*, 191 F.R.D. 99, 105 (W.D. Va. 2000) (citing *Halverson v. Convenient FoodMart, Inc.*, 69 F.R.D. 331, 334 (N.D. Ill. 1974)). The Fourth Circuit has found predominance to be present where the "qualitatively overarching issue" is the defendant's liability, such that "the purported class members were exposed to the same risk of harm every time the defendant violated the statute in the identical manner." *Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 273 (4th Cir. 2010) (addressing predominance in Fair Credit Reporting Act case seeking, like here, statutory damages for alleged classwide violations). Because Sirius XM's TCPA liability depends on common facts

that will be the central focus of this litigation, this case satisfies the predominance requirement of Rule 23(b)(3).

The central focus of Plaintiffs' autodialer claims under 47 U.S.C. § 227(b)(1)(A)(iii) and 227(b)(3), brought on behalf of the Teleservices Direct Class or, in the alternative, the Autodialed Class, will be whether Sirius XM and its telemarketing vendors can evade the TCPA by setting their predictive dialing systems to "preview" mode. (Dkt. 1 ¶¶ 60–71); *see* 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii), (a)(2) (prohibiting calls placed by ATDS to Class members' cell phones without express consent). This case will primarily turn on whether Sirius XM can legally use predictive dialers—long recognized to fall under the definition of an ATDS—to call cell phones simply by changing this setting, temporarily requiring agents to click to initiate a call, or whether, as the FCC and courts have long held, and the FCC recently emphatically reiterated, it is the *capacity* to place autodialed calls that defines an ATDS. *See* 2015 Declaratory Order ¶¶ 15–16; 2003 Report and Order, ¶ 132; *Satterfield*, 569 F.3d at 951. If, as Plaintiff's expert Mr. Hansen explains (and even Sirius XM's expert Mr. Sponsler admitted when he was making a compliance presentation to an industry group) switching a predictive dialer into "preview" mode is not enough to evade the TCPA, Sirius XM will be liable to the entire TeleServices Direct Class and Autodialed Class. 47 U.S.C. § 227(b); 2003 Report and Order, ¶ 132. The issues of vicarious liability and consent may be tried on a common basis as well. (*See supra* Section II.B.1.c) In addition, damages are also a common issue, because Plaintiff seeks statutory damages, rather than individualized actual damages, on behalf of the Class. (Dkt. 1 ¶ 70.)

Furthermore, this case will not raise any individual issues regarding consent, because the Class includes only consumers who, like Plaintiff, were never paying Sirius XM subscribers and never provided their cellular telephone numbers directly to Sirius XM. *See Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 686 (S.D. Fla. 2013) (finding non-common issues regarding consent would not predominate because "the way in which the discovery was performed weeded out the individuals who had previously contacted [the defendant] and, thus, weeded out those individuals who may have consented to be called"); *Stemple*, 2014 WL 4409817, at *8–9

(amending class definition to eliminate individuals who provided their cell phone number on a credit application). Members of the Class cannot have consented to any calls from Sirius XM because they never had any agreement with Sirius XM, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

Similarly, as this Court has already found in denying Sirius XM's Motion to Strike, members of the Class, who never became paying subscribers, cannot have agreed to arbitrate claims against Sirius XM, because the Welcome Kit that Sirius XM mailed to trial subscribers offered a customer agreement only to paying subscribers. (Dkt. 56 at 10–11.) ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Common issues thus overwhelmingly predominate as to the Teleservices Direct Class.

Common issues also predominate as to the Willful Violation Subclass, because the only additional issue relevant to this Subclass's claims, whether Sirius XM continued calling after a request that the consumer not be contacted further, is also subject to common proof. (*See supra* Section III.b.1.c.) There are no individual issues relevant to Subclass members' claims, and certainly none that would predominate over the overwhelming common liability issues. In addition, predominance is satisfied as to the Telemarketed Class, because this class's claims depend primarily on common issues regarding Sirius XM's liability—namely, Sirius XM's systematic practice of ignoring consumers' address information in determining the appropriate local time zone for compliance with FCC curfew regulations. (*See supra* Section II.D.2.)

### b.   A class action is the superior method of adjudicating these claims.

A class should be certified if the class action device is superior to other methods of fair and efficient adjudication of the action. FED. R. CIV. P. 23(b)(3). Superiority is achieved when class

treatment will serve the objectives underlying class action procedure. *Soutter,* 307 F.R.D. at *30 (citing *Stillmock*, 385 F. App'x at 274). In this analysis, the Court must first consider what other procedures might be used to dispose of the dispute. *Id.* Next, the Court should compare these possible alternatives to determine whether Rule 23 treatment is justified. *Id.* The superiority analysis involves consideration of "(1) the interest in controlling individual prosecutions; (2) the existence of other related litigation; (3) the desirability of concentrating the litigation in the forum; and (4) manageability." *Id.* (quoting *Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 220 (D. Md. 1997)). These factors favor certification of the proposed Classes here.

Efficiency is the primary focus in determining whether a class action is the superior method for resolving the controversy. *See Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303, 311 (S.D. Cal. 2015) (noting a class action may be superior where classwide litigation will reduce costs and promote efficiency and *is* superior where there is "no realistic alternative"). "[E]ven if just a fraction of the class members were to bring individual suits, the adjudication of the common issues in a single proceeding would be more efficient than the separate adjudication of individual claims." *Soutter*, 2015 WL 1787236, at *31 (citations omitted). In evaluating efficiency, it is proper for a court to consider the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974). As Judge Payne explained in concluding superiority was met in a class action brought under the Fair Credit Reporting Act, "[t]he proposed classes involve at least hundreds, perhaps thousands, of proposed class members pursuing identical, fairly small claims for relief, who, if required to proceed individually, probably would not assert their claims. The class action device therefore appears to be a superior means of resolving their disputes." *Williams v. LexisNexis Risk Mgmt. Inc.*, No. 3:06cv241, 2007 WL 2439463, at *9 (E.D. Va. Aug. 23, 2007) (citation omitted). Rule 23(b)(3) was designed for situations such as this, where the amount in controversy for any individual claimant is small, but injury is substantial in the aggregate.

As to the first factor, class members have little interest in controlling individual cases, and, in the absence of class treatment, all but a tiny handful of Class members will receive no relief at all. Courts have frequently recognized that "the TCPA's $500 statutory damages provision is likely insufficient to compensate the average consumer for the time and effort involved in bringing a small claims action." *Booth*, 2015 WL 1466247, at *13 (collecting TCPA cases so holding). Because litigation costs would so overwhelm a plaintiff's potential recovery, the class device is the *only* available form of relief for most class members. *Id.* This conclusion is even more apparent in a case like this one, where there are likely hundreds of thousands, if not millions, of injured consumers, and where prosecution of the case involves expensive discovery and expert fees. Plaintiff's Counsel has invested hundreds of hours obtaining the evidence necessary to prove Sirius XM's unlawful conduct and thousands of dollars in expert fees. Such work and expense would need to be repeated time and again if individual suits were brought. Expecting consumers to bring individual lawsuits against Sirius XM is thus unrealistic, nor would it be an efficient use of judicial resources. This factor therefore favors class treatment.

The second and third factors also point toward a finding of superiority. Several other TCPA class cases have been filed challenging Sirius XM's telemarketing practices. Order Denying Transfer, *In re: Sirius XM Radio, Inc. TCPA Litig.*, MDL No. 2635, Dkt. 38 (August 7, 2015.)[9] As the Judicial Panel on Multidistrict Litigation found, class members will benefit from coordinating TCPA litigation against Sirius XM in this forum. *Id.* (finding that "cooperation among the parties will be the best route to resolving these actions"). These factors thus likewise favor class certification.

Finally, the case is manageable. At trial, Plaintiff will present generalized evidence, such as that set forth above, of Sirius XM's common course of unlawful conduct as well as the total number of offending calls received by Class members. Sirius XM will then have the opportunity to present

---

[9] In addition, another similar action was recently filed in Florida. *See Parker v. Sirius XM Radio, Inc.*, No. 8:15-cv-01710-JSM-EAJ (M.D. Fla. July 22, 2015). Sirius XM has not yet filed its answer in the *Parker* action.

evidence that it believes will absolve it of liability for the calls it made or that were made on its behalf. Plaintiff does not foresee any practical difficulties in managing this case as a class action. Superiority is therefore satisfied.

### 3.   The proposed Injunctive Relief Class meets the requirements of Rule 23(b)(2).

Rule 23(b)(2) authorizes certification of classes seeking injunctive or declaratory relief when the requirements of Rule 23(a) are met and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2). While the enumerated numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) apply equally to classes certified under Rule 23(b)(2), the implied requirement of ascertainability does not. *Shelton v. Bledsoe*, 775 F.3d 554, 563 (3d Cir. 2015) (holding that "ascertainability is not a requirement for certification of a (b)(2) class seeking only injunctive and declaratory relief").

Here, Sirius XM has adopted a uniform policy ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ a practice the FCC has recently reiterated violates the TCPA. 2015 Declaratory Order ¶¶ 15–16; ▮▮▮▮▮▮▮▮▮▮▮▮; *see also supra* Section II.D.2.) Injunctive relief is therefore appropriate to prevent Sirius XM from continuing to use dialing systems with predictive dialing capacity in *any* mode to contact consumers who have not given their consent to be contacted using an autodialer on their wireless numbers. *See Meyer v. Portfolio Recovery Assocs.*, 707 F.3d 1036, 1045 (9th Cir. 2012) (holding that injunction was necessary to prevent irreparable harm to class members' privacy interests in TCPA case).

## IV.   CONCLUSION

This case is exactly the kind for which Rule 23 was designed, as it involves a small-dollar injury to large numbers of consumers, and liability can be determined on a class-wide basis. The Court should therefore conclude that class treatment is proper and grant Plaintiff's Motion.

Dated: September 29, 2015

Respectfully submitted,

_____/s/_____

William L. Downing (VSB # 17704)
Christopher Colt North (VSB # 16995)
THE CONSUMER & EMPLOYEE RIGHTS
LAW FIRM, P.C.
751-A Thimble Shoals Blvd.
Newport News, VA 23606
Tel: (757) 873-1010
Fax: (757) 873-8375
Email: wdowninglaw@aol.com
Email: cnorthlaw@aol.com

Michael A. Caddell (*pro hac vice*)
Cynthia B. Chapman (*pro hac vice*)
CADDELL & CHAPMAN
1331 Lamar, Suite 1070
Houston, TX 77010
Telephone: (713) 751-0400
Fax: (713) 751-0906

Abbas Kazerounian (*pro hac vice*)
KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92606
Tel.: (800) 400-6808
Fax: (800) 520-5523
Email: ak@kazlg.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2015, I filed a true and correct copy of the foregoing

document using the Court's CM/ECF system. The system will then send an electronic notice of

filing to the following counsel of record:

William V. O'Reilly (VSB # 26249)
Jeffrey A. McSorley (VSB # 68437)
Attorneys for Defendant Sirius XM Radio Inc.
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
Tel: (202) 879-3939
Fax: (202) 626-1700
Email: woreilly@jonesday.com
Email: jamcsorley@jonesday.com

Thomas Demitrack (admitted *pro hac vice*)
Attorney for Defendant Sirius XM Radio Inc.
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
Tel: (216) 586-3939
Fax: (216) 579-0212
Email: tdemitrack@jonesday.com

Lee A. Armstrong
Attorney for Defendant Sirius XM Radio Inc.
JONES DAY
222 East 41st Street
New York, New York 10017
Tel.: (212) 326-8340
Email: laarmstrong@JonesDay.com

/s/
William L. Downing (VSB # 17704)