# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION**

| | |
|---|---|
| Francis W. Hooker, Jr., <br><br> Plaintiff, <br><br> v. <br><br> SIRIUS XM RADIO INC., <br><br> Defendant. | Civil Action No. 4:13-cv-00003 (AWA/LRL) |

## CLASS ACTION SETTLEMENT AGREEMENT

This Settlement Agreement (this "Agreement" or this "Settlement Agreement") is made and entered into as of this 5th day of August 2016 by and between Plaintiffs Francis W. Hooker, Jr., Eric Knutson, Yefim Elikman and Anthony Parker (the "Named Plaintiffs") in the below-described cases, individually and on behalf of the Class (as defined below), by and through their counsel Caddell & Chapman; The Consumer and Employee Rights Law Firm, P.C.; Kazerouni Law Group, APC; Hyde & Swigart; McGuire Law, P.C.; and McMorrow Law, P.C. (collectively, "Class Counsel"), and Defendant Sirius XM Radio Inc. ("Sirius XM"), by and through its counsel, Jones Day (the Named Plaintiffs and Sirius XM, collectively, the "Parties").

WHEREAS, on January 4, 2013, Francis W. Hooker, Jr. filed a putative class action complaint in the United Stated District Court for the Eastern District of Virginia, Newport News Division (the "Court"), against Sirius XM alleging claims for purported violations of the Telephone Consumer Protection Act of 1991 (the "TCPA") (*Francis W. Hooker, Jr. v. Sirius XM Radio Inc.*, No. 4:13-cv-3 (E.D.Va.), hereinafter the "*Hooker* Case"); and

WHEREAS, the parties in the *Hooker* Case have conducted extensive fact and expert discovery, completing it on April 18, 2015; and

WHEREAS, on November 10, 2015, the parties in the *Hooker* Case completed all class certification briefing; and

WHEREAS, on November 19, 2015, the parties in the *Hooker* Case completed all briefing on Sirius XM's motion to dismiss; and

WHEREAS, on February 15, 2012, Erik Knutson filed a putative class action complaint in the United States District Court for the Southern District of California against Sirius XM alleging claims for purported violations of the TCPA (*Erik Knutson v. Sirius XM Radio Inc.*, No. 12-cv-0418-AJB-DHB (S.D. Cal.), hereinafter the "*Knutson* Case"); and

WHEREAS, on November 10, 2014, an order compelling the *Knutson* Case to arbitration was overturned on appeal by the Ninth Circuit Court of Appeals; and

WHEREAS, on February 22, 2016 and again on April 12, 2016, the *Knutson* Case was stayed by agreement; and

WHEREAS, on March 10, 2015, Yefim Elikman filed a putative class action complaint in the United States District Court for the Northern District of Illinois against Sirius XM alleging claims for purported violations of the TCPA (*Yefim Elikman v. Sirius XM Radio Inc.*, 11:15-cv-02093 (N.D. Ill.), hereinafter the "*Elikman* Case"); and

WHEREAS, on December 21, 2015, the *Elikman* Case was stayed pending resolution of the class certification motion in the *Hooker* Case; and

WHEREAS, on July 22, 2015, Anthony Parker filed a putative class action complaint in the United States District Court for the Middle District of Florida against Sirius XM alleging claims for purported violations of the TCPA (*Anthony Parker v. Sirius XM Radio Inc.*, 8:15-cv-01710-JSM-EAJ (M.D. Fla.), hereinafter the "*Parker* Case"); and

WHEREAS, on December 22, 2015, the *Parker* Case was stayed pending resolution of the class certification motion in the *Hooker* Case; and

WHEREAS, in February 2016, Sirius XM and a number of other organizations completed briefing related to petitions in the U.S. Court of Appeals for the D.C. Circuit filed by Sirius XM and those other organizations for review of *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, ¶ 10 (2015) (*ACA Int'l v. FCC* (D.C. Cir. No. 15-1211)), the outcome of which Sirius XM contends will adversely affect the Named Plaintiffs' legal position in the *Knutson*, *Hooker*, *Elikman* and *Parker* Cases (collectively, the "Cases"); and

WHEREAS, Sirius XM denies each and every one of the Named Plaintiffs' allegations of unlawful or wrongful conduct and does not concede or admit any liability whatever, and in particular denies that its telemarketing vendors used any automatic telephone dialing systems to call wireless (or cell or mobile) phones; Sirius XM has asserted various other defenses and further denies that any of the challenged conduct caused the Named Plaintiffs or any putative class member any injury or damage; and

WHEREAS, on April 4-5, 2016, the Named Plaintiffs and their counsel, and Sirius XM and its counsel, engaged in mediation before Randall W. Wulff, an experienced and well-regarded mediator chosen by the Parties, and they subsequently entered into a Memorandum of Understanding relating to the settlement of the Named Plaintiffs' claims against Sirius XM; and

WHEREAS, the Named Plaintiffs and their counsel have concluded, after extensive discovery, motion practice, and trial preparation, and after carefully considering the applicable legal principles and all of the circumstances of the Cases, that it would be in the best interests of the Settlement Class (as defined below) to enter into this Agreement in order to avoid the risks

and uncertainties of, and delays associated with the outcome of, the pending class certification motion and motion to dismiss in the *Hooker* Case, and the risks, uncertainties and delays associated with similar or other motions in the *Knutson*, *Elikman* and *Parker* Cases, as well as any trial and any subsequent appeals in any of the Cases, and to assure a benefit to the Settlement Class and, further, Plaintiffs' counsel consider the Settlement (as defined below) to be fair, reasonable, and adequate and in the best interests of the Settlement Class; and

WHEREAS, the Named Plaintiffs and Plaintiffs' counsel, on behalf of the Settlement Class, have agreed to have judgment entered pursuant to this Agreement without trial or adjudication of any issue of fact or law and without this Agreement, including exhibits, constituting any evidence against, or admission by, Sirius XM with respect to liability, fault, or any other issue raised in the Cases; and

WHEREAS, Sirius XM has concluded, despite its belief that it is not liable for the claims asserted in the Cases and that it has good defenses thereto, as well as meritorious positions in its class certification opposition and pending motion to dismiss in the *Hooker* Case, that it is in Sirius XM's best interests to enter into this Agreement to avoid further expense and burden, along with the distraction and uncertainty, of continuing protracted litigation, and thereby to resolve this controversy; and

WHEREAS, this Agreement embodies all of the terms and conditions of the settlement (the "Settlement") between the Named Plaintiffs, both individually and on behalf of the Settlement Class, and Sirius XM, subject to final approval of the Court; and

WHEREAS, the Named Plaintiffs in the *Knutson*, *Elikman* and *Parker* Cases will take steps that will lead to a dismissal with prejudice of their cases contingent upon the Court's approval of the Settlement; and

WHEREAS, the Named Plaintiffs and Sirius XM agree that this Agreement shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability, wrongdoing or injury by Sirius XM or of the truth of any claim or allegation or a waiver of any defenses thereto, including a waiver of Sirius XM's opposition to the motion for class certification in the *Hooker* Case;

NOW THEREFORE, it is agreed by the undersigned, on behalf of the Named Plaintiffs and the Settlement Class, as well as Sirius XM, that the Cases be settled and dismissed with prejudice, and without the award of any costs (except to the extent and on the basis set forth in this Agreement), subject to the approval of the Court, on the following terms and conditions:

1. **Named Plaintiffs; Class Counsel.**

    a. For purposes of this Agreement and the proceedings contemplated herein, the Parties stipulate and agree that the Named Plaintiffs shall be appointed to represent the Settlement Class and the above-defined Class Counsel shall be appointed to represent the Settlement Class. Sirius XM shall not oppose any motion by the above-described Class Counsel to be so appointed.

    b. The certification of a class for settlement purposes is made without prejudice to Sirius XM's right to oppose class certification and/or to contest issues of liability, in the Cases or any other action, should this Agreement be terminated or the Effective Date (as defined below) not occur for any reason, and is not to be construed as an admission that the Settlement Class or any other class, whether alleged in any of the Cases or not, would be appropriately certified in the Cases or in any other action.

2. **Settlement Class**. The Settlement Class (or the "Class") is defined as follows:

    All natural persons residing in the United States (including all territories and other political subdivisions of the United States)

who (a) received programming on a promotional basis from Sirius XM in connection with the purchase or lease of a new or used vehicle that ended no later than April 5, 2016; (b) were the recipients of one or more telephone calls made by or on behalf of Sirius XM to their wireless, cell or mobile phone numbers after February 15, 2008 and before July 5, 2016; and (c) never were or became paying subscribers prior to July 5, 2016. Excluded from the class definition are any employees, officers, or directors of Sirius XM, and any attorneys appearing in this case, and any judge assigned to hear this case as well as their immediate family and staff.

Any person who is included in the Settlement Class definition is a "Class Member."

3. **Settlement Consideration**. In full and final settlement of the claims of the Settlement Class, and in consideration for the release of the Released Claims, as defined in Section 5 below:

a. Sirius XM shall pay $35,000,000 (the "Settlement Fund"), from which cash to members of the Settlement Class, notice, administrative costs, service awards, and attorneys fees, costs, and other expenses shall be paid. Ten (10) days following the Court's preliminary approval order (as contemplated by Section 9 below), Sirius XM shall deposit the Settlement Fund into the Escrow Account to be arranged by Class Counsel. The Settlement Fund shall constitute Sirius XM's exclusive payment obligation under this Settlement Agreement.

b. Sirius XM shall offer (3) three months of free access to Sirius XM's Select service (or any subsequently-named satellite radio service that contains substantially the same programming as the Select service) (the "Free Service") to each Class Member who does not elect a cash distribution from the Settlement Fund and who complies with the requirements of this Agreement to receive the Free Service.

c. Sirius XM shall enter into agreements with outbound telemarketing call center vendors as further provided in Section 4 below, no later than the Effective Date.

4.    **Outbound Telemarketing Practices.**

a.    Sirius XM shall enter into agreements, or amend existing agreements, with its outbound telemarketing vendors to require such vendors, when calling consumers on their wireless, mobile or cell phones, to utilize manual telephone dialing systems that use human intervention to initiate calls and that are separate and distinct from any automatic dialing systems, including any predictive dialing systems, used by those vendors to call landline phones. Such agreements shall further require that the vendors' manual dialing systems use a distinct private branch exchange ("PBX"), or similar telephony mechanism, to connect the manual dialing system to the telephone service provider and not share a PBX or similar telephony mechanism with any automatic telephone dialing system. Manual dialing shall not require individual keying of each number by a vendor's employee. Sirius XM shall monitor and audit compliance by such telemarketing vendors on a periodic basis and shall retain audit records for at least five (5) years.

b.    The agreements shall not require the vendors to use the manual systems described above with respect to calls to consumers on their wireless, mobile or cell phones to the extent the consumers have provided prior written consent to receive such calls as required by the TCPA. Sirius XM also shall not be required to continue to use the services of any one or more of its current telemarketing vendors.

c.    Notwithstanding the above, Sirius XM shall be permitted to amend its agreements with its outside telemarketing vendors in any respect in response to the outcome of the petition to the U.S. Court of Appeals for the D.C. Circuit in *ACA Int'l v. FCC* (D.C. Cir. No. 15-1211) (including that court's interpretation of what constitutes an automatic telephone dialing system) or any further amendment or modification to the TCPA or any Federal Communication

Commission or Federal Trade Commission rules or regulations relating thereto, provided that notice of any such proposed amendments is given to Class Counsel at least thirty (30) days before implementation, so that Class Counsel may approach the Court if there is disagreement between the Parties concerning whether such amendments are authorized. Such notice requirement shall end on January 15, 2021. To the extent that Sirius XM provides any notice pursuant to this Section 4.c, such notice shall be provided to Class Counsel through Michael Caddell, Esq. at the below-listed address.

5. **Release.**

      a.      In addition to the effect of any orders and final judgments entered in accordance with this Agreement, the Named Plaintiffs and any Class Member who has not timely excluded himself or herself as provided below (individually, a "Releasing Party," and collectively, the "Releasing Parties"), whether or not that Class Member objects to the Settlement, shall be bound by this Agreement and shall have recourse only to the benefits, rights and remedies provided hereunder. The Releasing Parties shall release and forever discharge Sirius XM, its past, present or future officers, directors, insurers, general or limited partners, divisions, stockholders, agents, the telemarketing vendors currently known as Afni, Convergys, Dial America, iPaceSetters, Results, Servicom, StraightForward, Sykes and Career Horizons, Inc. dba TeleServices Direct, attorneys, employees, legal representatives, trustees, parents, associates, affiliates, subsidiaries, partners, heirs, executors, administrators, purchasers, predecessors, successors and assigns (collectively, the "Released Parties") from any and all claims, counterclaims, lawsuits, set-offs, costs, losses, rights, demands, charges, complaints, actions, causes of action, obligations, or liabilities of any and every kind, including without limitation (i) those known or unknown or capable or not capable of being known, (ii) those

which are unknown but might be discovered or discoverable, and (iii) those accrued, unaccrued, matured or not matured, all from the beginning of the world until today, that arise out of or in any way relate or pertain to claims, no matter how styled, (a) that were asserted, or attempted to be asserted, or that could have been asserted in the Cases, or (b) alleging use by any or all of the Released Parties or by any vendor retained by the Released Parties of any "automatic telephone dialing system," "automatic dialer," "automated dialer," "predictive dialer," "dialer," and/or any "artificial or prerecorded voice" (to the fullest extent that those terms are used, defined, or interpreted under the TCPA, relevant regulatory or administrative promulgations, and case law) to make telephone calls to a wireless, cell or mobile telephone number in connection with efforts to contact or attempt to contact Class Members, including but not limited to (i) claims arising under or relating to the TCPA or any similar state or federal law, (ii) statutory or common law claims predicated upon any alleged violations of the TCPA or any similar state or federal law, and (iii) statutory or common law claims predicated upon and/or arising from the use by any or all of the Released Parties or by any vendor retained by the Released Parties of any "automatic telephone dialing system," "automatic dialer," "automated dialer," "predictive dialer," "dialer," and/or "artificial or prerecorded voice" (collectively, the "Released Rights").  The Release in this Section shall be included as part of any judgment, so that all Released Rights shall be barred by principles of res judicata, collateral estoppel, and claim and issue preclusion.

        b.        Each Releasing Party hereby covenants and agrees that it shall not hereafter seek to establish liability against any of the Released Parties based, in whole or in part, upon any of the Released Rights.

c.     The Parties intend that there will be entries of final judgment with prejudice in the Cases respecting all claims that are or could have been brought in the Cases consistent with the broadest principles of *res judicata*.

**6.     Procedure for Class Members to Elect Consideration.**

a.     The Settlement Administrator shall establish, administer and maintain a website for Class Members who have not opted out of the Settlement (pursuant to the opt out procedure in Section 11below) and who therefore will be participating in the Settlement, which those Class Members shall visit for purposes of (i) confirming and/or updating their contact information, including an email address, to be used in connection with notifications, or (ii) electing whether to receive, at the option of said participating Class Members, a cash distribution from the Escrow Account.  Such website shall be available for viewing no later than ten (10) days after the issuance of the Court's preliminary approval order, and the Settlement Administrator shall administer and maintain the website at least until two hundred and seventy (270) days after the Effective Date or the date on which the Settlement is terminated or otherwise not approved by the Court, as provided in Section 10.j below.  The Settlement Administrator shall provide Sirius XM with such information as Sirius XM requests in order to ensure that Sirius XM can provide the Free Service to Class Members who wish to receive that consideration, including the information that the Class Members requesting Free Service are required to provide as set forth in Section 6.f below and the list of such Class members as provided in Section 6.j below.  Such website shall hereinafter be referred to as the "Settlement Website."

b.     Class Counsel and Sirius XM shall agree upon the name of the Settlement Website.  Class Counsel shall provide Sirius XM with an adequate opportunity to review and

comment on the text viewable at or available via links from the Settlement Website (other than publicly available documents available at or via such links) prior to the availability for viewing of such Website or the posting of any such text on the Website once the Website is available for viewing.

c.      A participating Class Member may receive only one of the two consideration options, either the cash option described in Section 6.a(ii) or the Free Service described in Section 3.b, and each participating Class Member may receive only one consideration option regardless of the number of his or her titled vehicles or the number of calls he or she may have received on his or her wireless, cell or mobile phones during the period covered by the definition of the Settlement Class.

d.      Within the time period set forth in Section 6.f below, Class Members may elect the cash option by visiting the Settlement Website, which shall provide instructions for such Class Members on how to enter the following information in order to make such election: first and last name, current mailing address (including apartment number, city, state and zip code), and current telephone number. To the extent that Class Members did not receive email or individual mailed notice of the Settlement, the Settlement Website shall also require such Class Members to identify the wireless, cell or mobile number that received one or more calls by Sirius XM's telemarketing vendors between February 15, 2008 and July 5, 2016, and state whether they had ever paid for Sirius XM's radio service prior to July 5, 2016.

e.      No later than ten (10) days following the Effective Date, the Settlement Administrator shall contact Class Members that have not elected the cash option pursuant to Section 6.a(ii) above, said contact to occur either by email or, alternatively, by post mail for any Class Member for whom the Settlement Administrator does not have an email address, and direct

them to the Settlement Website for purposes of registering to receive the Free Service.  Such

Class Members may receive the Free Service for one Sirius XM equipped vehicle owned or

leased by the Class Member or his/her immediate family member.  Class Members may not

receive the Free Service with respect to any vehicle, identified by its vehicle identification

number (the "VIN") and/or the electronic serial number of its Sirius XM radio (the "ESN"), that

has a paid subscription associated with it as determined by Sirius XM.  The Settlement Website

shall provide instructions for Class Members on how to enter the following information for

purposes of receiving the Free Service:  first and last name, VIN and/or ESN, current mailing

address (including apartment number, city, state and zip code), current email address, and current

telephone number.  To the extent that Class Members did not receive email or individual mailed

notice of the Settlement, the Settlement Website shall also require such Class Members to

identify the wireless, cell or mobile number that received one or more calls by Sirius XM's

telemarketing vendors between February 15, 2008 and July 5, 2016, and state whether they had

ever paid for Sirius XM's radio service prior to July 5, 2016.  Sirius XM shall not have any

obligation to provide Free Service to any Class Member who fails to visit the Settlement Website

and provide the required information as directed by the Settlement Administrator.  The Free

Service shall not carry any obligation to continue service with Sirius XM beyond the three (3)

months of free access and shall be provided in addition to, and shall not affect a Class Member's

eligibility for, any future Sirius XM satellite radio service offer.

    f.  Class Members must visit the Settlement Website to elect the cash option

described in 6.a(ii) above no later than twenty four (24) days prior to the Final Approval Hearing

("Cash Claims Close").  Class Members who wish to receive the Free Service must complete all

the required information on the Settlement Website no later than [forty-five (45) days] following the Effective Date ("Service Claims Close").

g.      No later than ten (10) days following the Cash Claims  Close, the Settlement Administrator shall provide to Sirius XM a list of the persons who visited the Website and who elected the cash option described in Section 6.a(ii) above who are not on the Class Member List.  The list will include all of the identifying information provided by the Website visitor.  No later than ten (10) days following receipt of that information regarding those who elected cash, Sirius XM shall provide the Settlement Administrator a list of persons on the Settlement Administrator's list who, according to records maintained by Sirius XM, had  ever paid for Sirius XM's radio service  prior to  July 5, 2016.

h.      No later than five (5) days following the Service Claims Close, the Settlement Administrator shall provide to Sirius XM a list of the persons who have registered to receive the Free Service who are not on the Class Member List.  The list will include all of the identifying information provided by the Website visitor.  No later than ten (10) days following receipt of that information regarding those who registered for the Free Service, Sirius XM shall provide the Settlement Administrator a list of persons who, according to records maintained by Sirius XM, had ever paid for Sirius XM's radio service prior to July 5, 2016.

i.      To the extent that individuals on the lists to be provided by Sirius XM pursuant to Section 6.g-h above are not on the Class Member List, the Settlement Administrator shall require proof acceptable to the Settlement Administrator that such individuals are Class Members and that they have not opted out of the Settlement.  The Settlement Administrator may disallow any claim by any person that cannot be supported in a manner acceptable to the Settlement Administrator, using a review process approved by the Parties.  The Settlement

Administrator's decision shall be final. For persons who visited the Website and who elected the cash option described in Section 6.a(ii), the Settlement Administrator shall complete its review process no later than ten (10) days following receipt of the list to be provided by Sirius XM described in Section 6.g above and shall thereafter notify any such person of the Settlement Administrator's decision.

j.       For persons who visited the Website and who elected to receive the Free Service described in Section 4.b, the Settlement Administrator shall complete its review process no later than ten (10) days following receipt of the list to be provided by Sirius XM described in Section 6.h above and shall thereafter notify any such person of the Settlement Administrator's decision. Within five (5) days thereafter, the Settlement Administrator shall provide to Sirius XM a list of the Class Members who registered at the Settlement Website and provided the required information to receive the Free Service and who according to the Settlement Administrator's information are eligible to receive the Free Service.

k.       The Settlement Administrator shall mail checks to the Class Members electing the cash option as provided in Section 19.a(iii) below.

l.       Sirius XM shall commence the provision of the Free Service to the applicable Class Members beginning no later than one hundred and eighty (180) days after the Effective Date. Sirius XM shall advise the Settlement Administrator no later than seven (7) days after the Settlement Administrator provides to Sirius XM the list of Class Members who, according to the Settlement Administrator's information, are entitled to Free Service whether any of the Class Members so scheduled to receive the Free Service are no longer eligible to do so because the vehicle registered to receive that Free Service has a paid subscription associated with it as of the date set forth in the last sentence in subsection 6.j above. The Settlement

Administrator shall thereafter treat any such Class Members as if they had elected the cash option and shall include them in the distribution of cash as provided in Section 19.a(iii) below. Any Class Member whose registered vehicle has a paid subscription associated with it that commences after the date set forth in the last sentence in subsection 6.j above shall, upon the written request of such Class Member to Sirius XM, receive the three free months as part of the paid subscription for that vehicle.  Sirius XM shall notify by email the remaining Class Members who are scheduled to receive the Free Service (to the extent those Class Members provided all of the required information) no later than seven (7) days before commencing the Free Service to a particular Class Member.

       **7.**       <u>**Escrow Account; Settlement Administrator; Tax Status.**</u>

       a.       <u>Escrow Account and Escrow Agent</u>.  Class Counsel shall provide for the formation of an interest-bearing account at a financial institution to be identified by Class Counsel and approved by Sirius XM to hold and administer the Settlement Fund (the "Escrow Account").  Class Counsel shall identify an agent who has been approved by Sirius XM and who shall be responsible for managing the Escrow Account (said agent, the "Escrow Agent"), subject to approval by the Court.

       b.       <u>Settlement Administrator</u>.  Epiq Systems shall be the Settlement Administrator, subject to approval by the Court.  The Settlement Administrator shall be responsible for administering the Settlement.  The Settlement Administrator shall be paid for its services from the Settlement Fund.

       c.       <u>Settlement Fund Tax Status</u>.

       (i)       The parties agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.  In addition,

the Settlement Administrator shall timely make such elections as necessary or advisable to carry out the provisions of this Subsection, including the "relation back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(ii) For purposes of Treas. Reg. § 1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Settlement Administrator. The Settlement Administrator shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. § 1.468B-2(k)). Such returns (as well as the election described in subsection (i) above) shall be consistent with this subsection (c) and in all events shall reflect that all taxes (including any estimated taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund.

(iii) All (a) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes, or tax detriments that may be imposed on the Released Parties with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes ("Taxes"), and (b) expenses and costs incurred in connection with the operation and implementation of this subsection (iii) (including, without limitation, expenses of tax

attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this section) ("Tax Expenses") shall be paid out of the Settlement Fund; in no event shall the Released Parties have any responsibility for or liability with respect to the Taxes or the Tax Expenses. The Settlement Administrator shall indemnify and hold the Released Parties harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification). Further, Taxes and Tax Expenses shall be timely paid by the Settlement Administrator out of the Settlement Fund without prior order from the Court, and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(1)); the Released Parties are not responsible therefore nor shall they have any liability with respect thereto.

(iv)     The Parties agree to cooperate with the Settlement Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Section 7.

d.     Sirius XM shall not have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, use, or administration of the Escrow Account or any of the funds in the Escrow Account.

e.     Notwithstanding any judgment, principle, or statute, there shall be no interest accrued, owing, or paid by Sirius XM on the Settlement Fund, or on any other benefit available (or potentially available) under this Agreement.

**8. Reasonable Best Efforts to Effectuate This Settlement; Notice to Officials.**

a.     Counsel for the Parties agree to recommend approval of this Agreement by the Court and to undertake commercially reasonable efforts, including undertaking all steps and efforts contemplated by this Agreement and any other steps and efforts that may be necessary or appropriate, by order of the Court or otherwise, to carry out the terms of this Agreement.

b.     Sirius XM shall take all steps necessary to provide notice of the Settlement to appropriate state and federal officials pursuant to 28 U.S.C. § 1715 ("CAFA Notice"), and no Party shall request that an order giving final approval of the Settlement be issued prior to the expiration of the time set forth in 28 U.S.C. § 1715(d).

**9. Motion for Preliminary Approval of the Settlement.**

a.     As soon as practical after the execution of this Agreement, but in all events no later than July 29, 2016 (unless otherwise agreed to by the Parties and the Court), Plaintiffs' counsel shall file with the Court a motion seeking preliminary approval of the Settlement reflected in this Agreement.  The proposed preliminary approval order shall be substantially in the form attached hereto as Exhibit A.  Sirius XM agrees to support the entry of a preliminary approval order provided it is substantially in the form attached hereto as Exhibit A, but said agreement shall not be an admission by Sirius XM that a class and/or relief would have been appropriate in the Cases or would be appropriate in any other action.

b.     Such preliminary approval order shall, *inter alia*:

(i)     Preliminarily approve the Settlement as fair, reasonable and adequate within the meaning of Fed. R. Civ. P. 23;

(ii) Provisionally certify the Settlement Class for settlement purposes only;

(iii) Approve the proposed individual and publication notices substantially in the form attached hereto as Exhibits B and C, respectively;

(iv) Approve the timing of the plan for the provision of individual and publication notices, including the means of publication notice;

(v) Set deadlines consistent with this Agreement for the emailing or post mailing of individual notices, for the provision of publication notice, for the filing of objections, statements or other submissions by any person concerning the Settlement, for the submission for requests for exclusion from the Settlement Class, and for the filing of papers in connection with the hearing to consider final approval of the Settlement;

(vi) Conditionally designate the Named Plaintiffs as the representatives of the Settlement Class and Class Counsel as counsel to the Settlement Class;

(vii) Approve the Settlement Administrator and the Escrow Agent; and

(viii) Set a date for a hearing on the final approval of the Settlement and on Class Counsel's application for an award of attorneys' fees, costs and other expenses.

c. No later than five (5) business days prior to submission of such motion Plaintiffs' Counsel will provide Sirius XM with an advance draft copy of the motion for preliminary approval for review and comment. The text of all forms of individual and publication notice shall be agreed upon by Named Plaintiffs and Sirius XM.

d. The proposed method for providing notice (individual and publication) shall be agreed upon by the Named Plaintiffs and Sirius XM and presented to the Court for

approval.  The Parties agree to recommend to the Court the use of email notice as the primary

method of notice to the extent practicable.

        e.        In the event that the Court preliminarily approves the Settlement, Class

Counsel shall direct the Settlement Administrator to provide notice of the Settlement to the Class

as directed by the Court.  All costs associated with the giving of notice of the Settlement to the

Class, and any other costs associated with administration of the Settlement notice, shall be

disbursed to the Settlement Administrator by the Escrow Agent from the Escrow Account, all to

occur at the direction of Class Counsel consistent with Class Counsel's agreement with Sirius

XM.

        **10.**      **Notice to Class Members.**

        a.        The Parties shall work together to prepare a list of Class Members to

receive class notice (the "Class Member List"), including to the extent available each Class

Member's email and mailing address.  Upon or as soon as practicable following the entry of the

preliminary approval order, but in no event later than ten (10) days prior to commencing notice

to the Class, the Parties shall provide the Class Member List to the Settlement Administrator.

The Settlement Administrator shall perform any further investigations deemed appropriate by the

Settlement Administrator, including using the National Change of Address ("NCOA") database

maintained by the United States Postal Service, in an attempt to identify current mailing

addresses for individuals who are included in the Class Member List.

        b.        Within thirty (30) days following entry of the preliminary approval order,

or at such other time or as may be ordered by the Court, the Settlement Administrator shall

commence the mailing of the agreed-upon individual notice to Class Members, either by email

(to the extent that Class Member email addresses are available) or post mail (to the extent that Class Member email notices are not available).

        c.      If any notice that has been emailed is returned as undeliverable, the Settlement Administrator shall attempt two other emailings and then attempt post mail service, to the extent a current mailing address is available. Neither the Parties nor the Settlement Administrator shall have any other obligation to attempt any further mailings to Class Members to whom email notice was sent.

        d.      If any notice that has been post mailed is returned by the Postal Service as undeliverable, the Settlement Administrator shall re-mail the notice to the forwarding address, if any, provided by the Postal Service on the face of the returned mail. If no forwarding address is provided by the Postal Service, the Settlement Administrator shall attempt to locate the Class Member's current postal address using publicly available information and, if a current address is found, re-mail the notice to that address. Neither the Parties nor the Settlement Administrator shall have any other obligation to re-mail individual notices that have been post mailed.

        e.      Within forty-five (45) days following entry of the preliminary approval order, or at such other time as may be ordered by the Court, the Settlement Administrator shall cause to be published in various publications and media outlets the agreed-upon publication notice. The Settlement Administrator shall have discretion to publicize the Settlement using internet and social media advertising as appropriate.

        f.      The Settlement Administrator shall have discretion to format the individual and publication notices in a reasonable manner to minimize mailing or administrative costs. Before any notice is commenced, Class Counsel and Sirius XM's counsel shall first be provided with a proof copy of such notices (including what the items will look like in their final

form), and shall have the right to inspect the same for compliance with this Agreement and with the Court's orders.

g.        After entry of the preliminary approval order and prior to the date of the mailing (by email or post mail) of the individual notices, the Settlement Administrator shall cause the operative Complaints in the Cases, the notices and this Agreement to be made available on the Settlement Website.

h.        No later than twenty (20) days before the Final Approval Hearing, the Settlement Administrator will cause proof of the establishment and maintenance of the Settlement Website and the telephone assistance program described in Section 12 below to be filed with the Court.

i.        Within thirty-six (36) days after commencement of notice to Class Members, the Settlement Administrator shall file with the Court proof of the emailing or post mailing of the individual notices.

j.        The Settlement Administrator shall terminate the Settlement Website two hundred and seventy  (270) days after either (1) the Effective Date, or (2) the date on which the Settlement is terminated or otherwise not approved by the Court.  The Settlement Administrator shall then transfer ownership of the URL of the Settlement Website to Sirius XM.

**11.**    **Right and Effect of Members of the Class to Opt-Out.**

a.        Each member of the Settlement Class shall have the right to opt-out and not participate in the Settlement, as provided for in the preliminary approval order.

b.        Class notices shall inform each Class Member of his or her right to request exclusion from the Settlement Class and not to be bound by this Agreement, if, within such time as is ordered by the Court ("Opt-Out Period"), the Class Member personally completes

and mails a request for exclusion ("Opt-Out") to the Settlement Administrator at the address set forth in the notice that (i) states his or her full name and address; (ii) contains the cellular telephone number as to which he or she seeks exclusion; (iii) contains the Class Member's personal and original signature or the original signature of a person previously authorized by law, such as a trustee, guardian or person acting under a power of attorney, to act on behalf of the Class Member with respect to a claim or right such as those in the Cases; and (iv) states in plain English and unequivocally the Class Member's intent to be excluded from the Settlement Class, to be excluded from the Settlement, not to participate in the Settlement, and to waive all rights to the benefits of the Settlement. An Opt-Out that complies with these conditions is a "Successful Opt-Out." The Settlement Administrator shall promptly inform Sirius XM's counsel and Class Counsel in writing of any Successful Opt-Outs.

c.     Members of the Settlement Class who opt-out in a timely and valid manner shall receive no benefit or compensation under this Agreement and shall have no right to object to the proposed Settlement or participate at the hearing at which the Court shall be asked to determine whether to grant final approval to this Agreement and the Settlement, consider any timely objections to this Agreement, and authorize the entry of final judgment and an order dismissing the *Hooker* Case with prejudice (the "Final Approval Hearing").

d.     A request for exclusion that does not comply with all of the foregoing, that is not timely submitted or postmarked or that is sent to an address other than that set forth in the notice, shall be invalid and the person serving such request shall remain a member of the Settlement Class and be bound by this Agreement and the Release contained herein. If a Class Member submits both a request for exclusion and a claim to the Settlement, the request for exclusion shall control unless otherwise ordered by the Court.

e.  The Opt-Out period shall expire no less than twenty-four (24) days before the date of the Final Approval Hearing.  Opt-Outs postmarked after the expiration of the Opt-Out Period shall not be treated as Successful Opt-Outs.

f.  No person shall purport to exercise any exclusion rights of any other person, or purport (i) to opt-out Class Members as a group, aggregate, or class involving more than one Class Member; or (ii) to opt-out more than one Class Member on a single paper, or as an agent or representative.  Any such purported opt-outs shall be void, and the Class Member(s) that is or are the subject of such purported opt-out shall be treated as a Class Member.

g.  No later than fourteen (14) days prior to the date of the Final Approval Hearing, the Settlement Administrator shall provide to the Parties a comprehensive list of Successful Opt-Outs.  The Settlement Administrator's decision regarding whether a purported opt out is a Successful Opt Out shall be final.

**12.  Inquiries from Settlement Class Members.**  It shall be the responsibility of the Settlement Administrator to respond to all inquiries from members of the Settlement Class with respect to this Agreement and the Settlement, except to the extent that inquiries are directed to Class Counsel.  The Settlement Administrator will establish a toll-free telephone number, which will be staffed by the Settlement Administrator, to assist in answering questions from Class Members.  The toll free number will provide access to live-support, a voice response unit ("VRU"), or a combination of live-support and VRU.  It shall also offer a Spanish language alternative number and VRU.  Any scripts, FAQs or other materials for such purpose shall be

made available to Sirius XM's counsel for review and comment prior to their use. Class Counsel and Sirius XM shall confer and assist the Settlement Administrator as it reasonably requests.

13. **Objections to the Settlement.**

a. Any Class Member who is not a Successful Opt-Out and who wishes to object to the proposed Settlement must mail or hand-deliver written objections to the Settlement ("Objections") to Class Counsel and Sirius XM's counsel, at the addresses set forth in the individual or publication notices, and mail or hand-deliver the Objections simultaneously to the Court. Objections may be filed by counsel for a Class Member.

b. Each Objection must (i) set forth the Class Member's full name, current address, email address and telephone number, as well as the name, address, email address and telephone number of all attorneys representing the objector; (ii) identify the wireless, mobile or cell number of the Class Member that brings him or her within the scope of the Settlement Class; (iii) contain the Class Member's original signature or the signature of counsel for the Class Member; (iv) state that the Class Member objects to the Settlement, in whole or in part; (v) set forth a statement of the legal and factual basis for the Objection; (vi) include a list of all cases, by name and case number, in which the objector and/or their counsel has filed or in any way participated in—financially or otherwise—objections to a class action settlement in the previous five (5) years; and (vii) provide copies of any documents that the Class Member wishes to submit in support of his/her position.

c. The Parties shall recommend that all Objections should be mailed or hand-delivered to the Court and mailed or hand-delivered to Class Counsel and Sirius XM's counsel so that the Objection and supporting materials are received by the Court and the Parties no less than twenty-four (24) days prior to the Final Approval Hearing, except that the Parties

will ask the Court to require any objections to Attorneys' Fees be supplemented by delivery to Class Counsel and Sirius XM's counsel no later than seven (7) days after Class Counsel files a motion or pleading requesting Attorneys' Fees. An objector is not required to attend the Final Approval Hearing.

d.      Any Class Member who does not submit a timely Objection in complete accordance with this Agreement and otherwise as ordered by the Court shall not be treated as having filed a valid Objection to the Settlement and shall lack standing and forever be barred from raising any objection to the Settlement and from seeking any adjudication or review of the Settlement by appeal or otherwise.

**14.    <u>Motion for Final Approval and Entry of Final Judgment</u>.**

a.      If the Court preliminarily approves the Settlement, Plaintiffs shall submit a motion for final approval of the Settlement, including a memorandum in support of the motion, and shall seek entry of an order and final judgment in the *Hooker* Case, substantially in the form attached hereto as Exhibit D, within at least ten (10) days prior to the Final Approval Hearing. No later than five (5) business days prior to submission of such motion Plaintiffs' Counsel will provide Sirius XM with an advance draft copy of the motion for final approval for review and comment.

b.      Such final approval order shall, *inter alia*:

(i)      Certify the Settlement Class;

(ii)      Find the Settlement fair, reasonable and adequate within the meaning of Rule 23 of the Federal Rules of Civil Procedure and grant final approval of the Settlement;

(iii)      Direct consummation of the Settlement pursuant to its terms;

(iv) Authorize entry of the order and final judgment in the *Hooker* Case substantially in the form attached hereto as Exhibit D;

(v) Direct that the action be dismissed with prejudice and, except as provided for herein, without costs; and

(vi) Reserve in the Court exclusive jurisdiction over the Settlement and this Agreement, including the administration and consummation of the Settlement.

c. The Parties shall recommend that the Final Approval Hearing be scheduled for a date at least seventy (70) days after the date of commencement of notice to Class Members, but in no event earlier than ninety (90) days after CAFA Notice is served.

d. The Parties shall file their responses to Objections, if any, to the Settlement no later than ten (10) days prior to the Final Approval Hearing.

e. Any Class Member who wishes to appear at the Final Approval Hearing, whether *pro se* or through counsel, must, within the time set by the Court, mail or hand-deliver to the Court a notice of appearance in the *Hooker* Case, provide copies of any exhibits or other documents that the Class Member intends to present or use as evidence at the hearing, provide a list of all witnesses that the Class Member intends to call to give evidence at the hearing, take all other actions or make any additional submissions as may be ordered by the Court, and mail or hand-deliver any notice and any such exhibits, lists or other documents to Class Counsel and Sirius XM's counsel as provided in the individual or publication notices such that receipt of same by Class Counsel and Sirius XM's counsel has occurred no later than fourteen (14) days prior to the Final Approval Hearing. Any Class Member who wishes to appear at the Final Approval Hearing must provide dates at least seven (7) days in advance of the Final Approval Hearing when the Class Member will be available for a deposition. Failure by an objector to

make himself or herself available for a deposition may result in the Court striking the objection. The Court may tax the costs of any such discovery to the objector or the objector's counsel if the Court determines that the objection is frivolous or made for an improper purpose. Unless so permitted by the Federal Rules of Civil Procedure or the Court's local rules, no Class Member shall be permitted to raise matters at the Final Approval Hearing that the Class Member could have raised in an Objection, but failed to do. Any Class Member who fails to comply with this Agreement, the individual or publication notices, and any other order by the Court shall be barred from appearing at the Final Approval Hearing.

15. **Finality of Settlement.** The Settlement shall become final upon the occurrence of all of the following:

a. The Settlement is approved by the Court as required by Rule 23(e) of the Federal Rules of Civil Procedure;

b. An order and final judgment of dismissal with prejudice is entered in the *Hooker* Case; and

c. The time for appeal from the entry of the order and final judgment in the *Hooker* Case has expired or, if appealed or the subject of a further petition, either such appeal or petition shall have been dismissed prior to resolution by, or the order and final judgment shall have been affirmed in its entirety by, the Court of last resort to which such appeal has been taken or petition submitted and such affirmance has become no longer subject to further appeal or review; <u>provided</u> that a modification or reversal on appeal or review of any amount of the fees, costs and other expenses of Class Counsel awarded by the Court shall not prevent the Settlement from becoming final if all other aspects of the final judgment have been affirmed; and <u>provided further</u> that neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All

Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining when the judgment becomes final.

        d.     The date on which the Settlement shall become final as provided in this Section 15 is the "Effective Date."

        **16.**     **Dismissal of the *Knutson*, *Elikman* and *Parker* Cases.**  If an order and final judgment of dismissal is entered in the *Hooker* Case following the Final Approval Hearing, the parties in the *Knutson*, *Elikman* and *Parker* Cases shall submit stipulated orders and final judgments of dismissal with prejudice to the courts in those cases substantially in the form attached hereto as Exhibit E, and shall file such stipulations within five (5) days following the deadline for filing a notice of appeal in the *Hooker* case.  However, if an appeal of the order and final judgment of dismissal in the *Hooker* Case is filed, the parties in the *Knutson*, *Elikman*, and *Parker* Cases shall submit stipulated motions for stays of those cases pending determination of the appeal, which shall be filed within five (5) days following the deadline for filing a notice of appeal in the *Hooker* Case.  If the courts in any of those cases do not permit the parties to submit stipulated motions to stay, the parties shall file stipulated orders and final judgments of dismissal with prejudice in the form attached hereto as Exhibit E.  If an order and final judgment of dismissal that has been entered in the *Hooker* case has thereafter been affirmed and is no longer subject to further appeal or review as provided in Section 15.c above, and to the extent that stipulated motions to stay have previously been entered in those cases, the parties in the *Knutson*, *Elikman* and *Parker* cases shall submit stipulated orders and final judgments of dismissal with prejudice in those cases substantially in the form attached hereto as Exhibit E.

17.     **Plaintiffs' Attorneys' Fees and Expenses; Service Awards.**

a.      With their motion for final approval of the Settlement, Class Counsel shall make an application to the Court for an award of attorneys' fees, costs and other expenses for their representation of the Named Plaintiffs and the Settlement Class, to be paid from and up to thirty percent (30%) of the total value of the Settlement, after deduction of any class administration and notice costs and expenses. Sirius XM shall not oppose or object to such an application by Class Counsel. Sirius XM's agreement not to oppose the motion for attorneys fees, costs and other expenses shall not be construed as an admission, agreement or concession by Sirius XM that the attorneys' fees, costs and other expenses applied for by Class Counsel are reasonable and/or appropriate. The award shall include all fees, costs, and other expenses for all attorneys (and their employees, consultants, experts and other agents) who performed work in connection with the Cases. Regardless of the number of attorneys sharing in the Court's award of attorneys' fees, costs and other expenses, Sirius XM shall not be required to increase the amount of the Settlement Fund. Class Counsel shall allocate the attorneys' fees among all law firms representing the Named Plaintiffs in accordance with their existing agreements.

b.      This agreement with respect to attorneys' fees, costs and other expenses was not negotiated until after the terms of the Settlement, including after the amount of the Settlement Fund, the number of free months and the outbound telemarketing practices, had been negotiated and agreed upon during the mediation.

c.      In the event the Court's award of attorneys' fees, costs and other expenses is less than the Settlement Fund, the difference shall remain as part of the Settlement Fund. In the event the Court's award of attorneys' fees, costs and other expenses finally approved by the Court is more than the amount in the Settlement Fund after costs of notice and

administration have been paid, no other relief may be sought from the Court, so as to increase the amount of the Settlement Fund or otherwise make up some or all of the shortfall.

d.      Named Plaintiffs (i.e., Messrs. Hooker, Knutson, Elikman and Parker) shall make an application to the Court for the Court's approval of a service award, consisting of a one-time payment of up to $10,000 for Mr. Hooker and $2,500 each for Messrs. Knutson, Elikman, and Parker as compensation for time and resources each has put into representing the Settlement Class, regardless of whether each of them supports the Settlement.  Said application shall be submitted with the motion for final approval of the Settlement.  Sirius XM shall not oppose a service award of up to $10,000 for Mr. Hooker and $2,500 each for Messrs. Knutson, Elikman, and Parker.  Sirius XM's agreement not to oppose the application shall not be construed as an admission, agreement, or concession by Sirius XM that a service award is reasonable and/or appropriate.  The Parties' negotiation of, and agreement to, the foregoing service awards did not occur until after the conclusion of the mediation.  These service awards shall constitute the sole consideration for such individuals being the Named Plaintiffs, but will be in addition to their rights to obtain benefits of the Settlement as any other Class Member.

**18.      <u>Disapproval, Cancellation, Termination or Nullification of Settlement</u>.**

a.      If the Court denies preliminary approval of this Agreement, or declines to finally approve the Settlement, or if the Court does not enter the final judgment in the *Hooker* Case in accordance with the terms of this Settlement Agreement, or if the Court enters the final judgment and appellate or other discretionary review is sought, and on such review, such final judgment is reversed, vacated or materially modified, or if the Settlement for any other reason does not become final in accordance with the terms of this Agreement, then the Settlement shall be terminated upon the election of all of the Plaintiffs or Sirius XM, each acting through their

undersigned counsel; provided that any reversal, vacatur or modification on appeal or other form of review of any amount of Class Counsel's fees, costs and other expenses, or service awards to Named Plaintiffs awarded by the Court, or any determination by the Court to award less than the amount requested in attorneys' fees, costs and other expenses to Class Counsel, or service awards to the Named Plaintiffs, shall not give rise to any right of termination or otherwise serve as a basis for termination of the Settlement or this Agreement.

b. Sirius XM may terminate this Agreement no later than seven (7) days prior to the Final Approval Hearing, at its option, if more than 10,000 of the members of the Settlement Class who receive individual notice become Successful Opt-Outs.

c. If the Named Plaintiffs or Sirius XM elects to terminate this Agreement under this Section, that Party or those Parties must provide written notice to the other Party's or Parties' counsel, by hand delivery or mail, within ten (10) days of the occurrence of the condition permitting termination.

d. Nothing shall prevent the Named Plaintiffs and/or Sirius XM from appealing any denial by the *Hooker* Court of final approval of the Settlement, and the Parties agree that, in the event of such an appeal, the Parties will propose to the Court that the *Hooker* Case be stayed pending the resolution of any such appeal. The Parties further agree, in the event of such an appeal, that they shall continue to support and advocate for approval of the Settlement on appeal or in post-appeal proceedings, if there is such an appeal, to the same extent as they are bound herein to do so while the *Hooker* Case is before the Court.  In the event such an appeal results, by order of the appellate court or by an order after remand or a combination thereof, in the entry of an order(s) whereby the Settlement is approved in a manner substantially consistent with the substantive terms of this Agreement, and resulting in the dismissing all claims in the

Cases with prejudice, and otherwise meeting the substantive criteria of this Agreement for approval of the Settlement, such order shall be treated as an order and final judgment of dismissal for purposes of this Agreement. .

    e.  If this Agreement is terminated or disapproved, or if the Effective Date should not occur for any reason, then: (i) this Agreement and all orders entered in connection therewith shall be rendered null and void; (ii) this Agreement, and all negotiations, proceedings, and orders relating hereto, shall be of no force or effect and shall not be used or referred to for any purpose whatsoever, and shall be without prejudice to the rights of the Parties; and (iii) all Parties shall be deemed to have reverted to their respective status in the Cases as of the date and time immediately preceding the execution of this Agreement and, except as otherwise expressly provided, the Parties shall stand in the same position and shall proceed in all respects as if this Agreement and any related orders had never been executed, entered into, or filed, except that the Parties shall not seek to recover from one another any costs and attorneys' fees incurred in connection with the Settlement and this Agreement.

    f.  If the Settlement is terminated pursuant to the terms of this Agreement, or this Agreement does not become final, then Class Counsel shall direct the Settlement Administrator to, and the Settlement Administrator shall, refund immediately to the Escrow Agent for return to the Escrow Account any funds provided to the Settlement Administrator for notice and other administrative costs and not yet incurred by the Settlement Administrator as of the earlier of (i) the date of the termination of this Agreement, or (ii) notification to the Settlement Administrator by Class Counsel that the Settlement and this Agreement will not become final.  The Settlement Administrator shall thereafter return the balance in the Settlement

Fund (including interest earned in the Escrow Account) to Sirius XM within ten (10) days after any termination of the Settlement.

g.       In the event that the Settlement is terminated as provided in this Section, this Agreement shall be of no force or effect, and any release contained herein shall be of no force or effect.

**19.     <u>Duties of the Settlement Administrator Upon Effective Date</u>.**

a.       The Escrow Agent shall do the following upon the Effective Date and, if applicable, resolution of any appeal or review directed at only the fees, costs, and other expenses of Class Counsel (or any portion thereof):

(i)       Disburse the amount of any award of attorneys' fees, costs and other expenses from the Escrow Account within ninety (90) days of the Effective Date and resolution of any appeal or review directed at only the fees, costs, and other expenses of Class Counsel (or any portion thereof).

(ii)       Disburse any service awards, as provided in Section 17.d above, and subject to Court approval, within the later of (1) ten (10) days after the Effective Date, or (2) fourteen (14) days after receipt by the Escrow Agent of each of the Named Plaintiff's completed W-9 form.

(iii)       Within ninety (90) days after the Effective Date and resolution of any appeal or review directed at only the fees, costs, and other expenses of Class Counsel (or any portion thereof), distribute to the members of the Settlement Class who have so elected pursuant to the process set forth in Section 6 above, an equal share of the remaining Escrow Account (after the payments detailed in subsections (i) and (ii) above), the "Initial Cash Distribution." The Escrow Agent shall make one attempt to deliver any

payments returned as undeliverable within forty-five (45) days of the initial mailing. Any checks not cashed within seventy-five (75) days of the initial mailing (or any checks that were undeliverable) shall revert to the Escrow Account, and all checks shall bear a legend to that effect. Provided that the costs of so doing would not result in the distribution to Class Members of a *de minimis* amount, the Escrow Agent shall then make a Second Cash Distribution in equal shares of the then-remaining amount in the Escrow Account to all Class Members who cashed their check from the Initial Cash Distribution. In no event shall any cash-electing member of the Class receive a total cash payment as a result of the Initial Cash Distribution and the Second Cash Distribution in excess of $1,500. Any checks from the Second Cash Distribution not cashed within sixty (60) days of the mailing of the Second Cash Distribution (or any checks that were undeliverable) shall revert to the Escrow Account, and all checks shall bear a legend to that effect. The Escrow Agent shall provide accountings to the Parties of the Escrow Account ninety (90) days after the Initial Cash Distribution and seventy (70) days after the Second Cash Distribution.

      b.     All checks to electing members of the Settlement Class shall be paid solely from the Settlement Fund and shall be mailed to the latest address available to the Settlement Administrator, as provided by the Parties, as determined by the Settlement Administrator through the Notice process described in Section 10, or as provided by the Class Member on the Settlement Website or otherwise.

      c.     Within three hundred sixty five (365) days after the Effective Date and, if applicable, resolution of any appeal or review directed at only the fees, costs, and other expenses of Class Counsel (or any portion thereof), if money remains in the Settlement Fund after the

distribution of all court-approved amounts as well as payments in the Initial and Second Cash Distributions to all Class Members who have elected the cash option, those funds will be distributed to one or more nonprofit organizations mutually agreed upon by the Parties, and approved by the Court, as a *cy pres* award for a purpose(s) consistent with the objectives of the litigation and interests of Class Members; <u>provided</u> that such grants shall stipulate that the grant amounts may not be used in furtherance of litigation.

d.      The Settlement Administrator's and the Parties' respective obligations with respect to the distribution of the checks, the Settlement administration costs, and any award of attorneys fees, costs and other expenses shall be performed reasonably and in good faith. So long as they do, the Parties and the Settlement Administrator shall not be liable for erroneous, improper or inaccurate distribution.

**20.**      <u>**Preservation of Rights.**</u>  The Parties agree that this Agreement, whether or not it shall become final pursuant to its terms, and any and all negotiations, documents and discussions associated with it, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law, of any liability, wrongdoing or injury by Sirius XM, or of the truth of any of the claims or allegations contained in any of the complaints in the Cases or any other pleading or document in the Cases, and evidence thereof shall not be discoverable, admissible or otherwise used directly or indirectly, in any way by the Named Plaintiffs or Sirius XM, whether in the Cases or in any other action. The Parties expressly reserve all of their rights and defenses if the Settlement does not become final.

**21.**      <u>**Binding Effect.**</u>  This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties, including the members of the Class who do not timely request to be excluded, and of the Released Parties. Without limiting the generality of the

foregoing, each and every covenant and agreement herein by the Named Plaintiffs and Class Counsel shall be binding upon all members of the Settlement Class.

22. **Waiver of Unknown Claims and Assumption of Risk.**

a. The Named Plaintiffs and each of the Releasing Parties acknowledges that he or she may hereafter discover facts other than or different from those that he or she knows or believes to be true with respect to the subject matter of the claims released pursuant to the terms of Section 5, but each of those persons expressly agrees that, upon entry of the final approval order and the judgments in the Cases contemplated by this Agreement, he or she shall have waived and fully, finally, and forever settled and released any known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent claim to the fullest extent released pursuant to Section 5, whether or not concealed or hidden, and without regard to any subsequent discovery or any existence of any other or different facts.

b. Each of the Releasing Parties hereby expressly agrees that, upon the Effective Date, each of them shall waive and release any and all provisions, rights, and benefits conferred either (i) by Section 1542 of the California Civil Code or (ii) by any law of any state or territory of the United States, or principle of common law which is similar, comparable, or equivalent to section 1542 of the California Civil Code, with respect to the claims released pursuant to Section 5. Section 1542 of the California Civil Code reads:

> Section 1542. General Release; extent. A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

c. On the Effective Date, all members of the Settlement Class who are not a Successful Opt-Out shall be deemed to have, with respect to the subject matter of the Cases, expressly waived the benefits of any statutory provisions or common law rules that provide, in

sum or substance, that a general release does not extend to claims which the person does not know or suspect to exist in the person's favor at the time of executing the release, which if known by the person would have materially affected its settlement with any other party.

d. In entering into this Agreement, each of the Parties assumes the risk of any unknown or mistake of fact or law. If any Party should later discover any new fact that might have been material to its decision to enter into this Agreement, or if any Party discovers that any fact upon which the Party relied in entering this Agreement is not true, or that the Party's understanding of the facts or law was incorrect, the Party shall not be entitled to modify, reform, or set aside this Agreement, in whole or in part, by reason thereof.

### 23. Confidentiality and Public Statements.

a. There shall be no comments made to the press or any other disclosure by or through the Parties or their attorneys with intent that such disclosure will directly or indirectly result in notifying the media or advertising publicly about the Settlement or any of its provisions unless and until the Court has granted preliminary approval of the proposed Settlement. If preliminary approval is denied, the Parties and their attorneys shall refrain from making any comments regarding the proposed Settlement for purposes of publication. If preliminary approval is granted, the Parties and their attorneys shall refrain from initiating comments about the Settlement to any members of the press or any other person for the purposes of providing public comment regarding the Settlement except as required by the Court, pursuant to the notice program approved by the Court, or pursuant to the terms of the Settlement. Notwithstanding the foregoing, Class Counsel may place factual notices on their websites informing visitors to their websites of the case status, with links to the Settlement Website. However, if any Party or attorney is contacted by a member of the press or other person seeking a public comment on the

Settlement, the Party or attorney may provide the inquiring party with the details of the Settlement as published pursuant to the preliminary approval order, without additional editorial statements, expression of personal opinion or estimates of Settlement valuation. No Party shall disparage any other in any fashion. In no event shall the Named Plaintiffs, Class Counsel, or their agents state or imply to any person that the Settlement represents an acknowledgement by Sirius XM or its outbound telemarketing vendors of any wrongdoing or liability by any of them. Nothing in this Section shall be interpreted to limit representations that the Parties or their attorneys may make to the Court to assist it in its evaluation of the proposed Settlement; nor shall it prohibit Class Counsel from communicating directly with a Class Member or Class Members once appointed as Class Counsel. If a Party is required by a valid, enforceable subpoena or government information request to disclose the Settlement or information about the Settlement, such Party shall provide reasonable prior written notice (to the extent permitted by applicable law) to the other Parties to allow the other Parties to seek to prevent such disclosure. Sirius XM may also provide necessary and accurate information about the Settlement to its officers, directors, stockholders and other persons or entities as required by securities laws or other applicable laws or regulations. The Parties agree that all information obtained from or provided by one Party to any other Party in connection with this Agreement and its negotiation shall be kept confidential and that such information shall be used only for the purposes allowed by the protective order in the *Hooker* Case and for no other purpose.

b.      The Parties agree that nothing in this Agreement shall be construed to prohibit communications between Sirius XM or any other Released Parties, on the one hand, and Class Members, on the other hand, in the regular course of Sirius XM's business.

24. **Integrated Agreement.**  This Agreement (including all exhibits hereto and other documents explicitly referenced herein, which form an integral part hereof) contains the entire, complete, and integrated statement of each and every term and provision of the Settlement. There are no promises, representations, warranties, covenants or undertakings governing the subject matter of this Agreement other than those expressly set forth in this Agreement.  This Agreement supersedes all prior agreements and understandings among the Parties with respect to the settlement of the Cases.  This Agreement shall not be modified in any respect except by a writing executed by the undersigned in the representative capacities specified, or others who are authorized to act in such representative capacities.

25. **Exhibits.**  The exhibits to this Agreement are an integral and material part of this Agreement and are hereby incorporated and made a part of this Agreement.

26. **Headings.**  The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

27. **No Party is the Drafter.**  Counsel to all Parties have materially participated in the drafting of this Agreement.  None of the Parties shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

28. **Choice of Law.**  All terms of this Agreement shall be governed by and interpreted according to the substantive laws of the State of New York without regard to its choice of law or conflict of laws principles that would require the application of the laws of another jurisdiction.

29. **Consent to Jurisdiction.**

a. Sirius XM, the Named Plaintiffs and each Class Member hereby irrevocably submit to the exclusive jurisdiction of the Court for any suit, action, proceeding or dispute arising out of or relating to this Agreement or the applicability of this Agreement, including, without limitation any suit, action, proceeding or dispute relating to the release provisions herein, except that this Section shall not prohibit (i) the assertion in the forum in which a claim is brought that the release herein is a defense, in whole or in part, to such claim, or (ii) in the event that such a defense is asserted in that forum, the determination of its merits in that forum.

b. To the extent any dispute arises between the Parties regarding implementation of this Agreement, the Parties agree in the first instance to mediate the dispute telephonically before Randall Wulff, before bringing the dispute (if unresolved after mediation) to the Court. The Court shall retain jurisdiction, after entry of the final approval order and the order and final judgment of dismissal in the *Hooker* Case, with respect to enforcement of the terms of the Settlement and this Agreement, and all Parties and Settlement Class Members submit to the exclusive jurisdiction of the Court with respect to the enforcement of this Agreement and the Settlement and any dispute with respect thereto.

**30.** **Enforcement of Settlement**. Notwithstanding any other provision of this Agreement, this Agreement and the releases contained herein may be pleaded as a full and complete defense to any action, suit or other proceeding that has been or may be instituted, prosecuted or attempted with respect to any Released Claims and may be filed, offered and received into evidence and otherwise used for such defense.

**31.** **Waiver of Compliance.** Any failure of any Party to comply with any obligation, covenant, agreement, or condition herein may be expressly waived in writing, to the extent

permitted under applicable law, by the Party or Parties entitled to the benefit of such obligation, covenant, agreement, or condition. A waiver or failure to insist upon compliance with any representation, warranty, obligation, covenant, agreement, or condition shall not operate as a waiver of, or estoppel with respect to, any subsequent or other failure.

32. **No Collateral Attack.** This Agreement shall not be subject to collateral attack by any Class Members or their representatives any time on or after the Effective Date. Such prohibited collateral attacks shall include, but shall not be limited to, claims that a Class Member's claim should have been heard or decided by another court or in another suit, that a Class Member's claim was improperly denied, that the payment to a Class Member was improperly calculated, and/or that a Class Member failed to receive timely notice of the Settlement.

33. **Independent Judgment and Advice of Counsel.** Each Party warrants that he or she is acting upon his or her independent judgment and upon the advice of his or her counsel and not in reliance upon any warranty or representation, express or implied, of any nature or kind by any other party, other than the warranties and representations expressly made in this Agreement. The Parties acknowledge, agree, and specifically warrant to each other that they have read this Agreement, have received legal advice with respect to the advisability of entering into this Agreement and the Settlement, and fully understand its legal effect.

34. **Authorization To Act On Behalf Of Plaintiffs And Class.** The undersigned Plaintiffs' counsel represent that they have been and are fully authorized to conduct settlement negotiations with Sirius XM's counsel on behalf of the Named Plaintiffs and the Class and to enter into, and execute, this Agreement on behalf of the Named Plaintiffs and the Class, subject to Court approval pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

35.     **Limitations on Use.**  This Agreement shall not be used, offered or received into evidence in the Cases, or any other action, for any purpose other than to enforce, to protect, to construe or to finalize the terms of this Agreement and/or to obtain the preliminary and final approval by the Court of the terms of this Agreement, without a court order.

36.     **Execution of Documents.**  The Parties shall execute all documents and perform all acts reasonably necessary and proper to effectuate the terms of this Agreement. The execution of documents must take place prior to the date scheduled for the hearing on preliminary approval of this Agreement.

37.     **Execution in Counterparts.**  This Agreement may be executed in counterparts. E-mailed signatures shall be considered as valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this Agreement and filed with the Court.

IN WITNESS WHEREOF, the parties hereto through their fully authorized

representatives have agreed to this Agreement of the date first herein above written.

**SIRIUS XM RADIO INC.**

By: _Patrick Donnelly_

    Patrick L. Donnelly
    Executive Vice President, General Counsel
    and Secretary

**CADDELL & CHAPMAN**, Counsel to Francis W. Hooker in *Francis W. Hooker v. Sirius XM Radio Inc.*, No. 4:13-cv-3 (E.D. Va.)

By: _____
    Michael A. Caddell
    628 E. 9th Street
    Houston, TX 77007
    (713) 751-0400

**JONES DAY**, Counsel to Sirius XM Radio Inc.

By: _Thomas Demitrack_

    Thomas Demitrack
    901 Lakeside Ave.
    Cleveland, OH 44114-1190
    (216) 586-3939

**THE CONSUMER AND EMPLOYEE RIGHTS LAW FIRM, P.C.**, Counsel to Francis W. Hooker in *Francis W. Hooker v. Sirius XM Radio Inc.*, No. 4:13-cv-3 (E.D. Va.)

By: _____
    Christopher North
    751-A Thimble Shoals Blvd.
    Newport News, VA 23606
    (757) 873-1010

**KAZEROUNI LAW GROUP, APC,** Counsel to Erik Knutson in *Erik Knutson v. Sirius XM Radio Inc.*, No. 12-cv-0418-AJB-DHB (S.D. Cal.)

By: _____
    Abbas Kazerounian
    245 Fischer Ave., Suite D1
    Costa Mesa, CA 92626
    (800) 400-6808

**HYDE & SWIGART**, counsel to Erik Knutson in *Erik Knutson v. Sirius XM Radio Inc.*, No. 12-cv-0418-AJB-DHB (S.D. Cal.)

By: _____
    Joshua B. Swigart
    2221 Camino Del Rio South, Suite 101
    San Diego, CA 92108
    (619) 233-7770

IN WITNESS WHEREOF, the parties hereto through their fully authorized

representatives have agreed to this Agreement of the date first herein above written.

**SIRIUS XM RADIO INC.**


By: _____
      Patrick L. Donnelly
      Executive Vice President, General Counsel
      and Secretary


**JONES DAY**, Counsel to Sirius XM Radio Inc.


By: _____
      Thomas Demitrack
      901 Lakeside Ave.
      Cleveland, OH 44114-1190
      (216) 586-3939

**CADDELL & CHAPMAN**, Counsel to Francis W. Hooker in *Francis W. Hooker v. Sirius XM Radio Inc.*, No. 4:13-cv-3 (E.D. Va.)

By: *Michael A. Caddell*
      Michael A. Caddell
      628 E. 9th Street
      Houston, TX 77007
      (713) 751-0400

**THE CONSUMER AND EMPLOYEE RIGHTS LAW FIRM, P.C.**, Counsel to Francis W. Hooker in *Francis W. Hooker v. Sirius XM Radio Inc.*, No. 4:13-cv-3 (E.D. Va.)

By: _____
      Christopher North
      751-A Thimble Shoals Blvd.
      Newport News, VA 23606
      (757) 873-1010

**KAZEROUNI LAW GROUP, APC,** Counsel to Erik Knutson in *Erik Knutson v. Sirius XM Radio Inc.*, No. 12-cv-0418-AJB-DHB (S.D. Cal.)

By: _____
      Abbas Kazerounian
      245 Fischer Ave., Suite D1
      Costa Mesa, CA 92626
      (800) 400-6808

**HYDE & SWIGART**, counsel to Erik Knutson in *Erik Knutson v. Sirius XM Radio Inc.*, No. 12-cv-0418-AJB-DHB (S.D. Cal.)

By: _____
      Joshua B. Swigart
      2221 Camino Del Rio South, Suite 101
      San Diego, CA 92108
      (619) 233-7770

IN WITNESS WHEREOF, the parties hereto through their fully authorized

representatives have agreed to this Agreement of the date first herein above written.

**SIRIUS XM RADIO INC.**

By: _____
      Patrick L. Donnelly
      Executive Vice President, General Counsel
      and Secretary


**JONES DAY**, Counsel to Sirius XM Radio Inc.


By: _____
      Thomas Demitrack
      901 Lakeside Ave.
      Cleveland, OH 44114-1190
      (216) 586-3939

**CADDELL & CHAPMAN**, Counsel to
Francis W. Hooker in *Francis W. Hooker v.
Sirius XM Radio Inc.*, No. 4:13-cv-3 (E.D.
Va.)

By: _____
      Michael A. Caddell
      628 E. 9th Street
      Houston, TX 77007
      (713) 751-0400

**THE CONSUMER AND EMPLOYEE
RIGHTS LAW FIRM, P.C.**, Counsel to
Francis W. Hooker in *Francis W. Hooker v.
Sirius XM Radio Inc.*, No. 4:13-cv-3 (E.D.
Va.)

By: *Christon North*
      Christopher North
      751-A Thimble Shoals Blvd.
      Newport News, VA 23606
      (757) 873-1010

**KAZEROUNI LAW GROUP, APC,**
Counsel to Erik Knutson in *Erik Knutson v.
Sirius XM Radio Inc.*, No. 12-cv-0418-AJB-
NLS (S.D. Cal.)

By: _____
      Abbas Kazerounian
      2700 N. Main Street, Ste. 1000
      Santa Ana, CA 92705
      (800) 400-6808

**HYDE & SWIGART**, counsel to Erik
Knutson in *Erik Knutson v. Sirius XM Radio
Inc.*, No. 12-cv-0418-AJB-NLS (S.D. Cal.)

By: _____
      Joshua B. Swigart
      411 Camino Del Rio South, Suite 301
      San Diego, CA 92108-3551
      (619) 233-7770

IN WITNESS WHEREOF, the parties hereto through their fully authorized

representatives have agreed to this Agreement of the date first herein above written.

**SIRIUS XM RADIO INC.**

By: _____
      Patrick L. Donnelly
      Executive Vice President, General Counsel
      and Secretary

**JONES DAY**, Counsel to Sirius XM Radio Inc.

By: _____
      Thomas Demitrack
      901 Lakeside Ave.
      Cleveland, OH 44114-1190
      (216) 586-3939

**CADDELL & CHAPMAN**, Counsel to Francis W. Hooker in *Francis W. Hooker v. Sirius XM Radio Inc.*, No. 4:13-cv-3 (E.D. Va.)

By: _____
      Michael A. Caddell
      628 E. 9th Street
      Houston, TX 77007
      (713) 751-0400

**THE CONSUMER AND EMPLOYEE RIGHTS LAW FIRM, P.C.**, Counsel to Francis W. Hooker in *Francis W. Hooker v. Sirius XM Radio Inc.*, No. 4:13-cv-3 (E.D. Va.)

By: _____
      Christopher North
      751-A Thimble Shoals Blvd.
      Newport News, VA 23606
      (757) 873-1010

**KAZEROUNI LAW GROUP, APC,** Counsel to Erik Knutson in *Erik Knutson v. Sirius XM Radio Inc.*, No. 12-cv-0418-AJB-DHB (S.D. Cal.)

By: _____
      Abbas Kazerounian
      245 Fischer Ave., Suite D1
      Costa Mesa, CA 92626
      (800) 400-6808

**HYDE & SWIGART**, counsel to Erik Knutson in *Erik Knutson v. Sirius XM Radio Inc.*, No. 12-cv-0418-AJB-DHB (S.D. Cal.)

By: _____
      Joshua B. Swigart
      2221 Camino Del Rio South, Suite 101
      San Diego, CA 92108
      (619) 233-7770

**McGUIRE LAW, P.C.**, Counsel to Yefim
Elikman in *Yefim Elikman v. Sirius XM Radio
Inc.*, No. 1:15-cv-02093 (N.D. Ill.)

By: _____
      Myles McGuire
      55 W. Wacker Drive, 9th Fl.
      Chicago, IL 60601
      (312) 893-7002

**McMORROW LAW, P.C.**, Counsel to
Yefim Elikman in *Yefim Elikman v. Sirius XM
Radio Inc.*, No. 1:15-cv-02093 (N.D. Ill.)

By: _____
      Michael J. McMorrow
      1 North LaSalle Street, 44th Floor
      Chicago, IL 60602
      (312) 265-0708

**McGUIRE LAW, P.C.**, Counsel to Anthony
Parker in *Anthony Parker v. Sirius XM Radio
Inc.*, No. 8:15-cv-01710-JSM-EAJ (M.D. Fla.)

By: _____
      Myles McGuire
      55 W. Wacker Drive, 9th Fl.
      Chicago, IL 60601
      (312) 893-7002

**DUDLEY, SELLERS, HEALY & HEATH**,
Counsel to Anthony Parker in *Anthony Parker
v. Sirius XM Radio Inc.*, No. 8:15-cv-01710-
JSM-EAJ (M.D. Fla.)

By: _____
      David P. Healy
      3522 Thomasville Road, Ste. 301
      Tallahassee, FL 32309
      (850) 222-5400

**McGUIRE LAW, P.C.**, Counsel to Yefim
Elikman in *Yefim Elikman v. Sirius XM Radio
Inc.*, No. 1:15-cv-02093 (N.D. Ill.)

By: _____
     Myles McGuire
     55 W. Wacker Drive, 9th Fl.
     Chicago, IL 60601
     (312) 893-7002

**McMORROW LAW, P.C.**, Counsel to
Yefim Elikman in *Yefim Elikman v. Sirius XM
Radio Inc.*, No. 1:15-cv-02093 (N.D. Ill.)

By: _____
     Michael J. McMorrow
     1 North LaSalle Street, 44th Floor
     Chicago, IL 60602
     (312) 265-0708

**McGUIRE LAW, P.C.**, Counsel to Anthony
Parker in *Anthony Parker v. Sirius XM Radio
Inc.*, No. 8:15-cv-01710-JSM-EAJ (M.D. Fla.)

By: _____
     Myles McGuire
     55 W. Wacker Drive, 9th Fl.
     Chicago, IL 60601
     (312) 893-7002

**DUDLEY, SELLERS, HEALY & HEATH**,
Counsel to Anthony Parker in *Anthony Parker
v. Sirius XM Radio Inc.*, No. 8:15-cv-01710-
JSM-EAJ (M.D. Fla.)

By: _____
     David P. Healy
     3522 Thomasville Road, Ste. 301
     Tallahassee, FL 32309
     (850) 222-5400

**McGUIRE LAW, P.C.**, Counsel to Yefim
Elikman in *Yefim Elikman v. Sirius XM Radio
Inc.*, No. 1:15-cv-02093 (N.D. Ill.)

By: _____
  Myles McGuire
  55 W. Wacker Drive, 9th Fl.
  Chicago, IL  60601
  (312) 893-7002

**McMORROW LAW, P.C.**, Counsel to
Yefim Elikman in *Yefim Elikman v. Sirius XM
Radio Inc.*, No. 1:15-cv-02093 (N.D. Ill.)

By: _____
  Michael J. McMorrow
  1 North LaSalle Street, 44th Floor
  Chicago, IL  60602
  (312) 265-0708

**McGUIRE LAW, P.C.**, Counsel to Anthony
Parker in *Anthony Parker v. Sirius XM Radio
Inc.*, No. 8:15-cv-01710-JSM-EAJ (M.D. Fla.)

By: _____
  Myles McGuire
  55 W. Wacker Drive, 9th Fl.
  Chicago, IL  60601
  (312) 893-7002

**DUDLEY, SELLERS, HEALY & HEATH**,
Counsel to Anthony Parker in *Anthony Parker
v. Sirius XM Radio Inc.*, No. 8:15-cv-01710-
JSM-EAJ (M.D. Fla.)

By: _____
  David P. Healy    FL Bar #940410
  3522 Thomasville Road, Ste. 301
  Tallahassee, FL  32309
  (850) 222-5400

45