**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NEWPORT NEWS DIVISION**

FRANCIS W. HOOKER, Jr.,
for himself and on behalf all
similarly situated individuals,

     Plaintiff,

                         Case No.: 4:13-cv-00003 (AWA/LRL)

v.

SIRIUS XM RADIO INC.

     Defendant

---

**DECLARATION OF CAMERON R. AZARI, ESQ. ON IMPLEMENTATION AND
ADEQUACY OF SETTLEMENT NOTICES AND NOTICE PLAN**

I, CAMERON R. AZARI, ESQ., hereby declare and state as follows:

1.     My name is Cameron R. Azari, Esq.  I have personal knowledge of the matters set forth herein, and I believe them to be true and correct.

2.     I am a nationally recognized expert in the field of legal notice and I have served as an expert in dozens of federal and state cases involving class action notice plans.

3.     I am the Director of Legal Notice for Hilsoft Notifications ("Hilsoft"); a firm that specializes in designing, developing, analyzing and implementing large-scale, un-biased, legal notification plans.  Hilsoft is a business unit of Epiq Systems Class Action and Claims Solutions ("ECA").

4.     Hilsoft has been involved with some of the most complex and significant notices and notice programs in recent history.  With experience in more than 300 cases, notices prepared by Hilsoft have appeared in 53 languages with distribution in almost every country, territory and

dependency in the world.  Judges, including in published decisions, have recognized and approved numerous notice plans developed by Hilsoft, which decisions have always withstood collateral reviews by other courts and appellate challenges.

## EXPERIENCE RELEVANT TO THIS CASE

5.      I have served as notice expert and have been recognized and appointed by courts to design and provide notice in many of the largest and most significant cases, including: *In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL 1720 (E.D.N.Y.) ($7.2 billion settlement reached with Visa and MasterCard.  The intensive notice program involved over 19.8 million direct mail notices together with insertions in over 1,500 newspapers, consumer magazines, national business publications, trade & specialty publications, and language & ethnic targeted publications, as well as online banner notices, which generated more than 770 million adult impressions and a case website in eight languages); *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL 2179 (E.D. La.) (Dual landmark settlement notice programs to separate "Economic and Property Damages" and "Medical Benefits" settlement classes.  Notice effort included over 7,900 television spots, over 5,200 radio spots, and over 5,400 print insertions and reached over 95% of Gulf Coast residents); and *In Re: Checking Account Overdraft Litigation*, MDL 2036 (S.D. Fla.) (Multiple bank settlements between 2010-2016 involving direct mail and email to millions of class members and publication in relevant local newspapers.  Representative banks include, Fifth Third Bank, National City Bank, Bank of Oklahoma, Webster Bank, Harris Bank, M & I Bank, Community Bank, PNC Bank, Compass Bank, Commerce Bank, Citizens Bank, Great Western Bank, TD Bank, Bancorp, Whitney Bank, Associated Bank, and Susquehanna Bank.

6. Courts have recognized our testimony as to which method of notification is appropriate for a given case, and I have provided testimony on numerous occasions on whether a certain method of notice represents the best notice practicable under the circumstances. For example:

a) *Chimeno-Buzzi v. Hollister Co. and Abercrombie & Fitch Co.,* No. 14-23120 (S.D. Fla.), Judge Marcia G. Cooke on April 11, 2016:

> *Pursuant to the Court's Preliminary Approval Order, the Settlement Administrator, Epiq Systems, Inc. [Hilsoft Notifications], has complied with the approved notice process as confirmed in its Declaration filed with the Court on March 23, 2016. The Court finds that the notice process was designed to advise Class Members of their rights. The form and method for notifying Class Members of the settlement and its terms and conditions was in conformity with this Court's Preliminary Approval Order, constituted the best notice practicable under the circumstances, and satisfied the requirements of Federal Rule of Civil Procedure 23(c)(2)(B), the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, and due process under the United States Constitution and other applicable laws.*

b) *Adkins v. Nestle Purina PetCare Company, et al.,* No. 12-cv-2871 (N.D. Ill.), Judge Robert W. Gettleman on June 23, 2015:

> *Notice to the Settlement Class and other potentially interested parties has been provided in accordance with the notice requirements specified by the Court in the Preliminary Approval Order. Such notice fully and accurately informed the Settlement Class members of all material elements of the proposed Settlement and of their opportunity to object or comment thereon or to exclude themselves from the Settlement; provided Settlement Class Members adequate instructions and a variety of means to obtain additional information; was the best notice practicable under the circumstances; was valid, due, and sufficient notice to all Settlement Class members; and complied fully with the laws of the State of Illinois, Federal Rules of Civil Procedure, the United States Constitution, due process, and other applicable law.*

c) *Gulbankian et al. v. MW Manufacturers, Inc.,* No. 1:10-cv-10392-RWZ (D. Mass.), Judge Rya W. Zobel on December 29, 2014:

*This Court finds that the Class Notice was provided to the Settlement Class consistent with the Preliminary Approval Order and that it was the best notice practicable and fully satisfied the requirements of the Federal Rules of Civil Procedure, due process, and applicable law. The Court finds that the Notice Plan that was implemented by the Claims Administrator satisfies the requirements of FED. R. CIV. P. 23, 28 U.S.C. § 1715, and Due Process, and is the best notice practicable under the circumstances. The Notice Plan constituted due and sufficient notice of the Settlement, the Final Approval Hearing, and the other matters referred to in the notices. Proof of the giving of such notices has been filed with the Court via the Azari Declaration and its exhibits.*

     d)    *Rose v. Bank of America Corporation, and FIA Card Services, N.A.,* No.

5:11-CV-02390-EJD; 5:12-CV-04009-EJD (N.D. Cal.), Judge Edward J. Davila on

August 29, 2014:

*The Court finds that the notice was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of this action, all material elements of the Settlement, the opportunity for Settlement Class Members to exclude themselves from, object to, or comment on the settlement and to appear at the final approval hearing. The notice was the best notice practicable under the circumstances, satisfying the requirements of Rule 23(c)(2)(B); provided notice in a reasonable manner to all class members, satisfying Rule 23(e)(1)(B); was adequate and sufficient notice to all Class Members; and, complied fully with the laws of the United States and of the Federal Rules of Civil Procedure, due process and any other applicable rules of court.*

     e)    *Wong et al. v. Alacer Corp.,* No. CGC-12-519221 (Cal. Super. Ct.), Judge

James A. Robertson, II on June 27, 2014:

*Notice to the Settlement Class has been provided in accordance with the Preliminary Approval Order. Based on the Declaration of Cameron Azari dated March 7, 2014, such Class Notice has been provided in an adequate and sufficient manner, constitutes the best notice practicable under the circumstances and satisfies the requirements of California Civil Code Section 1781, California Civil Code of Civil Procedure Section 382, Rules 3.766 of the California Rules of Court, and due process.*

f)  *In re Payment Card Interchange Fee and Merchant Discount Antitrust*

*Litigation*, No. 1:05-cv-03800 (E.D.N.Y.): Judge John Gleeson stated on December 13, 2013:

> *The Class Administrator notified class members of the terms of the*
> *proposed settlement through a mailed notice and publication campaign*
> *that included more than 20 million mailings and publication in more than*
> *400 publications. The notice here meets the requirements of due process*
> *and notice standards... The objectors' complaints provide no reason to*
> *conclude that the purposes and requirements of a notice to a class were*
> *not met here.*

g)  *Marolda v. Symantec Corporation*, No. 08-cv-05701 (N.D. Cal.) Judge

Edward M. Chen stated on April 5, 2013:

> *Approximately 3.9 million notices were delivered by email to class*
> *members, but only a very small percentage objected or opted out . . . The*
> *Court . . . concludes that notice of settlement to the class was adequate*
> *and satisfied all requirements of Federal Rule of Civil Procedure 23(e)*
> *and due process. Class members received direct notice by email, and*
> *additional notice was given by publication in numerous widely circulated*
> *publications as well as in numerous targeted publications. These were the*
> *best practicable means of informing class members of their rights and of*
> *the settlement's terms.*

h)  *In Re: Zurn Pex Plumbing Products Liability Litigation*, No. 08-cv-01958

(D. Minn.): Judge Ann D. Montgomery stated on February 27, 2013:

> *The parties retained Hilsoft Notifications ("Hilsoft"), an experienced*
> *class-notice consultant, to design and carry out the notice plan. The form*
> *and content of the notices provided to the class were direct,*
> *understandable, and consistent with the "plain language" principles*
> *advanced by the Federal Judicial Center. The notice plan's multi-faceted*
> *approach to providing notice to settlement class members whose identity*
> *is not known to the settling parties constitutes" the best notice that is*
> *practicable under the circumstances" consistent with Rule 23(c)(2)(B).*

i)  *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of*

*Mexico, on April 20, 2010*, MDL 2179 (E.D. La.), Judge Carl J. Barbier stated on January

11, 2013:

*The Court finds that the Class Notice and Class Notice Plan satisfied and continue to satisfy the applicable requirements of Federal Rule of Civil Procedure 23(c)(2)(b) and 23(e), the Class Action Fairness Act (28 U.S.C. § 1711 et seq.), and the Due Process Clause of the United States Constitution (U.S. Const., amend. V), constituting the best notice that is practicable under the circumstances of this litigation.*

*The notice program surpassed the requirements of Due Process, Rule 23, and CAFA. Based on the factual elements of the Notice Program as detailed below, the Notice Program surpassed all of the requirements of Due Process, Rule 23, and CAFA.*

*The media notice effort alone reached an estimated 95% of adults in the Gulf region an average of 10.3 times each, and an estimated 83% of all adults in the United States an average of 4 times each. These figures do not include notice efforts that cannot be measured, such as advertisements in trade publications and sponsored search engine listings. The Notice Program fairly and adequately covered and notified the class without excluding any demographic group or geographic area, and it exceeded the reach percentage achieved in most other court-approved notice programs.*

  j)  In *Schulte v. Fifth Third Bank*, No. 1:09-cv-6655 (N.D. Ill.), Judge Robert

M. Dow, Jr. stated on July 29, 2011:

*The Court has reviewed the content of all of the various notices, as well as the manner in which Notice was disseminated, and concludes that the Notice given to the Class fully complied with Federal Rule of Civil Procedure 23, as it was the best notice practicable, satisfied all constitutional due process concerns, and provided the Court with jurisdiction over the absent Class Members.*

  k)  *In re: Heartland Payment Systems, Inc. Customer Data Security Breach*

*Litigation*, MDL 09-2046 (S.D. Tex.): Judge Lee Rosenthal stated on March 2, 2012:

*The notice that has been given clearly complies with Rule 23(e)(1)'s reasonableness requirement... Hilsoft Notifications analyzed the notice plan after its implementation and conservatively estimated that notice reached 81.4 percent of the class members. (Docket Entry No. 106, ¶ 32). Both the summary notice and the detailed notice provided the information reasonably necessary for the presumptive class members to determine whether to object to the proposed settlement. See Katrina Canal Breaches, 628 F.3d at 197. Both the summary notice and the detailed notice "were written in easy-to-understand plain English." In re Black Farmers Discrimination Litig., — F. Supp. 2d —, 2011 WL 5117058, at \*23*

*(D.D.C. 2011); accord AGGREGATE LITIGATION § 3.04(c).15 The notice provided "satisf[ies] the broad reasonableness standards imposed by due process" and Rule 23. Katrina Canal Breaches, 628 F.3d at 197 (internal quotation marks omitted).*

7.      In forming my expert opinions, I and my staff draw from our in-depth class action case experience, as well as our educational and related work experiences.  I am an active member of the Oregon State Bar, receiving my Bachelor of Science from Willamette University and my Juris Doctor from Northwestern School of Law at Lewis and Clark College.  I have served as the Director of Legal Notice for Hilsoft since 2008 and have overseen the detailed planning of virtually all of our court-approved notice programs since that time.  Prior to assuming my current role with Hilsoft, I served in a similar role as Director of Epiq Legal Noticing (previously called Huntington Legal Advertising).  Overall, I have over 16 years of experience in the design and implementation of legal notification and claims administration programs having been personally involved in well over one hundred successful notice programs.  I have been directly and personally responsible for designing all of the notice planning here, including analysis of the individual notice options and the media audience data and determining the most effective mixture of media required to reach the greatest practicable number of Settlement Class members.

8.      The facts in this declaration are based on what I personally know, as well as information provided to me in the ordinary course of my business by my colleagues at Hilsoft and ECA, who worked with us to implement the notification effort.

## OVERVIEW

9.      On August 18, 2016, the Court approved the Notice Plan (included proposed forms of notice) in *Hooker v. Sirius XM Radio Inc.*, Case No. 4:13-cv-00003 (AWA/LRL) (E.D. Vir.)

and appointed Epiq as the Settlement Administrator and Escrow Agent in the Preliminary

Approval Order ("Order").  The Court certified a "Settlement Class" defined as:

> All natural persons residing in the United States (including all
> territories and other political subdivisions of the United States) who
> (a) received programming on a promotional basis from Sirius XM in
> connection with the purchase or lease of a new or used vehicle that
> ended no later than April 5, 2016; (b) were the recipients of one or
> more telephone calls made by or on behalf of Sirius XM to their
> wireless, cell or mobile phone numbers after February 15, 2008 and
> before July 5, 2016; and (c) never were or became paying subscribers
> prior to July 5, 2016. Excluded from the class definition are any
> employees, officers, or directors of Sirius XM, and any attorneys
> appearing in this case, and any judge assigned to hear this case as
> well as their immediate family and staff.

10.    After the Court's preliminary approval of the Settlement, we began implementing

the Notice Program.  This declaration will detail the successful implementation of the Notice

Program and document the completion of the notice activities to date.  The declaration will also

discuss the administration activity to date.

11.    To date, the Notice Plan has been implemented as ordered by the Court, including

dissemination of individual notice to known or potential Settlement Class members via postal

mail and email, and display of the Notice and on highly trafficked websites.  Sponsored Internet

search listings and the case website provided additional notice exposures.

12.    All notice documents were designed to provide a clear, concise, plain language

statement of Class members' legal rights and options.  The Notices alert Class members that the

content may affect them.  No significant or required information was missing.

13.    In my opinion, the Notice Program fairly and adequately covered and notified the

Class without excluding any demographic group or geographic area.

14.   In my opinion, the Notice Plan was the best notice practicable under the circumstances of this case and satisfied the requirements of due process, including its "desire to actually inform" requirement.[1]

## NOTICE PLAN

### *Individual Notice – Mail & Email*

15.   On August 25, 2016, ECA received 12,870,814 original data records from counsel in this case.  Of that total, ECA identified 911,708 duplicate and 3,361 incomplete records, which resulted in 6,867,139 records for the initial postcard mailing and 5,088,606 records for the initial email mailing.

16.   Prior to mailing, all mailing addresses were checked against the National Change of Address ("NCOA") database maintained by the United States Postal Service ("USPS").[2]  Any addresses that were returned by the NCOA database as invalid were updated through a third-party address search service.  In addition, the addresses were certified via the Coding Accuracy Support System ("CASS") to ensure the quality of the zip code, and verified through Delivery Point Validation ("DPV") to verify the accuracy of the addresses.  This address updating process is standard for the industry and for the majority of promotional mailings that occur today.

17.   On September 14, 2016, ECA mailed 6,867,139 Summary Postcard Notices by USPS first class mail to known or potential Settlement Class members.  Each notice was a two

---

[1] "But when notice is a person's due, process which is a mere gesture is not due process.  The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.  The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected . . ." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950).
[2] The NCOA database contains records of all permanent change of address submissions received by the USPS for the last four years.  The USPS makes this data available to mailing firms and lists submitted to it are automatically updated with any reported move based on a comparison with the person's name and known address.

image 4.25" x 5.5" Summary Postcard Notice.   A copy of the Summary Postcard Notice as printed and mailed is included as **Attachment 1**.

18.   Additionally, a Long Form Notice in English or Spanish was mailed to all persons who requested one via the toll-free phone number.   As of November 4, 2016, 149 Long Form Notices have been mailed as a result of such requests.

19.   The return address on the Notices is a post office box maintained by ECA.   As of November 4, 2016, ECA has re-mailed 75,123 Summary Postcard Notices for addresses that were corrected through the USPS.   For Summary Postcard Notices that were returned as undeliverable, ECA undertook additional public record research, using a third-party lookup service ("ALLFIND", maintained by LexisNexis), which as of November 4, 2016, has resulted in the re-mailing of 465,626 Summary Postcard Notices.   Address updating and re-mailing for undeliverable Summary Postcard Notices is ongoing and will continue through the Final Approval Hearing.

20.   On September 16, 2016, ECA disseminated 5,088,606 Summary Email Notices to all potential Settlement Class members for whom a facially valid email address was available. The Summary Email Notice was created using an embedded html text format.   This format provided easy to read text without graphics, tables, images and other elements that would increase the likelihood that the message could be blocked by Internet Service Providers (ISPs) and/or SPAM filters.   Each Summary Email Notice was transmitted with a unique message identifier.   If the receiving e-mail server could not deliver the message, a "bounce code" was returned along with the unique message identifier.   For any Summary Email Notice for which a

bounce code was received indicating that the message was undeliverable, at least two additional attempts were made to deliver the Notice by email.

21.     The Summary E-mail Notice included an embedded link to the case website.  By clicking the link, recipients are able to easily access the Long Form Notice in English or Spanish, Settlement Agreement, and other information about the Settlement.  The Summary Email Notice is included as **Attachment 2**.

22.     After completion of the initial Email Notice effort, ECA received back 398,483 undeliverable emails.  On October 11, 2016 ECA sent the Summary Postcard Notice to each of the 398,483 addresses that "bounced" back as undeliverable in the initial effort.  As of November 4, 2016, only 17,874 of these Postcard Notices remain undeliverable.

23.     As of November 4, 2016, ECA has emailed and mailed Notices to 11,955,745 unique Settlement Class members, with notice to 242,518 unique, likely Settlement Class members currently known to be undeliverable.  In my experience, this approximate 98% deliverable rate exceeds the expected range and is indicative of the extensive address updating and re-mailing protocols used.

*Internet Banner Notices*

24.     Internet Banner Notices measuring 728 x 90 pixels and 300 x 250 pixels were placed on the online network *Conversant Ad Network* (a network delivering PC impressions to over 9,600 digital properties) and on the Music Channel of the *Yahoo! Ad Network*.  Banner Notices measuring 254 x 133 pixels were also placed on *Facebook*.

25.     Combined, approximately 66.5 million adult impressions were generated by the Internet Banner Notice, which ran from September 19, 2016 to October 4, 2016.  Clicking on the

banner linked the reader to the case website where they could obtain information about the Settlement.  Examples of the Banner Notices are included as **Attachment 3**.

### *Internet Sponsored Search Listings*

26.     To facilitate locating the case website, sponsored search listings were acquired on the three most highly-visited Internet search engines:  *Google*, *Yahoo!* and *Bing*.  When search engine visitors search on common keyword combinations such as "Sirius Settlement," "Sirius Class Action," or "Sirius Radio Settlement," among others, the sponsored search listing is generally displayed at the top of the page prior to the search results or in the upper right hand column.

27.     As of November 4, 2016, the sponsored listings have been displayed 21,866 times, resulting in 3,571 clicks that displayed the case website.  A complete list of the sponsored search keyword combinations is included as **Attachment 4.**  Examples of the sponsored search listing as displayed on each search engine are included as **Attachment 5.**

### *Case Website*

28.     On August 26, 2016, a neutral, informational, case website (www. SiriusXMTCPASettlement.com) was established to enable potential Settlement Class members to obtain additional information and documents including the Long Form Notice in English and Spanish, Settlement Agreement, Complaint and answers to frequently asked questions.  A copy of the Long Form Notice in both English and Spanish, as displayed on the case website are included as **Attachment 6**.

29.     On the case website, Settlement Class members also have the option to file a claim for a cash payment or register for (3) three months of free access to Sirius XM's Select

service.  Both options are clearly presented to potential Settlement Class members on the case website.

30.     The case website address was prominently displayed in all printed notice documents.  The Banner Notices linked directly to the case website.

31.     As of November 4, 2016, there have been 289,938 unique visitors to the case website and over 1,271,635 website pages presented.

32.     As provided for in the Settlement Agreement, Section 6(e), once the Court approves the Settlement, ECA will provide individual notice via email or USPS first class mail to Class members who have not filed a claim for a cash payment.  The notice will direct the Class members to the Case Website for purposes of registering to receive the (3) three months of free access to Sirius XM's Select service.

### Toll-free Telephone Number and Postal Mailing Address

33.     On August 26, 2016, a toll-free phone number (1-888-509-2570) was established allowing Class members to call and request that a Long Form Notice in English or Spanish be mailed to them.  The toll-free number also provides Class members with access to recorded information in English or Spanish, which includes answers to frequently-asked questions and directs them to the case website.  This automated phone system is available 24 hours per day, 7 days per week.  As of November 4, 2016, the toll-free number has handled 19,502 calls representing 60,004.93 minutes of use.

34.     A post office box was established allowing Class members to contact the claims administrator by mail with any specific requests or questions.

### PLAIN LANGUAGE NOTICE DESIGN

35.    The Notices themselves were designed to be "noticed," reviewed, and—by presenting the information in plain language—understood by Class members.  The design of the Notices followed the principles embodied in the Federal Judicial Center's illustrative "model" notices posted at www.fjc.gov.  Many courts, and as previously cited, the FJC itself, have approved notices that we have written and designed in a similar fashion.  The Notices contain substantial, albeit easy-to-read, summaries of all of the key information about Class members' rights and options.  Consistent with our normal practice, all notice documents underwent a final edit prior to actual mailing and publication for grammatical errors and accuracy.

36.    All Notices were designed to increase noticeability and comprehension.  Once people "notice" the Notices, it is critical that they can understand them.  As such, the Notices, as produced, were clearly worded with an emphasis on simple, plain language to encourage readership and comprehension.

37.    The mailed Summary Postcard Notice, the Summary Email Notice and the Long Form Notice featured a prominent headline in bold text.  These design elements alerted recipients and readers that the Notice is an important document authorized by a court and that the content may affect them, thereby supplying reasons to read the Notice.

38.    The Long Form Notice provides substantial information to Settlement Class members.  It began with a summary page, which provided a concise overview of the important information and a table which highlighted key options available to Settlement Class members.  A table of contents, categorized into logical sections, helped to organize the information, while a

question and answer format made it easy to find answers to common questions by breaking the information into simple headings.

### *Exclusions and Objections*

39.     The deadline for Settlement Class members to submit a request for exclusion from the Settlement Class is November 25, 2016.  As of November 4, 2016, ECA has received a total of 95 requests for exclusion from the Settlement Class.  After the November 25, 2016 deadline passes, we will provide a final list of all complete and timely exclusion requests to Court.  The deadline for Settlement Class members to object to the Settlement was November 7, 2016.  At the time of this declaration, I am aware of one objection (from Patrick S. Sweeny, Docket #189) that purports to include an objection to the notice effort.  I have reviewed his objection and in my opinion it does not raise any substantive issues to notice that need to be addressed.

## PERFORMANCE OF THE NOTICE PROGRAM

40.     Many courts have accepted and understood that a 75 or 80 percent reach is more than adequate.  In 2010, the Federal Judicial Center issued a Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide.  This Guide states that, "the lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class.  It is reasonable to reach between 70–95%."[3]  Here the Notice Plan effort reached well within this range (approximately 98%) that was broad in scope and was designed to reach the greatest practicable number of Class members.

---

[3] Fed. Judicial Ctr, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide 3 (2010), available at http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf.

## CONCLUSION

41.     In class action notice planning, execution, and analysis, we are guided by due process considerations under the United States Constitution, by federal and local rules and statutes, and further by case law pertaining to notice.  This framework directs that the notice program be designed to reach the greatest practicable number of potential Class members and, in a settlement class action notice situation such as this, that the notice or notice program itself not limit knowledge of the availability of benefits—nor the ability to exercise other options—to Class members in any way.  All of these requirements were met in this case.

42.     Our notice effort followed the guidance for how to satisfy due process obligations that a notice expert gleans from the United States Supreme Court's seminal decisions which are: a) to endeavor to actually inform the class, and b) to demonstrate that notice is reasonably calculated to do so:

A. "But when notice is a person's due, process which is a mere gesture is not due process.  The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it," *Mullane v. Central Hanover Trust*, 339 U.S. 306, 315 (1950).

B. "[N]otice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974) citing *Mullane* at 314.

43.     The Notice Program provided the best notice practicable under the circumstances of this case, conformed to all aspects of Federal Rule of Civil Procedure 23, and comported with the guidance for effective notice articulated in the Manual for Complex Litigation Fourth.

44.     The Notice Plan schedule afforded enough time to provide full and proper notice to Class members before any opt-out and objection deadlines.


I declare under penalty of perjury that the foregoing is true and correct.  Executed on November 9, 2016.

_____
Cameron R. Azari, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2016, I filed a true and correct copy of the foregoing document using the Court's CM/ECF system. The system will then send an electronic notice of filing to the following counsel of record:

William V. O'Reilly (VSB # 26249)
Attorneys for Defendant Sirius XM Radio Inc.
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
Tel: (202) 879-3939
Fax: (202) 626-1700
Email: woreilly@jonesday.com

Thomas Demitrack (admitted *pro hac vice*)
Attorney for Defendant Sirius XM Radio Inc.
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
Tel: (216) 586-3939
Fax: (216) 579-0212
Email: tdemitrack@jonesday.com

Lee A. Armstrong
Attorney for Defendant Sirius XM Radio Inc.
JONES DAY
250 Vesey Street
New York, NY 10281
Tel.: (212) 326-8340
Email: laarmstrong@JonesDay.com

*/s/ Christopher Colt North*
Christopher Colt North (VSB # 16995)

# Attachment 1

P.O. Box 4349
Portland, OR 97208-4349



PRESORTED
FIRST-CLASS MAIL
AUTO
U.S. POSTAGE
PAID
PORTLAND, OR
PERMIT NO. 2882

**Access Code:** ▮▮▮▮▮▮

The Settlement includes all natural persons residing in the United States (including all territories and other political subdivisions of the United States) who (a) received, in connection with the purchase or lease of a new or used vehicle, programming on a promotional basis from Sirius XM that ended no later than April 5, 2016; (b) were the recipients of one or more telephone calls made by or on behalf of Sirius XM to their wireless, cell or mobile phone numbers after February 15, 2008 and before July 5, 2016; and (c) never were or became paying subscribers prior to July 5, 2016.



1
1

**If you bought or leased a vehicle that included Sirius XM radio on a promotional basis and later received a call to your mobile phone from Sirius XM but were never a paying subscriber prior to July 5, 2016, you may be entitled to benefits from a class action settlement.**

*Si desea recibir esta notificación en español, llámenos o visite nuestra página web.*

A Settlement has been reached in a class action lawsuit about whether Sirius XM Radio Inc. ("Sirius XM") violated the Telephone Consumer Protection Act of 1991 by authorizing telephone solicitation calls to people who had purchased or leased vehicles with a Sirius XM radio. The calls were allegedly made to Class Members' cell phones using an automatic telephone dialing system. Sirius XM denies the allegations, and the Court has not decided who is right. The Settlement provides Class Members 3 months of Free Service (as described below) or the option to participate in a $35 million Settlement Fund, and also provides that Sirius XM will make Business Practice Changes (as defined in the Settlement Agreement).

**Who's Included?** Sirius XM's records show that you may be a Settlement Class Member. The precise definition of the Settlement Class is shown on the reverse.

**What Are the Settlement Terms?** Sirius XM will offer 3 months of free access to Sirius XM's Select service (the "Free Service"), which is currently priced at $15.99/month, plus applicable sales taxes, to each qualifying Class Member who does not elect to receive a cash payment. Sirius XM will also pay $35 million to create a Settlement Fund that will be used for cash payments to valid claimants, attorneys' fees, service awards, costs, expenses, and settlement administration.

**How Can I Register for the Free Service?** To register for the Free Service, you must enter your information at www.SiriusXMTCPASettlement.com.

**How Can I Get a Payment?** To get a cash payment, you must file a claim online at www.SiriusXMTCPASettlement.com by **11:59 p.m. PST on November 26, 2016**.

**Your Other Options.** If you do not want to be legally bound by the Settlement, you must exclude yourself by **November 25, 2016**. If you do not exclude yourself, you will release any claims you may have against Sirius XM. You may object to the Settlement by **November 7, 2016**. The Detailed Notice available on the website explains how to exclude yourself or object. The Court will hold a Hearing on **December 20, 2016** to consider whether to approve the Settlement. You may appear at the hearing, either yourself or through an attorney hired by you, but you don't have to. For more information about the release of claims, excluding yourself, or objecting, call or visit the website below.

P5831 v.06 08.30.2016

# www.SiriusXMTCPASettlement.com | 1-888-509-2570

# Attachment 2

# If you bought or leased a new or used vehicle that included Sirius XM radio on a promotional basis and later received a call to your mobile phone made on behalf of Sirius XM, but were never a paying subscriber prior to July 5, 2016, you may be entitled to benefits from a class action settlement.

*Si desea recibir esta notificación en español, llámenos o visite nuestra página web.*

A Settlement has been reached in a class action lawsuit about whether Sirius XM Radio Inc. ("Sirius XM") violated the Telephone Consumer Protection Act of 1991 by authorizing telephone solicitation calls made by or on behalf of Sirius XM to individuals who purchased or leased a new or used vehicle that had a promotional subscription to Sirius XM radio that ended no later than April 5, 2016 and who never became paying subscribers prior to July 5, 2016. The calls were allegedly made to Class Members' cell phone numbers using an automatic telephone dialing system. The calls occurred during the period between February 15, 2008 and July 5, 2016. Sirius XM denies the allegations in the lawsuit, and the Court has not decided who is right. The Settlement provides Class Members 3 months of Free Service (as defined below) or the option to participate in a $35 MM Settlement Fund, and also provides that Sirius XM will make Business Practice Changes (as defined below).

### Register for Free Service or Submit a Claim

### Access Code: Redacted

**Who's Included?** Sirius XM's records show that you may be a Settlement Class Member. The Settlement includes all natural persons residing in the United States (including all territories and other political subdivisions of the United States) who (a) received, in connection with the purchase or lease of a new or used vehicle, programming on a promotional basis from Sirius XM that ended no later than April 5, 2016; (b) were the recipients of one or more telephone calls made by or on behalf of Sirius XM to their wireless, cell or mobile phone numbers after February 15, 2008 and before July 5, 2016; and (c) never were or became paying subscribers prior to July 5, 2016.

**What Are the Settlement Terms?** Sirius XM will offer 3 months of free access to Sirius XM's Select service (the "Free Service"), which is currently priced at $15.99/month, plus applicable sales taxes, to each Class Member who does not elect to receive a cash payment from the Settlement Fund and who complies with the requirements of the Settlement Agreement to receive the Free Service. Sirius XM will also pay $35 million to create a Settlement Fund that will be used for cash payments to valid claimants, attorney fees, service awards, costs, expenses, and settlement administration. Class Members must file a claim to receive a cash payment. In addition, Sirius XM has agreed to require those making calls to cell phones on its behalf to use telephone

dialing systems that use human intervention to initiate calls and that are separate from any automatic telephone dialing systems, including predictive dialing systems, used to call landline phones. If you are a Class Member, you may go to the Settlement Website and register for the Free Service, or file a claim to receive a cash payment.

**How Can I Register for the Free Service?** To register for the Free Service, you can enter your information at www.SiriusXMTCPASettlement.com/en/Home/Filing. The Free Service will not be activated until after the Settlement becomes final, so please update your information if you sell your car or buy or lease another vehicle with Sirius XM satellite radio before the Settlement becomes final. You will receive a notification after the Settlement becomes final when your Free Service is about to begin. You cannot receive the Free Service on any vehicle that, as of the date set forth in the Settlement Agreement, has a paid subscription associated with it as determined by Sirius XM. In such a case, you can receive cash as provided in the Settlement Agreement.

**How Can I Get a Payment?** To get a cash payment, you must file a claim online at www.SiriusXMTCPASettlement.com/en/Home/Filing **by 11:59 p.m. PST on November 26, 2016**. If you do not file a claim for cash, you will be contacted after the Settlement becomes final to register for the three months of Free Service.

**Your Other Options.** You must take steps to get out of the Settlement if you do not want to receive its benefits. This is called excluding yourself from or "opting out" of the Settlement Class. If you do not want to be legally bound by the Settlement, you must exclude yourself by **November 25, 2016**. If you do not exclude yourself, you will release any claims you may have against Sirius XM. The Settlement Agreement (which you can find at www.SiriusXMTCPASettlement.com) explains the claims that you will be releasing.

If you are a Settlement Class Member (and do not exclude yourself from the Settlement Class), you can object to any part of the Settlement. You may object to the Settlement by **November 7, 2016**. The Detailed Notice available on the website explains how to exclude yourself or object. The Court will hold a Hearing on **December 20, 2016** to consider whether to approve the Settlement and a request for attorneys' fees of up to 30% of the total value of the Settlement and service awards of $2,500 to $10,000 to the Class Representatives. You may appear at the Hearing, either yourself or through an attorney hired by you, but you don't have to. For more information, call or visit the website below.

**www.SiriusXMTCPASettlement.com      1-888-509-2570**

PLEASE DO NOT CONTACT THE COURT REGARDING THIS NOTICE

# Attachment 3

# EPIQ SYSTEMS – SIRIUS XM RADIO 728X90 (OPTION 1)



© 2014, Conversant, Inc. All rights reserved.

CONVERSANT

## Music Channel / Desktop / A18+ / 300x250, 728x90_300x250







Find friends

Home   Find Friends

Edit Profile

**FAVORITES**

News Feed

Messages

Ads Manager

Events

Your Activity

Shops

Buy and Sell Groups

**APPS**

Live Video

Games

On This Day

Suggest Edits

Photos

Find Friends

Pokes

**PAGES**

Pages Feed

Like Pages

Create Page

**FUNDRAISERS**

Create Fundraiser

Keep your account secure and easy to use

we're here to help you protect your account. Add your
mobile number to your account so you can reset your
password if you ever need to, find friends, get SMS updates
and more. Only you will see your number.

**Add Number**   **Learn More**

Photo/Video   |   Photo/Video Album

What's on your mind?

Friends ▼   **Post**

**TRENDING**

Kylie Jenner and Tyga
120K people talking about this

Bryan Cranston
15K people talking about this

American Horror Story
25K people talking about this

See More

**SPONSORED**                    Create Ad



**Class Action Settlement**
siriusxmtcpasettlement.com
Free Service available to those called on cell phones
by Sirius XM after car purchase.

English (US) · Español · Português (Brasil) ·
Français (France) · Deutsch                      +

Privacy · Terms · Advertising · Ad Choices ▷ ·
Cookies · More ▾

Facebook © 2016



# Attachment 4

**Sirius XM - Sponsored Search Keywords**
Sirius Settlement
Sirius XM Settlement
Sirius Radio Settlement
Sirius XM Radio Settlement
Sirius TCPA Settlement
Sirius Phone Call Settlement
Sirius Cell Phone Settlement
Sirius Vehicle Settlement
Sirius Class Action
Sirius XM Class Action
Sirius Radio Class Action
Sirius XM Radio Class Action
Sirius TCPA Class Action
Sirius Phone Call Class Action
Sirius Cell Phone Class Action
Sirius Vehicle Class Action
Sirius Lawsuit
Sirius XM Lawsuit
Sirius Radio Lawsuit
Sirius XM Radio Lawsuit
Sirius TCPA Lawsuit
Sirius Phone Call Lawsuit
Sirius Cell Phone Lawsuit
Sirius Vehicle Lawsuit
Sirius Litigation
Sirius XM Litigation
Sirius Radio Litigation
Sirius XM Radio Litigation
Sirius TCPA Litigation
Sirius Phone Call Litigation
Sirius Cell Phone Litigation
Sirius Vehicle Litigation
Sirius Claims
Sirius XM Claims
Sirius Radio Claims
Sirius XM Radio Claims
Sirius TCPA Claims
Sirius Phone Call Claims
Sirius Cell Phone Claims
Sirius Vehicle Claims

Attachment 5



sirius xm class action

All    News    Shopping    Videos    Images    More ▾    Search tools

About 139,000 results (0.67 seconds)

**Benefits May Be Available - SiriusXM Class Settlement**
`Ad` www.**siriusxm**tcpasettlement.com/ ▾
A **Class Action** offers benefits to those called by **Sirius XM** after a car purchase

**Sirius/XM Class Action Lawsuit | Facebook**
https://www.facebook.com/**SiriusXM-Class-Action**-Lawsuit-117819058246381/ ▾
If you are a current subscriber to either **Sirius** or **XM** radio you may be entitled to compensation, call 1-800-LAW-FIRM today.

**Sirius XM TCPA Class Action Lawsuit Settlement - TopClassActions.com**
https://top**classactions**.com/.../343371-**sirius**-**xm**-tcpa-**class**-**action**-lawsuit-settlement/ ▾
7 days ago - **Sirius XM** Radio Inc. has agreed to pay $35 million to settle several **class action** lawsuits that allege the company illegally used predictive ...

**Sirius XM Radio Class Action Lawsuit Gets Green Light**
https://top**classactions**.com/.../1100-**sirius**-**xm**-radio-**class**-**action**-lawsuit-gets-green-lig... ▾
A federal judge has cleared the way for a $1 billion **class action** lawsuit to proceed against **Sirius XM** Radio (SIRI) that accuses the satellite radio company – the largest in the country – of antitrust violations for illegally raising prices through a monopoly. ... The **class action** ...

**Sirius XM (SIRI) Pays $35M to Settle Mobile Phone Marketing Class ...**
www.streetinsider.com/Litigation/**Sirius**+**XM**...**Class**+**Action**.../11486884.html ▾
Apr 8, 2016 - These purported **class action** cases are titled Erik Knutson v. **Sirius XM** Radio Inc., No. 12-cv-0418-AJB-NLS (S.D. Cal.), Francis W. Hooker v.

 **YAHOO!**

sirius xm claims

Web    Images    Video    More ⌄    Anytime ⌄

Ads related to: sirius xm claims

**SiriusXM Class Settlement | SiriusXMTCPASettlement.com**
www.SiriusXMTCPASettlement.com
Benefits car buyers called on cell phones. 3 months Free Service.

**SiriusXM® Official Store | SiriusXM.com**
www.SiriusXM.com/Shop
Listen Anywhere - In the Car, At Home or On The Go, Shop Now!

Shop All SiriusXM Radios  -  Shop for Accessories  -  Subscriber Radio Deals

**SiriusXM Satellite Radio | BestBuy.com**
www.BestBuy.com
4.0 ★★★★★ rating for bestbuy.com
Get Commercial-Free Music Radio With SiriusXM Radio From Best Buy®.
3055 SW CEDAR HILLS BLVD, BEAVERTON, OR  (503) 350-0559  Directions

**Blessing v. Sirius XM Class Action Suit - SiriusXM...**
www.siriusxm.com/blessingclassaction ⌄
COURT APPROVES SETTLEMENT FOR BLESSING V **SIRIUS XM** RADIO CLASS ACTION SUIT.
On August 25th, 2011, the Court presiding over the lawsuit, Blessing v.

**SiriusXM Radio - Official Site**
www.siriusxm.com ⌄
Get the best in satellite radio with SiriusXM. Over 150 streaming music, news, sports, and talk
stations including Howard Stern. Sign up for a FREE trial.

**Hooker v Sirius XM Radio - Home**
siriusxmtcpasettlement.com/en
Welcome to the Website for the Hooker v. **Sirius XM** Radio Settlement. If you bought or leased a
new or used vehicle that included **Sirius XM** radio on a promotional ...

Ads related to: sirius xm claims

**Sirius Xm Vehicle Tuner**
Amazon.com/Sirius Xm Vehicle Tuner
4.0 ★★★★★ rating for amazon.com
Save Big on New Gear at Amazon! Free Shipping on
Qualified Orders.

**Siriusxm Customer Service**
1and1com/Siriusxm Customer Service
Search for Siriusxm Customer Service Find
Siriusxm Customer Service Now

**Siriusxm Customer Service**
1and1.com/Siriusxm Customer Service
4.0 ★★★★★ rating for 1and1.com
Search for Siriusxm Customer Service Find the Top
Results Here

Web    Images    Videos    Maps    News    Explore

Also try: Sirius XM Renew 5 · Sirius XM Special Offers · Sirius XM 2016 Rates

1,270,000 RESULTS    Any time ▾

Benefits May Be Available | **Sirius**XMTCPA**Settlement**.com    ⓘ
Ad · www.SiriusXMTCPASettlement.com
for those called by **Sirius XM** after a new or used vehicle purchase.

## News about **Sirius XM Settlement**
bing.com/news



### **Sirius XM** TCPA Class Action **Lawsuit Settlement**
topclassactions.com · 7 days ago
**Sirius XM** Radio Inc. has agreed to pay $35 million to settle several class action lawsuits that allege the company illegally used predictive dialers for ...

Turtles' Lawyers Denied Cut Of $210M **Sirius XM Settlement**
Law 360 · 1 day ago
Law360, New York (September 23, 2016, 4:06 PM EDT) -- A California federal judge on Friday refused to give attorneys for 1960s rock band The Turtles a cut of a $210 ...

The 6 Most Shorted Nasdaq Stocks
24/7 Wall ST · 6 hours ago
The more than 229.41 million **Sirius XM** Holdings Inc. (NASDAQ: SIRI) shares short by the middle of September was more than 3% higher than on the previous **settlement** ...

**Siriusxm Settlement** | wow.com    ⓘ
Ad · wow.com/Siriusxm Settlement
Search for **Siriusxm Settlement** Look Up Quick Results Now!

See your ad here »

Related searches

**Sirius XM** Renew 5
**Sirius XM** Special Offers
**Sirius XM** 2016 Rates
**Sirius XM** Radio Online Listening
**Sirius XM** Subscription Renewal Deals
**Sirius XM** Register 1 Register
**Sirius** Channel List
**Sirius** 1 Year Subscription

# Attachment 6

# If you bought or leased a new or used vehicle that included Sirius XM radio on a promotional basis and later received a call to your mobile phone made on behalf of Sirius XM, but were never a paying subscriber prior to July 5, 2016, you may be entitled to benefits from a class action settlement.

*A federal court directed this notice.  This is not a solicitation from a lawyer.*

- A Settlement has been reached in a class action lawsuit about whether Sirius XM Radio Inc. ("Sirius XM" or "Defendant") violated the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227, *et seq*. ("TCPA" or "the Act"), by authorizing telephone solicitation calls made by or on behalf of Sirius XM to individuals who purchased or leased a new or used vehicle that had a promotional subscription to Sirius XM radio that ended no later than April 5, 2016 and who never became paying subscribers prior to July 5, 2016.  The calls were allegedly made to Class Members' cell phone numbers using an automatic telephone dialing system.  The calls occurred during the period between February 15, 2008 and July 5, 2016.  Sirius XM denies the allegations in the lawsuit, and the Court has not decided who is right.  The Settlement provides Class Members 3 months of Free Service (as defined below) or the option to participate in a $35 MM Settlement Fund, and also provides that Sirius XM will make Business Practice Changes (as defined below).

- Class Members who do not opt-out of the Settlement Class may receive one of two benefits.  The default benefit is three months of free access to Sirius XM's Select service (presently $15.99/month, plus applicable sales taxes) (the "Free Service").  Alternatively, Class Members who do not wish to receive the Free Service may file a claim for a pro rata cash payment from a $35 million Settlement Fund after payment of attorney fees, service awards, costs, expenses and settlement administration.  If you are a Class member, you must go to the Settlement Website either to file a claim in order to receive a cash payment or to register for the Free Service.  The website is found at www.SiriusXMTPCASettlement.com.

- Your legal rights are affected whether you act or do not act.  Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **REGISTER** | **Either** register for three months of free Sirius XM Select Service. |
| **FILE A CLAIM FORM** | **Or** file a Claim Form seeking a cash payment. |
| **EXCLUDE YOURSELF** | Request to be excluded and get no benefits from the Settlement.  This is the only option that allows you to start or continue your own lawsuit against Sirius XM for the claims at issue in the Settlement. |
| **OBJECT** | Write to the Court about why you do not like the Settlement. |

**QUESTIONS?  CALL 1-888-509-2570 OR VISIT www.SiriusXMTPCASettlement.com**
**Si desea recibir esta notificación en español, llámenos o visite nuestra página web.**

| Go To A Hearing | Ask to speak in Court about the fairness of the Settlement. |
|---|---|
| Do Nothing | Get no benefits.  Give up any rights you might have to sue Sirius XM about the claims resolved by the Settlement. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court in charge of this lawsuit still has to decide whether to approve the Settlement.  If it does, and after any appeals are resolved, benefits will be provided to those who **either** complete a qualifying Claim Form **or** register for the Free Service during the time periods explained in this notice.  You may either complete the Claim Form or register for the Free Service by visiting the website at www.SiriusXMTCPASettlement.com.

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** ...................................................................................................**PAGE 4**
    1. Why is there a notice?
    2. What is this litigation about?
    3. Why is this a class action?
    4. Why is there a Settlement?

**WHO IS PART OF THE SETTLEMENT**.......................................................................**PAGE 5**
    5. Who is included in the Settlement?
    6. What if I am not sure whether I am included in the Settlement?

**THE SETTLEMENT BENEFITS** ....................................................................................**PAGE 5**
    7. What does the Settlement provide?
    8. How much will a cash payment be?
    9. How do I file a claim for cash?
    10. When will I receive my payment?
    11. How do I choose the Free Service Option?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ................................................**PAGE 7**
    12. How do I get out of the Settlement?
    13. If I do not exclude myself, can I sue Sirius XM for the same thing later?
    14. What am I giving up to stay in the Settlement Class?
    15. If I exclude myself, can I still get a payment or choose the Free Service?

**THE LAWYERS REPRESENTING YOU** .........................................................................**PAGE 8**
    16. Do I have a lawyer in the case?
    17. How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT**............................................................................**PAGE 8**
    18. How do I tell the Court if I do not like the Settlement?
    19. What is the difference between objecting and asking to be excluded?

**THE COURT'S FAIRNESS HEARING** ..........................................................................**PAGE 9**
    20. When and where will the Court decide whether to approve the Settlement?
    21. Do I have to attend the hearing?
    22. May I speak at the hearing?

**QUESTIONS?  CALL 1-888-509-2570 OR VISIT www.SiriusXMTCPASettlement.com**

**IF YOU DO NOTHING** ............................................................................................**PAGE 10**

    23. What happens if I do nothing at all?

**GETTING MORE INFORMATION** ..........................................................................**PAGE 11**

    24. How do I get more information?

# BASIC INFORMATION

## 1. Why is there a notice?

A Court authorized this notice because you have a right to know about the proposed Settlement of a class action lawsuit known as *Francis W. Hooker, Jr. v. Sirius XM Radio Inc.*, Case No. 4:13-cv-00003-AWA-LRL, and about all of your options before the Court decides whether to give final approval to the Settlement. The settlement also resolves certain similar lawsuits, including the class actions titled *Erik Knutson v. Sirius XM Radio Inc.*, No. 12-cv-0418-AJB-DHB (S.D. Cal.), *Yefim Elikman v. Sirius XM Radio Inc.*, 11:15-cv-02093 (N.D. Ill.), and *Anthony Parker v. Sirius XM Radio Inc.*, 8:15-cv-01710-JSM-EAJ (M.D. Fla.). This notice explains the lawsuit, the Settlement, and your legal rights.

Judge Arenda L. Wright Allen of the United States District Court for the Eastern District of Virginia is overseeing this case. The people who sued are called the "Plaintiffs." Sirius XM Radio Inc. is the "Defendant."

## 2. What is this litigation about?

The lawsuit alleges that Sirius XM violated the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227, *et seq.* ("TCPA" or "the Act"), by allegedly authorizing telephone solicitation calls made to Class Members' cell phone numbers using an automatic telephone dialing system. These calls were made by or on behalf of Sirius XM to individuals who had purchased or leased a new or used vehicle that had a promotional subscription to Sirius XM radio that ended no later than April 5, 2016 and who never became paying subscribers prior to July 5, 2016.

Sirius XM denies each and every one of the allegations in the lawsuit and does not concede or admit any liability whatever, and in particular denies that telemarketing vendors retained by Sirius XM used any automatic telephone dialing systems to call wireless (or cell or mobile) phones; Sirius XM has asserted various other defenses and further denies that Class Members suffered any injury or damage.

The Plaintiff's Complaint, the Settlement Agreement, and other case-related documents are posted on the website, www.SiriusXMTCPASettlement.com. The Settlement resolves the lawsuit. The Court has not decided who is right.

## 3. Why is this a class action?

In a class action, one or more people called "Class Representatives" (in this case, Francis W. Hooker, Jr., Eric Knutson, Yefim Elikman and Anthony Parker) sue on behalf of themselves and other people with similar claims. Together, all the people with similar claims (except those who exclude themselves) are members of a "Settlement Class."

## 4. Why is there a Settlement?

The Court has not decided in favor of the Plaintiff or Sirius XM. Instead, both sides have agreed to the Settlement. By agreeing to the Settlement, the Parties avoid the costs and uncertainty of a trial, and if the Settlement is approved by the Court, Settlement Class Members will receive the benefits described in this notice. The proposed Settlement does not mean that any law was broken or that Sirius XM did anything wrong. Sirius XM denies all legal claims in this case. The Class Representatives and their lawyers think the proposed Settlement is best for everyone who is affected.

Sirius XM thinks that it makes sense to enter into this proposed Settlement to avoid further legal expense and burden and to resolve this controversy.

# WHO IS PART OF THE SETTLEMENT

### 5. Who is included in the Settlement?

The Settlement includes all natural persons residing in the United States (including all territories and other political subdivisions of the United States) who (a) received, in connection with the purchase or lease of a new or used vehicle, programming on a promotional basis from Sirius XM that ended no later than April 5, 2016; (b) were the recipients of one or more telephone calls made by or on behalf of Sirius XM to their wireless, cell or mobile phone numbers after February 15, 2008 and before July 5, 2016; and (c) never were or became paying subscribers prior to  July 5, 2016.

Excluded from the Class are any employees, officers, or directors of Sirius XM, and any attorneys appearing in this case, and any judge assigned to hear this case as well as their immediate family and staff.

### 6.  What if I am not sure whether I am included in the Settlement?

If you are not sure whether you are in the Settlement Class or have any other questions about the Settlement, visit the Settlement Website at www.SiriusXMTCPASettlement.com or call the toll-free number, 1-888-509-2570.  You also may send questions to the Settlement Administrator at Sirius XM Settlement Administrator, P.O. Box 4349, Portland, OR 97208-4349.  Do not call the Court and do not call either Sirius XM or its attorneys.

# THE SETTLEMENT BENEFITS

### 7.  What does the Settlement provide?

Sirius XM will offer (3) three months of free access to Sirius XM's Select service (or any subsequently-named satellite radio service that contains substantially the same programming as the Select service) (the "Free Service") to each Class Member who does not elect to receive a cash payment from the Settlement Fund and who complies with the requirements of the Settlement Agreement to receive the Free Service.

Sirius XM will also pay $35,000,000 into a Settlement Fund.  Cash payments to members of the Settlement Class, notice and administrative costs, service awards, and attorneys' fees, costs, and other expenses will be paid from the Settlement Fund.  Class Members must file a claim to receive a cash payment.

**Class Members may receive only one of the two options (the Free Service or a cash payment).** Additionally, each Class Member may receive only one benefit regardless of the number of his or her titled vehicles or the number of calls he or she may have received on his or her wireless, cell or mobile phones during the period covered by the definition of the Settlement Class.

In addition, Sirius XM has agreed to enter into agreements with its telemarketing vendors to require those vendors when making calls to cell phones on its behalf to use telephone dialing systems that use human intervention to initiate calls and that are separate from any automatic telephone dialing systems, including predictive dialing systems, used to call landline phones.

## 8. For any class member who elects to receive cash, how much will that class member's cash payment be?

The exact amount of each individual cash payment cannot be determined at this time and will depend on the number of valid claims filed. The parties estimate that there are approximately 12.3 million Class Members. Based on the estimated costs of the settlement notice to class members, the costs of settlement administration, and the potential award of attorneys' fees and costs, it is estimated that at least $10 million will be reserved for payment of the cash benefits to Class Members claiming that benefit. Based on the claims rates in similar settlements, the parties anticipate that the cash payment made to individual cash claimants will be in the range of $5-$15, although that is only an estimate and the actual amount could be higher or lower than that range.

## 9. How do I file a claim for cash?

In order to receive a cash payment, you must visit the Settlement Website and complete a valid Claim Form there.

Claim Forms must be completed online on or before midnight Pacific Time, **November 26, 2016**.

Please read the instructions on the website carefully, follow all of the instructions, and provide all the information required.

## 10. When will I receive my payment?

Payments to Class Members who file eligible claims will be made only after the Court grants "final approval" to the Settlement and after any appeals are resolved (*see* "The Court's Fairness Hearing" below). If there are appeals, resolving them can take time. Please be patient.

## 11. How do I register for the Free Service?

Only Class Members who **do not** file a claim for cash payment will have an opportunity to receive the Free Service option. Class Members do not need to do anything at this time to be eligible to receive three months of free access to Sirius XM's Select service. All Class Members who did not complete an online Claim Form for cash by the filing deadline will be contacted by the Settlement Administrator after the Settlement becomes final. At that time, Class Members will be directed to www.SiriusXMTCPASettlement.com to register to receive the Free Service. If you know that you want to register for the Free Service now, you may go to the website at any time and register for it (but it will not be activated until the Settlement becomes final).

The Free Service will be available for one Sirius XM equipped vehicle owned or leased by the Class Member or his/her immediate family member. The Free Service will not be available for any vehicle that has a currently active paid subscription associated with it as determined by Sirius XM. Any Class Member who converts to a paid subscription between registration and shortly prior to the date on which cash will be distributed to Class Members who have filed online Claim Forms (and who is therefore no longer eligible to the Free Service) will be converted to the cash payment option instead. Any Class Member who converts to a paid subscription after the cash distribution date, but prior to the commencement of the Free Service, will have an opportunity to ask to receive the Free Service (i.e., three free months) in their subscription.

The Free Service will not carry any obligation to continue service with Sirius XM beyond the three (3) months and will be provided in addition to, and will not affect a Class Member's eligibility for, any future Sirius XM satellite radio service offer.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

You must take steps to get out of the Settlement if you do not want to receive its benefits.  This is called excluding yourself from or "opting out" of the Settlement Class.

| 12.  How do I get out of the Settlement? |
| --- |

To exclude yourself from the Settlement, you must send a letter or other written document by mail to:

Sirius XM Settlement Administrator
P.O. Box 4349
Portland, OR 97208-4349

Your request for exclusion must include the following:

- Your full name and address;

- The cellular telephone number on which you received the call associated with your request for exclusion;

- Your personal and original signature or the original signature of a person previously authorized by law, such as a trustee, guardian or person acting under a power of attorney, to act on your behalf; and

- A statement in plain English that you want to be excluded from the Settlement Class and/or you want to waive all rights to the benefits of the Settlement.

Your exclusion request must be postmarked no later than **November 25, 2016**.  You cannot ask to be excluded on the phone, by email, or at the website.

| 13.  If I do not exclude myself, can I sue Sirius XM for the same thing later? |
| --- |

No.  Unless you exclude yourself, you give up any right you might have to sue Sirius XM for legal claims that the Settlement resolves.   The Settlement Agreement (which you can find at www.SiriusXMTCPASettlement.com) explains the claims that you will be releasing.   You must exclude yourself as a Class Member in order to try to maintain your own lawsuit.  If you start your own lawsuit, you will have to hire your own lawyer, and you will have to prove your claims.

| 14.  What am I giving up to stay as a Class Member? |
| --- |

Unless you exclude yourself from the Settlement, you cannot sue or be part of any other lawsuit against Sirius XM about the issues in this case, including any existing litigation, arbitration, or proceeding.  Unless you exclude yourself, all of the decisions and judgments by the Court will bind you.  If you complete a Claim Form for benefits or do nothing at all, you will be releasing Sirius XM from all of the claims described and identified in Section 5 of the Settlement Agreement.

The Settlement Agreement is available at www.SiriusXMTCPASettlement.com.  The Settlement Agreement provides more detail regarding the release and describes the released claims with specific descriptions in necessary, accurate legal terminology, so read it carefully.  You can talk to the law

firms representing the Class listed below in Question 16 for free, or you can, at your own expense, talk to your own lawyer if you have any questions about the released claims or what they mean.

## 15.  If I exclude myself, can I still get a payment or register for the Free Service?

No.  You cannot file a Claim Form to participate in the cash distribution and therefore you will not get a payment from the Settlement Fund and you will not be able to register for the Free Service if you exclude yourself from the Settlement.

# THE LAWYERS REPRESENTING YOU

## 16.  Do I have a lawyer in the case?

The Court has appointed the following lawyers as "Class Counsel" to represent Class Members: Caddell & Chapman; The Consumer and Employee Rights Law Firm, P.C.; Kazerouni Law Group, APC; Hyde & Swigart; McGuire Law, P.C.; and McMorrow Law, P.C.

You will not be charged for these lawyers.  If you want to be represented by another lawyer, you may hire one to appear in Court for you at your own expense.

## 17.  How will the lawyers be paid?

Class Counsel will make an application to the Court for an award of attorneys' fees, costs and other expenses for their representation of the Class Representatives and Class Members, of up to thirty percent (30%) of the total value of the Settlement, after deduction of any class administration and notice costs and expenses.  The Court will decide the amount of fees and expenses to award.

Class Counsel also will request service awards of $10,000 for Francis W. Hooker, Jr. and $2,500 each for Eric Knutson, Yefim Elikman, and Anthony Parker as compensation for time and resources each has put into representing Class Members.

# OBJECTING TO THE SETTLEMENT

## 18.  How do I tell the Court if I do not like the Settlement?

If you are a Settlement Class Member (and do not exclude yourself), you can object to any part of the Settlement.  To object, you must submit a letter or other written document that includes the following:

- Your full name, current address, email address and telephone number, as well as the name, address, email address and telephone number of all attorneys representing you;

- The cellular telephone number that includes you as a Class Member;

- Your original signature or the signature of counsel for the Class Member;

- A statement that you object to the Settlement, in whole or in part;

- A statement of the legal and factual basis for your Objection;

- A list of all cases, by name and case number, in which you and/or your counsel has filed or in any way participated in—financially or otherwise—objections to a class action settlement in the previous five (5) years; and

- Copies of any documents that you wish to submit in support of your position.

You must mail or hand-deliver your objection to the Court so it is received by **November 7, 2016**. You must also mail your objection to Class Counsel and counsel for Sirius XM so that it is received no later than **November 7, 2016**.  The addresses are listed below.

| CLERK OF THE COURT | CLASS COUNSEL | DEFENDANT'S COUNSEL |
|---|---|---|
| Clerk of the Court<br>Walter E. Hoffman<br>United States Courthouse<br>600 Granby Street<br>Norfolk, VA 23510 | Michael A. Caddell<br>Caddell & Chapman<br>628 East 9th St.<br>Houston, TX  77007-1722<br><br>Counsel for the Class | Thomas Demitrack<br>Jones Day<br>901 Lakeside Ave.<br>Cleveland, OH 44114<br><br>Counsel for Sirius XM<br>Radio Inc. |

**Do not call the Court or Sirius XM's counsel if you have questions.  Visit the website or call Class Counsel.**

## 19.  What is the difference between objecting and asking to be excluded?

Objecting is simply telling the Court that you do not like something about the Settlement.  You can object to the Settlement only if you do not exclude yourself.  Excluding yourself is telling the Court that you do not want to be part of the Settlement.  If you exclude yourself, you have no basis to object to the Settlement because it no longer affects you.

# THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement and any requests for fees and expenses ("Fairness Hearing").

## 20.  When and where will the Court decide whether to approve the Settlement?

The Court has scheduled a Fairness Hearing on **December 20, 2016 at 10: 00a.m.**, at the United States District Court District for the Eastern District of Virginia, Walter E. Hoffman, United States Courthouse, 600 Granby Street, Norfolk, VA 23510.  The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.SiriusXMTCPASettlement.com for updates.  At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate.  The Court will also consider the requests by Class Counsel for attorneys' fees and expenses and for Service Awards to the Class Representatives.  If there are objections, the Court will consider them at that time.  After the hearing, the Court will decide whether to approve the Settlement.  It is unknown how long these decisions will take.

## 21.  Do I have to attend the hearing?

No.  Class Counsel will answer any questions the Court may have.  But you are welcome to attend the hearing at your own expense.  If you send an objection, you do not have to come to Court to talk about it.  As long as you submitted your written objection on time, to the proper addresses, and it complies with the other requirements set forth above, the Court will consider it.  You also may pay your own lawyer to attend the hearing, but it is not necessary.

## 22.  May I speak at the hearing?

You may ask the Court for permission to speak at the Final Approval Hearing.  The Court makes the decision on what will happen at the Final Approval Hearing.  Any Class member who wishes to appear at the Final Approval Hearing must mail or hand-deliver to the Clerk of the Court a "Notice of Intention to Appear," and file it in *Francis W. Hooker, Jr. v. Sirius XM Radio Inc.*, Case No. 4:13-cv-00003-AWA-LRL (E.D.Va.).  Use the addresses listed in Question 18 above.  The Notice of Intention to Appear must be received by the Court by **November 25, 2016**.  You must also mail or hand-deliver your Notice of Intention to Appear including exhibits, lists or other documents to Class Counsel and Sirius XM's counsel so they are received by **November 25, 2016**.

The Notice of Intention to Appear must include:

- Copies of any exhibits or other documents that the Class Member intends to present or use as evidence at the hearing;
- A list of all witnesses that the Class Member intends to call to give evidence at the hearing; and
- All other actions or any additional submissions as may be ordered by the Court.

If you wish to appear at the Final Approval Hearing you must also provide dates at least seven (7) days in advance of the Final Approval Hearing when you will be available for a deposition. Failure by an objector to make himself or herself available for a deposition may result in the Court striking the objection.  The Court may also tax the costs of any such discovery to the objector or the objector's counsel if the Court determines that the objection is frivolous or made for an improper purpose.

You cannot ask to speak at the hearing if you exclude yourself from the Settlement.

# IF YOU DO NOTHING

## 23.  What happens if I do nothing at all?

If you are a Class member and do nothing, you will not get benefits from the Settlement.  You must visit the website either to complete an online Claim Form (if you want to participate in the settlement fund) or to register for Free Service.  You will be bound by the judgment entered by the Court unless you exclude yourself using the procedure described above.  This means you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit or proceeding against Sirius XM about the claims at issue in this case or released by the Settlement Agreement.

## GETTING MORE INFORMATION

| 24.  How do I get more information? |
| --- |

This notice summarizes the proposed Settlement.  More details are in the Settlement Agreement.  For a complete, definitive statement of the Settlement terms, refer to the Settlement Agreement at www.SiriusXMTCPASettlement.com.   You may also write with questions to the Settlement Administrator at Sirius XM Settlement Administrator, P.O. Box 4349, Portland, OR 97208-4349, or call the toll-free number, 1-888-509-2570.

PLEASE DO NOT CONTACT THE COURT REGARDING THIS NOTICE

# Si usted compró o arrendó un vehículo nuevo o usado que incluía Sirius XM Radio sobre una base promocional y luego recibió una llamada a su teléfono móvil hecha en nombre de Sirius XM, pero nunca fue un suscriptor pago antes del 5 de julio de 2016, usted puede tener derecho a beneficios a partir de una conciliación de demanda colectiva.

*Un tribunal federal ordenó este aviso. Esta no es una solicitud de un abogado.*

- Se ha llegado a una Conciliación en un litigio de demanda colectiva en el que se acusa a Sirius XM Radio Inc. ("Sirius XM" o "Demandada") de haber violado la Ley de Protección al Consumidor Telefónico (Telephone Consumer Protection Act) de 1991, art. 227 y *siguientes*, cap. 47 del Código de los Estados Unidos (U.S.C.). ("TCPA" o "la Ley"), al autorizar llamadas telefónicas de ofertas comerciales hechas por o en nombre de Sirius XM a individuos que compraron o arrendaron un vehículo nuevo o usado que tenía una suscripción promocional a Sirius XM Radio que finalizó a más tardar el 5 de abril de 2016 y que nunca se convirtieron en suscriptores de pago antes del 5 de julio de 2016. Las llamadas presuntamente se hicieron a los números telefónicos de los Miembros del Grupo de demandantes usando un sistema de marcado telefónico automático. Las llamadas ocurrieron durante el periodo entre el 15 de febrero de 2008 y el 5 de julio de 2016. Sirius XM niega las acusaciones en el juicio y el Tribunal no ha resuelto quién tiene razón. La Conciliación otorga a Miembros del Grupo de demandantes tres meses de Servicio gratuito (conforme se define más adelante) o la opción de participar en un Fondo de conciliación con valor de $35 millones. Además, establece que Sirius XM realizará Cambios en las prácticas comerciales (conforme se define más adelante).

- Los Miembros del Grupo de demandantes que no se excluyan del Grupo de demandantes pueden recibir uno de dos beneficios. El beneficio predeterminado es de tres meses de acceso gratuito al servicio Select de Sirius XM (actualmente $15.99/mensual, más impuestos a las ventas correspondientes) (el "Servicio gratuito"). De forma alternativa, los Miembros del Grupo de demandantes que no deseen recibir el Servicio Gratuito pueden registrar una reclamación para un pago en efectivo prorrateado a partir de un Fondo de la Conciliación de $35 millones después del pago de honorarios de abogados, compensaciones por servicio, costos, gastos y administración de la conciliación. Si usted es miembro del Grupo de demandantes, debe ir al Sitio web de la Conciliación para registrar una reclamación y así recibir un pago en efectivo o para registrarse en el Servicio Gratuito. El sitio web se encuentra en www.SiriusXMTPCASettlement.com.

- Independientemente de que actúe o no, sus derechos legales se verán afectados. Lea esta notificación detenidamente.

| SUS DERECHOS LEGALES Y OPCIONES EN ESTA CONCILIACIÓN | |
|---|---|
| **REGISTRARSE** | Obtiene registro para tres meses del servicio Select gratuito de Sirius XM. |
| **REGISTRAR UN FORMULARIO DE RECLAMACIÓN** | **O** registra un Formulario de reclamación en el que solicite un pago en efectivo. |
| **EXCLUIRSE** | Solicita ser excluido y no obtener ningún beneficio de la Conciliación. Esta es la única opción que le permite iniciar o continuar su propio juicio contra |

**¿TIENE ALGUNA PREGUNTA?  LLAME AL 1-888-509-2570 O VISITE**
**www.SiriusXMTCPASettlement.com**
**Si desea recibir esta notificación en español, llámenos o visite nuestra página web.**

| | Sirius XM por las reclamaciones en cuestión en la Conciliación. |
|---|---|
| **OBJETAR** | Escribe al Tribunal por qué no le agrada la Conciliación. |
| **ASISTIR A UNA AUDIENCIA** | Solicita hablar en el Tribunal sobre la imparcialidad de la Conciliación. |
| **NO HACER NADA** | No recibe beneficios. Usted renuncia a los derechos que pudiera tener para iniciar acciones legales contra Sirius XM sobre las reclamaciones resueltas por la Conciliación. |

- Estos derechos y opciones, **y las fechas límite para ejercerlos**, se explican en este aviso.

- El Tribunal a cargo de este litigio aún tiene que decidir si va a aprobar la Conciliación. Si en efecto lo hace, y después de que se resuelva alguna apelación, se otorgarán beneficios a aquellos que diligencien un Formulario de reclamación que cumpla los debidos requisitos **o** se registren para el Servicio gratuito durante los periodos de tiempo explicados en esta notificación. Puede completar el Formulario de reclamación o registrarse en el Servicio gratuito si visita el sitio web www.SiriusXMTCPASettlement.com.

## QUÉ CONTIENE ESTE AVISO

**INFORMACIÓN BÁSICA** .................................................................................................... **PÁGINA 4**
    1. ¿Por qué existe un aviso?
    2. ¿De qué se trata este litigio?
    3. ¿Por qué es esta una demanda colectiva?
    4. ¿Por qué existe un Acuerdo?

**¿QUIÉN ES PARTE DEL ACUERDO?**..................................................................................... **PÁGINA 5**
    5. ¿Quiénes están incluidos en el Acuerdo?
    6. ¿Qué ocurre si no estoy seguro de ser parte del Acuerdo de conciliación?

**LOS BENEFICIOS DEL ACUERDO**........................................................................................ **PÁGINA 5**
    7. ¿Qué estipula el Acuerdo?
    8. ¿Cuánto será el pago en efectivo?
    9. ¿Cómo registro una reclamación de efectivo?
    10. ¿Cuándo recibiré mi pago?
    11. ¿Cómo elijo la opción de servicio gratuito?

**CÓMO EXCLUIRSE DEL ACUERDO** ..................................................................................... **PÁGINA 7**
    12. ¿Cómo me excluyo del Acuerdo?
    13. Si no me excluyo, ¿puedo entablar una demanda contra Sirius XM por los mismos motivos en el futuro?
    14. ¿A qué renuncio para mantenerme en el Grupo del Acuerdo?
    15. Si me excluyo, ¿aún puedo obtener un pago o elegir el Servicio gratuito?

**LOS ABOGADOS QUE LO REPRESENTAN**.......................................................................... **PÁGINA 8**
    16. ¿Tengo un abogado en esta causa?
    17. ¿Cómo se les pagará a los abogados?

**OBJECIONES AL ACUERDO** ............................................................................................... **PÁGINA 8**
    18. ¿Cómo le hago saber al Tribunal que no me agrada el Acuerdo?

**¿TIENE ALGUNA PREGUNTA?  LLAME AL 1-888-509-2570 O VISITE**
**www.SiriusXMTCPASettlement.com**

19. ¿Cuál es la diferencia entre objetar y excluirse?

**LA AUDIENCIA DE APROBACIÓN DEL TRIBUNAL**............................................................................ **PÁGINA 9**
20. ¿Cuándo y dónde decidirá el Tribunal si aprueba el Acuerdo?
21. ¿Debo asistir a la audiencia?
22. ¿Puedo intervenir en la audiencia?

**SI DECIDE NO HACER NADA**.............................................................................................................**PÁGINA 10**
23. ¿Qué sucede si no hago nada?

**CÓMO OBTENER MÁS INFORMACIÓN**..............................................................................................**PÁGINA 11**
24. ¿Cómo obtengo más información?

## Información básica

### 1. ¿Por qué existe un aviso?

Un Tribunal autorizó que se cursara esta notificación dado que usted tiene derecho a saber sobre la Conciliación propuesta en relación con este juicio de demanda colectiva conocida como *Francis W. Hooker, Jr. v. Sirius XM Radio Inc.*, caso n.º 4:13-cv-00003-AWA-LRL y sobre todas sus opciones, antes de que el Tribunal decida si concede la aprobación definitiva a la Conciliación. La conciliación también resuelve ciertas demandas similares, incluidas las demandas colectivas tituladas *Erik Knutson v. Sirius XM Radio Inc.*, n.º 12-cv-0418-AJB-DHB (S.D. Cal.), *Yefim Elikman v. Sirius XM Radio Inc.*, 11:15-cv-02093 (N.D Ill.), y *Anthony Parker v. Sirius XM Radio Inc.*, 8:15-cv-01710-JSM-EAJ (M.D. Fla.). Este aviso explica la demanda, la Conciliación y sus derechos legales.

La jueza Arenda L. Wright Allen del Tribunal del Distrito de los Estados Unidos para el Distrito Este de Virginia es quien supervisa este caso. A las personas que iniciaron el juicio se las denomina "Demandantes". Sirius XM Radio Inc. es la "Demandada".

### 2. ¿De qué se trata este litigio?

En la demanda se alega que Sirius XM violó la Ley de Protección del Consumidor Telefónico (Telephone Consumer Protection Act, TCPA) de 1991, Código de los Estados Unidos 47 (United States Code, U.S.C.) § 227, *y siguientes* ("TCPA" o "la Ley"), al presuntamente autorizar las llamadas telefónicas de ofertas comerciales hechas a números telefónicos celulares de Miembros del Grupo de demandantes mediante el uso de un sistema de marcado telefónico automático. Estas llamadas fueron realizadas por o en nombre de Sirius XM a individuos que habían comprado o arrendado un vehículo nuevo o usado que tenía una suscripción promocional a Sirius XM Radio que finalizó a más tardar el 5 de abril de 2016 y que nunca se convirtieron en suscriptores pagos antes del 5 de julio de 2016.

Sirius XM niega todas y cada una de las acusaciones en la demanda y no concede ni admite responsabilidad alguna, y en particular niega que los proveedores de telemarketing contratados por Sirius XM hayan usado algún sistema de marcado telefónico automático para llamar a teléfonos (o celulares o móviles) inalámbricos; Sirius XM ha afirmado varias otras defensas e igualmente niega que los Miembros del Grupo de demandantes hayan sufrido alguna lesión o daños y perjuicios.

La reclamación de los Demandantes, el Acuerdo de conciliación y otros documentos relacionados con el caso están publicados en la página web, www.SiriusXMTCPASettlement.com. La Conciliación resuelve el juicio. El Tribunal no ha decidido quién tiene la razón.

### 3. ¿Por qué es esta una demanda colectiva?

En una demanda colectiva, una o más personas denominadas "Representantes del grupo de demandantes" (en este caso, Francis W. Hooker, Jr., Eric Knutson, Yefim Elikman y Anthony Parker) demandan en nombre de sí mismos y otras personas con reclamaciones similares. Juntas, todas las personas con reclamaciones similares (excepto quienes se excluyan) son miembros del "Grupo del Acuerdo de la demanda colectiva".

### 4. ¿Por qué existe un Acuerdo?

El Tribunal no ha fallado a favor de los Demandantes ni de Sirius XM. En su lugar, ambas partes aceptaron llegar a una Conciliación. Al aceptar este Acuerdo, las partes evitan los costos y la incertidumbre de un juicio y, si el Tribunal aprueba el Acuerdo, los miembros del Grupo del Acuerdo de la demanda colectiva recibirán los beneficios descritos en este aviso. La Conciliación propuesta no implica que se haya violado alguna ley ni que Sirius XM haya hecho algo incorrecto. Sirius XM niega todas las demandas legales en este caso. Los

Representantes del Grupo de demandantes y sus abogados consideran que la Conciliación es lo mejor para todas las personas afectadas. Sirius XM considera que tiene sentido celebrar esta Conciliación para evitar mayores gastos y cargas legales y resolver esta controversia.

# ¿QUIÉN ES PARTE DEL ACUERDO?

## 5. ¿Quiénes están incluidos en el Acuerdo?

La Conciliación incluye a todas las personas naturales residentes en los Estados Unidos (incluidos todos los territorios y otras subdivisiones políticas de los Estados Unidos) que (a) hayan recibido, en relación con la compra o arrendamiento de un vehículo nuevo o usado, programación sobre una base promocional de Sirius XM que finalizó a más tardar el 5 de abril de 2016; (b) fueron los destinatarios de una o más llamadas telefónicas hechas por o en nombre de Sirius XM a su número de teléfono inalámbrico, celular o móvil después del 15 de febrero de 2008, y antes del 5 de julio de 2016; y (c) nunca fueron ni se transformaron en suscriptores pagos antes del 5 de julio de 2016.

Quedan excluidos del Grupo de demandantes cualquier empleado, ejecutivo o director de Sirius XM, y cualquier abogado que comparezca en este caso, así como también cualquier juez asignado para asumir este caso así como su familia inmediata y personal.

## 6. ¿Qué ocurre si no estoy seguro de ser parte del Acuerdo de conciliación?

Si no está seguro de ser parte del Grupo de la Conciliación o si tiene alguna pregunta al respecto, visite el sitio web de la Conciliación en www.SiriusXMTCPASettlement.com o llame al número gratuito 1-888-509-2570. También puede enviar preguntas al Administrador de la Conciliación a la dirección Sirius XM Settlement Administrator, P.O. Box 4349, Portland, OR 97208-4349. No llame al Tribunal ni a Sirius XM ni a sus abogados.

# LOS BENEFICIOS DEL ACUERDO

## 7. ¿Qué estipula el Acuerdo?

Sirius XM ofrecerá tres (3) meses de acceso gratuito al servicio Select de Sirius XM (o cualquier servicio de radio satelital nombrado posteriormente que contenga sustancialmente la misma programación del servicio Select) (el "Servicio gratuito") a cada uno de los Miembros del Grupo de demandantes que no opten por recibir un pago en efectivo del Fondo de la Conciliación y que cumplan con los requisitos del Acuerdo de conciliación para recibir el Servicio gratuito.

Sirius XM también pagará $35,000,000 al Fondo de la conciliación. Los pagos en efectivo a miembros del Grupo de la Conciliación, costos de notificación y administrativos, compensaciones por servicios y honorarios, costos y otros gastos de abogados se pagarán a partir del Fondo de la Conciliación. Los Miembros del Grupo de demandantes deben entablar una reclamación para recibir un pago en efectivo.

**Los Miembros del Grupo de demandantes solo pueden recibir una de las dos opciones (el Servicio gratuito o un pago en efectivo).** Adicionalmente, cada Miembro del Grupo de demandantes solo puede recibir un beneficio independientemente de la cantidad de vehículos cuyo título esté a su nombre o la cantidad de llamadas que haya podido recibir en sus teléfonos inalámbricos, celulares o móviles durante el periodo cubierto por la definición del Grupo de la Conciliación.

Adicionalmente, Sirius XM ha aceptado celebrar acuerdos con sus proveedores de telemarketing a fin de exigir a aquellos proveedores que al momento de hacer llamadas a teléfonos celulares en su nombre utilicen sistemas de marcado telefónico que usen intervención humana para iniciar llamadas y que sean independientes de

cualquier sistema de marcado telefónico automático, incluidos los sistemas de marcado predictivo, usados para llamar a teléfonos fijos.

## 8. Para cualquier miembro del Grupo de demandantes que decida recibir el efectivo, ¿cuánto será el pago en efectivo para ese miembro del Grupo de demandantes?

En este momento no es posible determinar la cantidad exacta de pago en efectivo de cada individuo y dicho monto dependerá de la cantidad de reclamaciones válidas registradas. Las partes estiman que existen aproximadamente 12.3 millones de Miembros del Grupo de demandantes. Con base en los costos estimados de la notificación de conciliación a miembros del grupo de demandantes, los costos de la administración de la conciliación, y el posible otorgamiento de honorarios y costos de abogados, se estima que se reservarán como mínimo $10 millones para pago de los beneficios en efectivo a Miembros del Grupo de demandantes que reclaman ese beneficio. Según las tasas de reclamaciones en conciliaciones similares, las partes prevén que el pago en efectivo realizado a reclamantes de efectivo individuales estará en el rango de $5-$15, aunque esta es solo una estimación y el valor real podría ser superior o inferior a ese rango.

## 9. ¿Cómo registro una reclamación de efectivo?

Para poder recibir un pago en efectivo, debe visitar el sitio web de la Conciliación y enviar un Formulario de reclamación válido.

Los Formularios de reclamación deben ser presentados en línea a más tardar en la media noche hora del pacífico del **26 de noviembre de 2016**.

Sírvase leer las instrucciones en el sitio web de forma cuidadosa, seguir todas las instrucciones y brindar toda la información requerida.

## 10. ¿Cuándo recibiré mi pago?

Los pagos a los Miembros del Grupo de demandantes que presenten reclamaciones elegibles se efectuarán únicamente después de que el Tribunal otorgue la "aprobación final" a la Conciliación y después de que todas las apelaciones sean resueltas (*ver* "La Audiencia de imparcialidad del Tribunal" más adelante). Si hay apelaciones, resolverlas puede llevar tiempo. Tenga paciencia.

## 11. ¿Cómo me registro para el Servicio gratuito?

Solo los Miembros del Grupo de demandantes que **no** registren una reclamación para pago en efectivo tendrán la opción de recibir el Servicio gratuito. Los Miembros del Grupo de demandantes no necesitan hacer nada en este momento para poder recibir tres meses de acceso gratuito al servicio Select de Sirius XM. Todos los Miembros del Grupo de demandantes que no hayan completado un Formulario de reclamación para recibir efectivo antes de la fecha límite de registro serán contactados por el Administrador de la Conciliación después de que se otorgue carácter definitivo a la Conciliación. En ese momento, los Miembros del Grupo de demandantes serán dirigidos a www.SiriusXMTCPASettlement.com para que puedan registrarse y recibir el Servicio gratuito. Si usted está seguro de que desea registrarse para el Servicio gratuito ahora, puede visitar la página web en cualquier momento y registrarse para el mismo (pero este solo se activará después de que la Conciliación sea declarada como definitiva).

El Servicio gratuito estará disponible para un vehículo equipado con Sirius XM que sea propiedad o haya sido arrendado por el Miembro del Grupo de demandantes o miembro familiar inmediato. El Servicio gratuito no estará disponible para ningún vehículo que tenga una suscripción paga actualmente activa asociada con el mismo según lo haya determinado Sirius XM. Cualquier Miembro del Grupo de demandantes que adquiera una suscripción paga entre el registro y poco tiempo antes de la fecha en que se distribuirá efectivo a

Miembros del Grupo de demandantes que hayan registrado Formularios de reclamación en línea (y que por lo tanto no cumple los debidos requisitos para obtener al Servicio gratuito) será transferido a la opción de pago en efectivo. Todo Miembro del Grupo de demandantes que adquiera una suscripción paga después de la fecha de distribución de efectivo, pero antes del inicio del Servicio gratuito, tendrá una oportunidad de pedir la entrega del Servicio gratuito (es decir, tres meses gratuitos) en su suscripción.

El Servicio gratuito no conllevará ninguna obligación de continuar el servicio con Sirius XM después de los tres (3) meses de acceso gratuito y será suministrado de forma adicional a cualquier oferta futura de servicio de radio satelital de Sirius XM, y no afectarán la elegibilidad del Miembro del Grupo de demandantes para obtenerla.

## CÓMO EXCLUIRSE DEL ACUERDO

Si no desea recibir los beneficios de la Conciliación, debe tomar medidas para excluirse de la misma. Esto se conoce como excluirse u optar por no formar parte del Grupo de la conciliación.

### 12.  ¿Cómo me excluyo del Acuerdo?

Para excluirse de la Conciliación, debe enviar una carta u otro documento escrito por correo a:

Sirius XM Settlement Administrator
P.O. Box 4349
Portland, OR 97208-4349

Su solicitud de exclusión debe incluir lo siguiente:

- su nombre completo y dirección;

- el número de teléfono celular en el que recibió la llamada asociada con su solicitud de exclusión;

- su firma personal y original o la firma original de una persona previamente autorizada por ley, como un fideicomisario, tutor o persona que actúa bajo un poder de representación, a fin de actuar en nombre y representación de usted;

- una declaración clara y concisa en inglés en la que indique que usted desea ser excluido del Acuerdo de conciliación o que usted renuncia a todos los derechos a recibir los beneficios de la Conciliación.

Su solicitud de exclusión debe tener sello postal fechado a más tardar el **25 de noviembre de 2016**. No puede excluirse por teléfono, correo electrónico ni en el sitio web.

### 13.  Si no me excluyo, ¿puedo entablar una demanda contra Sirius XM por los mismos motivos en el futuro?

No. A menos que se excluya, usted renuncia a todo derecho que pudiera tener para iniciar un juicio contra Sirius XM por las reclamaciones legales que resuelve la Conciliación. El Acuerdo de conciliación (que usted puede encontrar en www.SiriusXMTCPASettlement.com) explica las reclamaciones que usted está exonerando. Usted debe haberse excluido del Grupo de demandantes con el fin de tratar de continuar su propio litigio. Si usted inicia su propio juicio, deberá contratar a su propio abogado y deberá probar sus reclamaciones.

### 14.  ¿A qué renuncio para mantenerme como Miembro del Grupo de demandantes?

A menos que se excluya de la Conciliación, usted no podrá demandar ni ser parte de ninguna otra acción judicial contra Sirius XM con respecto a los asuntos en este caso, incluido todo litigio, arbitraje o procedimiento existente. A menos que se excluya, todas las decisiones y sentencias del Tribunal serán vinculantes para usted. Si completa un Formulario de reclamación para beneficios o no realiza ninguna acción,

**¿TIENE ALGUNA PREGUNTA?  LLAME AL 1-888-509-2570 O VISITE**
**www.SiriusXMTCPASettlement.com**

usted eximirá a Sirius XM de todas las reclamaciones descritas e identificadas en la sección 5 del Acuerdo de conciliación.

El Acuerdo conciliatorio se encuentra disponible en www.SiriusXMTCPASettlement.com. El Acuerdo conciliatorio brinda más detalles sobre la exoneración y describe las demandas que quedarán sin efecto con detalles específicos, usando terminología legal exacta y necesaria; por lo tanto, léalo detenidamente. Si tiene preguntas sobre las reclamaciones exentas o lo que estas significan, puede hablar sin costo alguno con las firmas de abogados que representan al Grupo de demandantes, indicadas en la pregunta 16, o bien puede hablar con su propio abogado a su cargo.

## 15.  Si me excluyo, ¿aún puedo obtener un pago o registrarme para el Servicio gratuito?

No. Usted no puede registrar un Formulario de reclamación para participar en la distribución de efectivo y por lo tanto usted no recibirá un pago del Fondo de la Conciliación y usted no podrá registrarse para el Servicio gratuito si se excluye de la Conciliación.

# LOS ABOGADOS QUE LO REPRESENTAN

## 16.  ¿Tengo un abogado en esta causa?

El Tribunal designó a los siguientes abogados como "Abogados del Grupo de demandantes" para representar a los Miembros del Grupo de demandantes: Caddell & Chapman; The Consumer and Employee Rights Law Firm, P.C.; Kazerouni Law Group, APC; Hyde & Swigart; McGuire Law, P.C.; y McMorrow Law, P.C.

No se le cobrará por los servicios de estos abogados. Si quiere que lo represente otro abogado puede contratar, por su propia cuenta, a uno que comparezca ante el Tribunal.

## 17.  ¿Cómo se les pagará a los abogados?

Los Abogados del Grupo de demandantes harán una solicitud al Tribunal para obtener una compensación de honorarios, costos y otros gastos de abogados para su representación de los Representantes del Grupo de demandantes y los miembros del Grupo de demandantes, de máximo un treinta por ciento (30%) del valor total de la Conciliación, después de la deducción de cualquier costo y gasto de administración y notificación. El Tribunal determinará la cantidad de honorarios y gastos a conceder.

Los Abogados del Grupo de demandantes también solicitarán compensaciones por servicios de $10,000 para Francis W. Hooker, Jr. y $2,500 para Eric Knutson, Yefim Elikman y Anthony Parker cada uno, por concepto de compensación por tiempo y recursos que han dedicado para representar de los Miembros del Grupo de demandantes.

# CÓMO OBJETAR EL ACUERDO

## 18.  ¿Cómo le hago saber al Tribunal que no me agrada el Acuerdo?

Si es un Miembro del Grupo de la Conciliación (y no se excluye), puede objetar cualquier parte de la Conciliación. Para objetar, debe enviar una carta u otro documento escrito que contenga lo siguiente:

- su nombre completo, dirección actual, dirección de correo electrónico y número telefónico, así como el nombre, dirección física, dirección de correo electrónico y número telefónico de todos los abogados que lo representan a usted;

- el número de teléfono celular que lo incluya a usted como Miembro del Grupo de demandantes;

- su firma original o la firma del abogado que representa al Miembro del Grupo de demandantes;

- una declaración en la que usted objete la Conciliación, total o parcialmente;

- una exposición detallada de los fundamentos en los hechos y el derecho que sustentan su Objeción;

- UNA lista de todos los casos, por nombre y número de caso, en el que usted o su abogado haya registrado o participado en objeciones (de forma financiera o de otra forma) a una conciliación de demanda colectiva en los cinco (5) años anteriores;

- Copias de cualquier documento que desee presentar en respaldo de su postura.

Usted debe enviar por correo o entregar en mano propia su objeción al Tribunal de forma que sea recibida a más tardar el **7 de noviembre de 2016**. Igualmente, debe enviar por correo su objeción a los Abogados del Grupo de demandantes y los abogados de Sirius XM de forma que llegue al destinatario a más tardar el **7 de noviembre de 2016**. A continuación se indican las direcciones.

| SECRETARIO DEL TRIBUNAL | ABOGADOS DEL GRUPO DE DEMANDANTES | ABOGADOS DE LA DEMANDADA |
|---|---|---|
| Secretario del Tribunal<br>Walter E. Hoffman<br>United States Courthouse<br>600 Granby Street<br>Norfolk, VA 23510 | Michael A. Caddell<br>Caddell & Chapman<br>628 East 9th St.<br>Houston, TX 77007-1722<br><br>Abogados del Grupo de demandantes | Thomas Demitrack<br>Jones Day<br>901 Lakeside Ave.<br>Cleveland, OH 44114<br><br>Abogados de Sirius XM Radio Inc. |

**No llame al Tribunal o a los abogados de Sirius XM si tiene alguna pregunta. Visite el sitio web o llame a los Abogados del Grupo de demandantes.**

## 19.  ¿Cuál es la diferencia entre objetar y excluirse?

Objetar es simplemente decirle al Tribunal que no le gusta algo sobre la Conciliación. Puede objetar la Conciliación solamente si no se excluye de esta. Excluirse es decirle al Tribunal que no quiere ser parte de la Conciliación. Si usted se excluye, no tiene fundamentos para objetar esta Conciliación porque esta ya no lo afecta.

### AUDIENCIA DE IMPARCIALIDAD DEL TRIBUNAL

El Tribunal celebrará una audiencia para decidir si aprueba el Acuerdo y las solicitudes de honorarios y gastos ("Audiencia de imparcialidad").

## 20.  ¿Cuándo y dónde decidirá el Tribunal si aprueba el Acuerdo?

El Tribunal ha programado una Audiencia de imparcialidad el **20 de diciembre de 2016 a la 10: 00 a.m.**, en el Tribunal de Distrito de los Estados Unidos para el Distrito Este de Virginia, Walter E. Hoffman, United States Courthouse, 600 Granby Street, Norfolk, VA 23510. La audiencia se podrá cambiar para otra fecha u hora sin notificación previa; por lo tanto, es buena idea verificar en www.SiriusXMTCPASettlement.com si hay actualizaciones. En esta audiencia, el Tribunal considerará si la Conciliación es justa, razonable y adecuada. Además, el Tribunal considerará las solicitudes de los Abogados del Grupo de demandantes acerca de los honorarios y gastos de los abogados y las Compensaciones por Servicios para los Representantes del Grupo de demandantes. Si hay objeciones, el Tribunal las examinará en ese momento. Después de la audiencia, el Tribunal decidirá si aprueba o no la Conciliación. No se sabe cuánto tiempo tomarán estas decisiones.

## 21.   ¿Debo asistir a la audiencia?

No. Los Abogados del Grupo de demandantes responderán todas las preguntas que el Tribunal pueda tener. Pero si lo desea puede asistir por su propia cuenta. Si envía una objeción, no es necesario que asista al Tribunal para hablar al respecto. Siempre que haya presentado su objeción por escrito a tiempo, al domicilio correcto y que cumpla con los demás requisitos que se describen más arriba, el Tribunal la considerará. También puede pagar su propio abogado para que asista a la audiencia, pero no es necesario.

## 22.   ¿Puedo intervenir en la audiencia?

Usted podrá solicitar permiso al Tribunal para hablar en la Audiencia de aprobación definitiva. El Tribunal toma la decisión sobre lo que sucederá en la Audiencia de aprobación definitiva. Todo miembro del Grupo de demandantes que desee comparecer en la Audiencia de aprobación definitiva debe enviar por correo o entregar en mano propia al Secretario del Tribunal una "Notificación de intención de comparecer" y registrarla en *Francis W. Hooker, Jr. v. Sirius XM Radio Inc.*, caso n.º 4:13-cv-00003-AWA-LRL (E.D.Va.). Utilice las direcciones que se indican en la pregunta 18. La Notificación de intención de comparecer debe ser recibida por el Tribunal a más tardar el **25 de noviembre de 2016.** Usted también debe enviar por correo o entregar en mano propia su Notificación de intención de comparecer incluidos los anexos, listas u otros documentos a los Abogados del Grupo de demandantes y los abogados de Sirius XM de forma que sean recibidos a más tardar el **25 de noviembre de 2016**.

La Notificación de intención de comparecer debe incluir:

- copias de cualquier anexo u otro documento que el Miembro del Grupo de demandantes tenga la intención de presentar o usar como prueba en la audiencia;
- una lista de todos los testigos que el Miembro del Grupo de demandantes tiene la intención de llamar para presentar pruebas en la audiencia;
- todas las otras medidas o cualquier presentación adicional que puedan ser ordenadas por el Tribunal.

Si usted desea comparecer en la Audiencia de aprobación definitiva, también debe indicar las fechas en que estará disponible para un testimonio con mínimo siete (7) días de antelación a la Audiencia de aprobación definitiva. El hecho de que un objetor no se ponga a disposición para un testimonio puede tener como consecuencia que el Tribunal anule la objeción. El Tribunal también puede tasar los costos de cualquiera de dichas presentaciones de pruebas al objetor o a los abogados del objetor si el Tribunal determina que la objeción es infundada o presentada para un propósito inadecuado.

No puede hablar en la audiencia si se ha excluido de la Conciliación.

### SI DECIDE NO HACER NADA

## 23.   ¿Qué sucede si no hago nada?

Si es un Miembro del Grupo de demandantes y no hace nada, no obtendrá ningún beneficio de esta Conciliación. Usted debe visitar el sitio web para completar un Formulario de reclamación en línea (si desea participar en el fondo de la conciliación) o registrarse para Servicio gratuito. A menos que se excluya usando el procedimiento arriba descrito, estará obligado por la sentencia dictada por el Tribunal. Esto significa que no podrá iniciar una acción legal, seguir adelante con una acción legal ni ser parte de cualquier otra acción legal o proceso contra Sirius XM respecto de las reclamaciones que son objeto de este caso o que son exoneradas por el Acuerdo de conciliación.

## CÓMO OBTENER MÁS INFORMACIÓN

**24.  ¿Cómo obtengo más información?**

Este aviso resume el Acuerdo de conciliación propuesto. Encontrará más detalles en el Acuerdo de conciliación. Para una declaración completa y definitiva de los términos de la Conciliación, consulte el Acuerdo de conciliación en www.SiriusXMTCPASettlement.com. También puede escribir para formular sus preguntas al Administrador de la Conciliación a Sirius XM Settlement Administrator, P.O. Box 4349, Portland, OR 97208-4349, o llamar al número gratuito, 1-888-509-2570.

NO SE COMUNIQUE CON EL TRIBUNAL EN RELACIÓN CON ESTE AVISO.