UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

FRANCIS W. HOOKER, JR., *for himself and*
*on behalf of all similarly situated individuals,*

        Plaintiffs,

    v.                                   Civil No. 4:13-cv-003

SIRIUS XM RADIO, INC.,

        Defendant.

## ORDER

Currently pending before the Court is Class Counsel's Motion for Final Approval and Attorneys' Fees in the instant class action lawsuit against Sirius XM. ECF No. 194. On December 22, 2016, the Court entered an Order approving the proposed settlement terms, certifying the settlement class, and approving service awards to class representatives. ECF No. 209. At that time, the Court reserved judgment on Class Counsel's proposed award of attorneys' fees in this case. *See id.* For the reasons outlined below, the Court awards Plaintiffs' counsel $12.25 million for attorneys' fees and $191,330.88 for expenses.

## I.    BACKGROUND

Named Plaintiff Francis W. Hooker filed the instant suit against Sirius XM on January 4, 2013, claiming that Sirius XM violated the Telephone Consumer Protection Act ("TCPA") by using autodialers to call class members' cellphones without the required consent. *See* ECF No. 1. The calls were precipitated by the purchase or lease of a vehicle with three months' free Sirius XM radio service. *See id.* The class consists of individuals who "received programming on a promotional basis from Sirius XM in connection with the purchase or lease of a new or used

vehicle," received a call to a wireless telephone, and did not become a paying subscriber to Sirius XM. ECF No. 195-2 at 6 (Settlement Agreement).

In May 2015, counsel in this case began cooperating with counsel in three substantially similar cases: *Knutson v. Sirius XM Radio Inc.*, No. 12-cv-0418 (S.D. Cal.); *Elikman v. Sirius XM Radio Inc.*, No. 12-cv-2093 (N.D. Ill.); and *Parker v. Sirius XM Radio Inc.*, No. 8:15-cv-01710 (M.D. Fla.). As a result of that cooperation, the parties reached the Settlement Agreement on April 5, 2016, resolving the *Knutson, Elikman,* and *Parker* cases as well as the instant suit. In the Settlement Agreement, Defendants agree to pay $35 million into the Settlement Fund for the Class and to offer three months of free Sirius XM radio service to all class members who forgo the cash settlement. That offer is assigned a retail value of $62.97 per class member. Class Counsel estimates that 250,000 class members will submit cash claims and that approximately 11.4 million class members will be offered the subscription option. ECF No. 195-22, ¶ 42 (Declaration of Geoffrey P. Miller, Plaintiffs' Attorneys' Fees Expert). Sirius XM also agrees to ensure that its telephone systems comply with the TCPA going forward. *See* ECF No. 195-2 at 7–8.

Deducted from the $35 million cash fund will be attorneys' fees and litigation costs, Named Plaintiffs' service awards, and all notice and settlement administration expenses. In fees and litigation costs, Class Counsel seek $19.8 million and $191,330.88 respectively. In addition, Named Plaintiffs' service awards total $17,500. Over $4 million are earmarked for notice and administration expenses. These deductions would leave the class with a cash fund of approximately $10.8 million. After an initial round of distributing the $10.8 million, any

uncashed settlement checks or other monies[1] will be distributed to claimants who cashed their settlement checks. After two rounds of redistributing the remaining funds, any additional remaining funds would be distributed as a *cy pres* award for purposes consistent with the objectives of this litigation.

On December 20, 2016, the Court held a fairness hearing pursuant to Federal Rule of Civil Procedure 23(e)(2) to review the proposed Settlement Agreement and determine its adequacy, fairness, and reasonableness and to review the attorneys' fee request. After the hearing, the Court approved the Settlement Agreement but reserved judgment on Class Counsel's request for attorneys' fees. *See* EFC Nos. 209, 210. The Court ordered Class Counsel to file supplemental briefing further clarifying and justifying their fee request. *See* ECF No. 210 at 1–2 (Supplemental Briefing Order). Having received Class Counsel's response to its inquires,[2] Plaintiffs' Motion for Attorneys' Fees is now ripe for resolution.

## II.   LEGAL STANDARD

Federal courts derive their substantive authority over class action attorneys' fees from their historic equity power, and Federal Rule of Civil Procedure 23(h) governs fee-award procedures. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also In re Volkswagen & Audi Warranty Extension Litig.*, 692 F.3d 4, 15 (1st Cir. 2012). In class actions, "[t]he courts are vested with broad discretion in determining the amount of the attorney fees to be allowed and the general standard is one of 'reasonableness' in terms of the circumstances of each case." 7B

---

[1] Class Counsel represents that 227,954 cash claims have been filed, but notes that some of these claims may be denied during the validation process. *See* ECF No. 205, at 3 (Joint Supplemental Memorandum).

[2] The Court notes that Class Counsel's filing exceeded the page limit and digressed from the assigned subject matter. The Order for supplemental briefing instructed Class Counsel to address three specific issues and limited the filing to fifteen pages. ECF No. 210 at 3. Instead, Class Counsel submitted seventeen substantive pages, three of which justify Class Counsel's hourly rates—a topic for which the Court had not sought further justification. *See* ECF No. 211 at 13–15, 15–17.

CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1803.1 (3d ed.). "As a general matter, a party requesting attorneys' fees bears the burden of demonstrating the reasonableness of what it seeks to recover." *Khair v. Countrywide Home Loans, Inc.*, No.1-10-cv-410, 2011 WL 1304916, at *1 (E.D. Va. Apr. 1, 2011); *see also Hensley v. Eckhart*, 461 U.S. 424, 436 (1983). Class members may also object to counsel's fee request. *See* Fed. R. Civ. P. 23(h)(2); *see also Torrisis v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993).

In class action settlements, courts calculate reasonable attorneys' fees using either the percentage-of-the-fund method or the "lodestar" method. Under the percentage-of-the-fund method, courts base attorneys' fee awards on a percentage of the common recovery's value, usually between 25 percent and 30 percent. *See In re Microstrategy, Inc., Sec. Litig.*, 172 F. Supp. 2d at 778–89 (E.D. Va. 2001); *see also Kay Co. v. Equitable Prod. Co.*, 749 F. Supp. 2d 455, 466–67 (S.D.W. Va. 2010); FED. JUDICIAL CTR., MANUAL FOR COMPLEX LITIGATION § 14.121 (4th ed.).

Alternatively, the lodestar method involves multiplying the number of hours expended on representation by a reasonable hourly fee, MANUAL FOR COMPLEX LITIGATION § 14.121, which may be adjusted upward (using a "lodestar multiplier") when warranted. *In re Microstrategy*, 172 F. Supp. 2d at 786. The United States Court of Appeals for the Fourth Circuit has not identified a preferred method. *See In re the Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 260 (E.D. Va. 2009). Recently, courts have favored utilizing a percentage-of-the-fund method in common fund cases, and using the lodestar method as a cross check for reasonableness. *Kay Co.*, 749 F. Supp. 2d at 463.

## III. ANALYSIS

The issue of what constitutes reasonable compensation for Class Counsel's efforts to benefit the class is now before the Court. Class Counsel argue that the settlement's value is appropriately determined by adding the monetary cash fund's value and the aggregate retail price or "face value" of the free radio credits. Given this astronomical figure—over $700 million— Class Counsel argue that their $19.8 million request for fees is modest and reasonable. The Court is unpersuaded. At the fee determination stage, "the district judge must protect the class's interest by acting as a fiduciary for the class." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 307 (3d Cir. 2005). Cognizant of this duty, the Court finds that Class Counsel's inflated and illusory valuation fails to reflect the benefit to class members and finds Class Counsel's request for $19.8 million in attorneys' fees to be unreasonable.

### A. Class Counsel's Proposed Valuation of the Settlement's Benefit to the Class

The Court accepts Class Counsel's representation regarding the price of three months' radio service. However, their calculation of the overall value that the radio benefit confers on the class is troubling. An attorneys' fees award should "[c]ompensat[e] counsel for the actual benefits conferred on the class members." MANUAL FOR COMPLEX LITIGATION § 21.71. When awarding attorneys' fees, courts consider the value of all benefits to the class—claimed and unclaimed, monetary and nonmonetary. *See Vizcain v. Microsoft Corp.*, 209 F. 3d 1043, 1049 (9th Cir. 2002); *see also Gascho v. Global Fitness Holdings*, 822 F.3d 269, 282–88 (6th Cir. 2016). However, "[t]he court should refuse to allow attorneys to receive fees based on an inflated or arbitrary evaluation of the benefits to be delivered to class members." MANUAL FOR COMPLEX LITIGATION § 21.71; *see also Strong v. BellSouth Telecoms., Inc.*, 137 F.3d 844, 851–53 (5th Cir. 1998).

Class Counsel argue that based on their proposed total settlement valuation of $750 million, a $19.8 million fee request is a modest percentage of the settlement's value and that a "lodestar" cross check confirms the reasonableness of their requested fee. To reach their $750 million settlement valuation, Class Counsel contend that the non-monetary benefits' value to class members should be the product of multiplying the benefit's retail price by the total number of potential claimants. *See* ECF No. 195. Applying that formula, Class Counsel assign a per-class-member value of $62.97 to the three months' free Sirius XM radio service and attribute that "value" to each class member who did not file a cash claim (over 11 million). *See* ECF No. 195-22, ¶ 42 (Miller Decl.). This produces Class Counsel's eyebrow-raising radio-service-benefit value of $715 million, to which they add the $35 million cash fund value, to reach a suggested settlement value of approximately $750 million.[3]

### 1.    Class Counsel's Proposed Valuation Is Unsupported by Precedent

As noted in the Supplemental Briefing Order, the authorities cited initially by Class Counsel to support its proposed award "offer[ed] little guidance regarding how to calculate the value of a settlement that is largely based upon unclaimed, non-monetary benefits, such as the free radio service in this case." ECF No. 210 at 1–2. Given another chance to provide authority supporting their requested fee, Class Counsel cites cases suggesting that district courts should consider all components of a settlement's value in awarding percentage-of-the-fund attorneys' fees. *See* ECF No. 211 at 4–11. These cases fail to support their proposed settlement valuation.

Class Counsel's Supplemental Brief first contends that "[c]ourts . . . around the country have consistently recognized that . . . Supreme Court [precedent] requires awarding fees based on the total potential value of the common fund, without regard to how many class members

---

[3] The Court notes that Class Counsel's exact proposed valuation was difficult to ascertain because various briefings suggested different ranges of value. Counsel's briefings also suggested different class sizes, often without explanation.

ultimately choose to claim their benefit." *Id.* at 5.  In support, the Supplemental Brief relies on cases concerning the value of cash settlement funds where any unclaimed monies would revert to the defendant.  *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472, 480–81 (1980); *Gascho v. Glob. Fitness Holdings*, 822 F.3d 269, 273–76 (6th Cir. 2016); *Masters v. Wilhelmina Model Agency*, 473 F.3d 423, 435 (2d Cir. 2007); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295 (11th Cir. 1999); *Williams v. MGM-Paths Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997); *Saccoccio v. JP Morgan Chase Bank*, 297 F.R.D. 683, 689–90, 695–96 (S.D. Fla. 2014). These authorities—although informative regarding settlement valuation generally—are of limited help.  The issue before the Court is valuing potentially unclaimed free radio service offers, not potentially unclaimed money.[4]

Class Counsel's Supplemental Brief next asserts that "[t]he Supreme Court has also established that counsel are 'entitled' to fees for securing non-monetary as well as monetary benefits."  ECF No. 211 at 6.  In support, the Brief relies on two types of cases.  First, the Supplemental Brief cites cases holding that counsel is entitled to compensation for efforts to obtain a benefit for the class, even in absence of monetary recovery on their behalf.  *See, e.g., Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 389–92 (1970); *Merola v. Atl. Richfield Co.*, 515 F.2d 165, 172 (3d Cir. 1975); *Clark v. Experian*, No. 00-cv-1217, 2004 U.S. Dist. LEXIS 32063, at *63–*70 (D.S.C. Apr. 22, 2004).  The remainder of decisions holds that district courts *can* consider the value of of non-monetary benefits secured for the class—including injunctive relief and *cy pres* awards—when valuing an attorneys' services and awarding fees.  *See, e.g., Poertner*

---

[4] The Court also notes that in *Boeing*, the Supreme Court did "not decide whether a class-action judgment that simply requires the defendant to give security against all potential claims would support a recovery of attorney's fees under the common-fund doctrine." *Boeing*, 444 U.S. at 481 n.5; *see also Int'l Precious Metals Corp. v. Waters*, 530 U.S. 1233, 1233 (2000) (O'Connor, J., statement on denial of cert.). That is the case here, where the defendant need not make a radio credit fund or put the credits in escrow, but merely honor legitimate claims upon request.

*v. Gillette Co.*, 618 F. App'x 624, 628 (11th Cir. 2015); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999); *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991). None of these cases establishes that the Court must, should, or may calculate the radio service's benefit to the class at 100 percent of its retail value.

The nonmonetary-benefit cases cited by Class Counsel do establish, however, that "the amount of any fee must be determined upon the facts of each case [because] individualization in the exercise of a discretionary power [for fee awards] will alone retain equity as a living system and save it from sterility." *Camden I Condo. Ass'n*, 946 F.2d at 774 (second alteration in original) (quoting *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 167 (1939)). This requires courts to scrutinize the value of nonmonetary settlement provisions to determine their true benefit to the class. *See id.*; *accord Gillette*, 618 F. App'x at 628; *Petrovic*, 200 F.3d at 1157.

A number of federal cases employ this approach to valuing non-monetary benefits in class action settlements. The Fifth Circuit upheld a district court's one-quarter reduction of an attorneys' fee request where the bulk of the settlement's value came in the form of phone bill credits, into which class members could opt. *Strong v. BellSouth Telecoms., Inc.*, 137 F.3d 844, 851–53 (5th Cir. 1998). The court held that district courts need not credit "[phantom] 'common fund' figure[s] assigned by [class] counsel," where "the true value of the award [is] less than its face value." *Id.* at 852.

Similarly, the District of South Carolina declined to credit class counsel's inflated assessment of a nonmonetary settlement's value, which approached $1.2 billion, and instead adopted the minimum proposed value of $150 million. *Clark*, 2004 U.S. Dist. LEXIS 32063 at *65–*67 & nn.32–33, *82. More recently, the Western District of Texas rejected an attempt to pad a settlement's value with class counsel's valuation of nonmonetary relief, opting to consider

only the cash value of the settlement in assessing reasonable fees. *Duncan v. JPMorgan Chase Bank*, No. SA-14-ca-912, 2016 WL 4419472 at *13 (W.D. Tex. May 23, 2016) (also noting that class counsel "acknowledged at the hearing he knows of no other case where the value of the settlement was enhanced by injunctive relief if the settlement also included payment of a cash award"). In sum, no precedent supports Class Counsel's proposed valuation. Instead, available precedent undermines their proposed methodology.

### 2. Class Counsel's Proposed Valuation Is Unreasonable

Class Counsel's assertion that the Court should value the radio-service benefit at its full retail price defies sound jurisprudence. The *Manual for Complex Litigation* lists nine "recurring potential abuses in class action litigation that judges should be wary of as they review proposed settlements." MANUAL FOR COMPLEX LITIGATION, § 21.61. Among these are "granting class members illusory nonmonetary benefits, such as discount coupons for more of defendants' product, while granting substantial monetary attorney fee awards;" and "setting attorney fees based on a very high value ascribed to nonmonetary relief awarded to the class, such as medical monitoring injunctions or coupons, or calculating the fee based on the allocated settlement funds, rather than the funds actually claimed by and distributed to class members." *Id.*

Even when these practices do not rise to the level of abuse, the *Manual* specifically cautions courts against assigning face or retail value to "in-kind benefits" when assessing attorneys' fees. *Id.* § 21.71. Here, Class Counsel asks the Court to do just that. When "the benefit to the class is nonmonetary (coupons, discounts, warrants, injunctions, and the like), determining the actual value to the class requires looking beyond the face value of nonmonetary or contingent benefits." FED. JUDICIAL CTR., MANAGING CLASS ACTION LITIGATION: A POCKET

GUIDE FOR JUDGES 34 (3d ed. 2010). Although the radio service may benefit class members, radio service is not as beneficial to them as its retail value in cash.[5]

The issue is especially acute here because although some consumers find Sirius service valuable enough to subscribe after the trial period, the class, by definition, consists entirely of those who did not find the service valuable enough to pay its retail price. *See* ECF No. 188 at 2 (defining class to include only persons who "received programming on a promotional basis from Sirius XM" but "never were or became paying subscribers prior to July 5, 2016"). This indicates that members of the Settlement Class find the radio service less valuable than its retail price in cash.

The Court concludes that Class Counsel's proposed valuation of the settlement and their resulting fee request are unreasonable. The $750 million figure that Counsel affixes to the settlement is illusory, inflated by a radio-service benefit of questionable actual value to class members, which amounts to 95 percent of their proposed settlement valuation. The requested $19.8 million in fees would consume nearly 60 percent of the cash settlement fund. No precedent supports a fee award of that magnitude. Allowing Class Counsel to collect such an extraordinary fee based on a settlement value inflated by over $700 million in free radio service benefits would be a dereliction of the Court's duties to oversee attorneys' fee awards in class actions and to ensure their reasonableness.

---

[5] The *Manual* includes an example that underscores the unreasonableness of Class Counsel's proposed valuation. In one case, a court faced with a partially in-kind settlement awarded fees in both cash and in-kind benefits, to be paid in same proportion as the class received. *See* MANUAL FOR COMPLEX LITIGATION § 21.7 n.1008 (citing *In re Auction Houses Antitrust Litig.*, No. 00-cv-0648, 2001 WL 170792, at *15–*17 (S.D.N.Y. Feb. 22, 2001), *aff'd* 42 F. Appx. 511 (2d Cir. 2002)). Applying that methodology to Class Counsel's requested $19.8 million fee would result in an award of $1 million cash and $18.8 million in "free" radio service. Class Counsel would be unlikely to find this arrangement as valuable as fees paid in cash.

## B.   A Reasonable Fee Award

The Court now turns to the issue of determining a reasonable fee.  Faced with a benefit of wildly speculative actual value to class members, the Court calculates the appropriate fee award based on 35 percent of the concrete, ascertainable, value of the cash fund.  This includes a 10 percent "bonus" to compensate counsel for the nonmonetary benefits in this case.  A lodestar cross check ensures the adequacy and reasonableness of this fee award.  Awarding 35 percent of the cash fund, which amounts to $12.25 million in attorneys' fees, is reasonable and adequate to compensate Class Counsel for their efforts in obtaining both the monetary and nonmonetary benefits for the class.

The Eighth Circuit has upheld this approach, holding that a district court acted reasonably when basing a fee award on the value of a cash settlement fund and adding a percentage enhancement to account for additional nonmonetary benefits' value.  *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999).  This award accords with precedent.  Other courts within the Fourth Circuit have made similar or smaller fee awards in awarding fees under the percentage-of-the-fund method.  *See infra* Section III.B.5 (collecting cases).

This award is also supported by the seven-factor test used to evaluate the reasonableness of attorneys' fees awarded under the percentage method:

> (1) the results obtained for the Class; (2) objections by members of the Class to the settlement terms and/or fees requested by counsel; (3) the quality, skill, and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) public policy; and (7) awards in similar cases.

*In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 261 (E.D. Va. 2009) (citing *In re Cendant*, 243 F.3d 722, 733 (3d Cir. 2001); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000); *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974)).  The Court considers each factor in turn.

### 1.   The Results Obtained for Class

In the Fourth Circuit, "the most critical factor in calculating a reasonable award is the degree of success obtained." *McDonnell v. Miller Oil Co.*, 134 F.3d 638, 641 (4th Cir. 1998) (internal quotation marks omitted).   Counsel here secured a $35 million cash fund for the class, with a high rate of notice delivery, approximately 98 percent.   This rate was the result of the Claims Administrator cooperating with telemarketing vendors to obtain class members' names and contact information.   To date, over 250,000 class members have submitted claims, from which the Court can infer class member's satisfaction with the cash benefit.[6]   *See Redman*, 768 F.3d at 628.   In addition, the balance of class members who do not submit a timely claim to partake in the cash fund will have the option of obtaining three months' free radio service. Without overvaluing the radio service, Class Counsel should be rewarded for obtaining a salutary result.   The proposed percentage of the cash fund, incorporating the radio service "bonus" of 10 percent, accomplishes this.

### 2.   Quality, Skill and Efficiency of Attorneys Involved

There is no question regarding the attorneys' skill and quality.   Class Counsel have listed their accomplishments and cited numerous cases in which they have represented plaintiffs in the Eastern District of Virginia and in nationwide class actions. *See* ECF No. 195, Exhs. 1–10 (Attorneys' Declarations).   The Court finds that Class Counsel were qualified to represent the class and did so with skill.

### 3.   Complexity and Duration of Litigation

This litigation stretched almost five years from the initial filing in *Knutson.   See* Complaint, *Knutson v. Sirius XM Radio Inc.*, No. 12-cv-0418 (S.D. Cal. Feb. 15, 2012).   Class

---

[6] Just as a low rate of claims submitted may show "oversight, indifference, rejection, or [concern for] transaction costs" because the "bother of submitting a claim . . . may exceed the value of" the settlement's benefits to many class members. *Redman v. Radio Shack*, 768 F.3d 622, 628 (7th Cir. 2014).

Counsel also pursued a successful appeal before the Ninth Circuit.  Since that successful appeal, however, the case has proceeded unremarkably.  The docket reveals the motions practice and discovery litigation preceding the instant settlement was minimal.  Moreover, the five-year timeline is misleading because, as the Court noted previously, this case "has a long history of extensions and delays."  ECF No. 136 at 1.  Many of these extensions were the results of joint motions for extensions or were requested by Class Counsel.  *See* ECF Nos. 9, 30, 49, 59, 74, 78, 136, and 200.  Given the extensions and delays engendered by Class Counsel, a higher fee award based upon the lengthy pendency of this litigation is unwarranted.

### 4.    Risk of Non-Payment

"In determining the reasonableness of an attorneys' fee award, courts consider the relative risk involved in litigating the specific matter compared to the general risks incurred by attorneys taking on class actions on a contingency basis."  *Kay Co. v. Equitable Prod. Co.*, 749 F. Supp. 2d 455, 466 (S.D.W. Va. 2010).

Class Counsel assert that they faced a significant risk of adverse rulings from related cases.  However, this risk was mitigated by a Federal Communication Commission (FCC) Order, released during the pendency of this litigation, which resolved some disputed issues.  *See* Omnibus Declaratory Ruling and Order, *Rules and Regulations Implementing the TCPA*, FCC-15-72 (July 10, 2015).  The Order expansively interpreted the TCPA in favor of Plaintiffs, particularly on the salient issue of what constitutes an "autodialer."  *See id.*, paras. 10–24.  Class Counsel note that the FCC's Order is the subject of a pending appeal before the United States Court of Appeals for the District of Columbia Circuit.  *See ACA Int'l v. FCC*, No. 15-1211 (D.C. Cir.).  However, reviewing courts give great deference to an agency's interpretation of a statute it administers.  *See Chevron U.S.A. Inc. v. Nat. Res. Def. Council*, 467 U.S. 837, 842–43 (1984); *see also* Respondent Final Brief at 26–36 & Joint Petitioner Final Brief at 21–33, *ACA Int'l v.*

*FCC*, No. 15-1211 (D.C. Cir. Feb. 24, 2016).  Because of this, the appeal's pendency poses no great risk.

Class Counsel also assert that the opportunity for litigating this case in the federal forum was nearly extinguished in *Knutson*, compelling an appeal before the United States Court of Appeals for the Ninth Circuit.  *See Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).  However, aggrieved parties could have obtained relief in the arbitral forum, regardless of *Knutson*'s outcome.  Since then, "the lack of extensive litigation over typically risky points in the case: class certification, dispositive motions, and finally, trial, largely dissipated the usual risks of nonpayment associated with class actions."  *Kay Co.*, 749 F. Supp. 2d at 466.  The Court concludes that the risks of non-payment presented here do not warrant an enhanced fee award.

### 5.    Awards in Similar Cases

Fee awards under the percentage method are typically 25 percent to 30 percent of the settlement value.  *See id.* (quoting MANUAL FOR COMPLEX LITIGATION § 14.121).  However, if an unusually large number of plaintiffs with relatively small individual recoveries increases the total value of the settlement, courts often award a smaller percentage of the fund.  *Id.* (reducing the requested fee from 25 percent of the estimated $28–33 million fund to 20 percent); *see also Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 769 (S.D.W. Va. 2009) (reducing the requested fee from 25 percent of estimated $40–50 million common fund to 20 percent).  Here, counsel obtained a $35 million cash fund and radio benefits for over 11 million class members.  Under these circumstances, a fee award based on 25 percent of the cash fund with a 10 percent bonus for obtaining non-monetary relief—for a total award of 35 percent of the cash fund—is reasonable.

Other courts in the Fourth Circuit have made similar or smaller awards when awarding fees.  *See, e.g., Henderson v. Acxiom Risk Mitigation, Inc.*, No. 3:12cv589, ECF No. 116 (E.D.

Va. Aug. 4, 2015) (awarding $6 million in attorneys' fees); *Thomas v. Backgroundchecks.com*, No. 3:13cv29, 2015 WL 11004870 (E.D. Va. Aug. 4, 2015) (awarding $5.14 million in attorneys' fees); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 689 (D. Md. 2013) (awarding $500,000 in attorneys' fees, 25 percent of the settlement fund); *Kay Co. v. Equitable Prod. Co.*, 749 F. Supp. 2d 455, 472 (S.D.W. Va. 2010) (awarding $5.6 million to $6 million in attorneys' fees, 20 percent of the settlement fund); *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 767 (S.D.W. Va. 2009) (awarding $8–10 million in attorneys' fees, 20 percent of settlement value).  In these cases (with the exception of *Henderson* and *Thomas*, which lacked substantive analysis), the class counsel received a percentage of the total cash fund rather than a percentage of the calculated value of the settlement.  None of the cases considered the face value of free radio credits.

Cases with larger awards based on nonmonetary relief—although none as large as Class Counsel's requested fee—are readily distinguishable.  In the most factually analogous case, the District of South Carolina awarded $15 million for attorneys' fees based on 10 percent of the aggregate value of entirely non-monetary relief, which was calculated by multiplying the benefits' minimum estimated monetary value per class member by the estimated number of eligible class members. *See Clark v. Experian*, No. 00-cv-1217, 2004 U.S. Dist. LEXIS 32063 at *60–*70 & nn.32–33, *82 (D.S.C. Apr. 22, 2004).  In *Clark*, the settlement agreement secured free credit reports for each class member, valued at $9 each, and injunctive relief, removing misleading bankruptcy designations from class members' credit reports. *See id.* at *64–*65. The court attached substantial value to the injunctive component of the settlement, which represented "significant substantive changes in [Experian's] uniform and longstanding reporting

procedures," saving class members from "emotional distress and the potential lost time and expense they might incur seeking to have the remarks removed or satisfactorily explained." *Id.*

This Court's approach differs from *Clark* because the cases are distinguishable. Here, the nonmonetary relief is less beneficial to the class and its true value more difficult to ascertain. In addition to the problem of valuing the radio credits, the injunctive relief is far less meaningful. Receiving telemarketing calls only from "manual"[7] telephone dialing systems is not a "significant substantive change[]" to Defendant's business model, and provides little relief to class members regarding "emotional distress and . . . potential lost time and expense." Class members will still receive telemarketing calls, just from differently configured telephones.

### 6.    Objections

Only two (now stricken) objections were presented.[8]  This could indicate some implicit approval of the fee request presented therein. *See Kay Co.*, 749 F. Supp. 2d at 468.

### 7.    Public Policy

The Court must balance several competing interests when considering public policy implications of awarding attorneys' fees. Incentives for counsel to undertake worthy class action lawsuits are important because class actions serve to provide relief when it would be inefficient for an individual to pursue a claim. *Deposit Guaranty Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 338 (1980).  However, "[b]ecause of the damage caused by the perception of overcompensation of attorneys in class action suits, lawyers requesting attorneys' fees and judges reviewing those requests must exercise heightened vigilance to ensure the fees are in fact reasonable beyond reproach and worthy of our justice system." *Kay Co.*, 749 F. Supp. 2d at 469

---

[7] The Court notes that the settlement agreement is ambiguous regarding what constitutes manual dialing, stating only that Sirius' vendors' systems must "use human intervention to initiate calls" but "[m]anual dialing shall not require individual keying of each number by a vendor's employee." ECF No. 186-2 at 7 (Settlement Agreement).

[8] The Court also received a complaint about the settlement administration. ECF No. 214.

(footnote omitted). The fee award of $12.25 million strikes a strong and just balance between these competing interests. An award of 35 percent of the settlement's cash value provides Class Counsel with reasonable compensation for the nonmonetary benefits obtained, without providing an incentive for counsel to exaggerate the value of nonpecuniary interests in calculating the value of the class fund. Anchoring the settlement's value to the cash fund also disincentivizes attorneys from forgoing incrementally larger cash settlements in favor of high-dollar offers of free services from defendants.

### C.    A Lodestar Cross Check Confirms the Fees' Reasonableness

A lodestar cross check confirms the reasonableness of the Court's fee award. Counsel represent that as of December 16, 2016, Class Counsel's total lodestar amount is approximately $6 million. With a fee award of $12.25 million, the lodestar multiplier calculates to approximately 2.04, exceeding but approximating the national average of 1.81. *See* ECF No. 195-22 at 33 & tbl.12. This figure also more closely aligns with the Fourth Circuit mean (2.43) than Class Counsel's proposed multiplier of 3.5. *See id.*

The Court credits Class Counsel's accounting of their hours expended on this litigation, but notes that their billing calculations included significant time spent after the settlement was negotiated. The time spent obtaining an attorneys' fee award in common fund cases "is not compensable because it does not benefit the plaintiff class." *Manner v. Gucci Am., Inc.*, No. 15-CV-00045, 2016 WL 6025850, at *3 (S.D. Cal. Oct. 13, 2016) (quoting *In re Wash. Public Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994)). Time expended in the administration and approval of settlement is similarly inappropriate for the lodestar calculation, because that work "does not involve the same risk as litigation or settlement negotiation and therefore a higher rate of payment designed to compensate such risks is not warranted." *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 767 (S.D.W. Va. 2009). As the lodestar test

serves simply as a cross check and the multiplier here is reasonable, the Court need not engage in "bean counting" to attempt to comb through and cull the reported hours. *See In re Rite Aid Corp. Secs. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005).

To defend their fee request—with a proposed lodestar multiplier of 3.5—Class Counsel argue that this case warrants a high multiplier due to the protracted nature of the dispute, the favorable outcome, and complexity of the case. *See* ECF No. 195 at 24–25. Although a multiplier is warranted, a multiplier of 3.5 is too high. The Court finds that the lodestar already partially accounts for the length of the case and its complexity by factoring in the number of hours claimed in this case and the hourly rates earned. The case's "long history of extensions" further undermines Class Counsel's additional assertions seeking a higher lodestar based on the length of this litigation. *See* ECF No. 136 at 1. Finally, Class Counsel's contentions regarding the favorable outcome here were based in part on its over-estimation of the settlement's value.

## IV.   CONCLUSION

Class Counsel's Motion for Attorneys' Fees (ECF No. 194) is **GRANTED IN PART** to reflect the fees award approved herein. For the reasons stated herein, Class Counsel are awarded $12.25 million for reasonable attorneys' fees and $191,330.88 for expenses. Within ninety days after the Effective Date and the resolution of any appeal or review directed at only the fees, costs, and other expenses of Class Counsel (or any portion thereof), the Escrow Agent shall pay these amounts to Michael A. Caddell of Caddell & Chapman to be distributed to Class Counsel.

**IT IS SO ORDERED**.

Arenda L. Wright Allen
United States District Judge

_5 · 11_ , 2017
Norfolk, Virginia

18